Civil Rights Complaint Form.
For use in Actions under 42 U.S.C. § 1983
In the U.S. District Court for the, Southern
District of Florida, Office of the Clerk
701 Clematis Street, Room 402:
West Palm Beach, Florida. 33401

FILED by ____ D.C.
INTAKE

JAN 12 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

1) SEAN GEORGE, A/K/A
2) GENEUS GEORGE
3)

the Full Name of Plaintiff

Case Number:
to be Assigned
by the Clerk:

L.t. Cir. Case #
95-15159 cF10

Vs:

1) ~~(An)~~ RON COCHRAN SHERIFF
   Deputies, & et al,
2) Medical Ems, Correc-
   tional, et al, and
3) Kitchen Trinity Food
   Services inside the
   Jail House, et al.
      Enter
the Full Name of Each Defendant in the
Same Manner as above. If Additional Spa-
ce is Required, use the Blank Area
Directly to the Right.)

**00-6059**
**CIV-DIMITROULEAS**

MAGISTRATE JUDGE
~ SORRENTINO

cat/div   B. FT-LAUD
Case #    CIV-6059
Judge     WPD    Mag   CHS
Motn Ifp  NO    Fee pd $ NO
Receipt # _____

STATE FULLNAME AND SUING

I. PLAINTIFF
   SEAN   GEORGE , D.C.#B666423
   North Florida Reception Center
   P.O. Box : 628
   Lake Butler, Florida 32054

II DEFENDANTS:
   (1) RON COCHRAN SHERIFF deputies, et al.
       Broward county Jail
       555 S.E 1st AVENUE
       Fort Lauderdale, Fl. 33301

   (2) DEFENDANTS
       Medical :
       EMSA CORRECTIONAL CARE, et al.,
       IN SIDE the Jail House
       555 S.E 1st AVENUE
       Fort Lauderdale,
       Florida 33301


   (3) DEFENDANTS
       Trinity Food SERVICE Corp. et al.,
       Kitchen RESTAURANT
       IN SIDE the Jail House
       555 S.E 1st AVENUE
       Fort Lauderdale, FLA. 33301

V.    STATEMENT OF FACTS:

Using numbered paragraphs, state as briefly as possible the FACTS of your case. Describe how _each_ defendant was involved and what each did or did not do to give rise to your claim. Include the names of persons involved, dates, times, and places. State exactly what happened. DO NOT make any legal arguments or cite any cases or statutes. You may make copies of these pages and attach additional sheets of paper if needed:

1. Under the Fed. R. Civ. P., Fla. R. Civ. P. PURSUANT 42. U.S.C. § 1983, the SHERIFFS, the Medical and the kitchen violated and deprived My Civil Rights without Lawful Authority in violation to the U.S. Const.

2) 1-14-97, that is the time I seen a nurse since 9-19-96, with all the beated and kicked by police.

3) 1-28-97, Deputy Riches do not Feed Me.

4) 1-16-97, the deputy Gonzaguez Sr, take My commissary from Me Never Return its to Me in the next day I asked For My stuff He taked Me to lock down with a D.R..

5) 2-21-97, twist deputy K. Kreitz man do not Feed Me, one time the sgt went to get Me a tray After that I complaint to the unit Manager against him He promised Me He will taked Revenge on Me: After the unit Manager He pushed in the staces way and hitted Me to the bar stairs way and He He say -- He will Make Me pay For that.

6) On 2-28-97, After He's day off Soon He came, He walking straight to Me in My Room. And He taked Me out side in the corridor: pushed and kicked Me all over My body For Revenge.

State as briefly as possible what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim, and relate each claim to the facts in the complaint. If the claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

7) 1-3-97, 1-31-97, the deputy F. LEE WAS Not Feed Me Also 1-29-97, IN the locke down And He Mocked At Me ~ He keep say if I WAS hungry.

8) 2-5-97, And FROM 1-28-29-97. And Lot More other times oFFicers deputies F. Lee, GON ZA guez And More WAS Jointed together they Are keep Not Feed Me AND keep Abused Me.

9) 4-8-97, deputy D. DIXON inter the group stated Not Feeding Me and keep Abused Me.

10) 5-5-97, they given Me some stuFF IN the Food. by the trusties that Maked My stoMach so illNesses.

11) ON 5-11-97, Again they given the trusties so Me More poisoneous Nasty stuFF to given Me IN the Food. Deputy D. pulver set up that trap.

12) 6-12-97 the doctor WAS ordered A diet SNAck For their Are NEVER given it to Me, when their give its to Me with Lot Nasty stuFF IN it. cAused I WAS lost Lot oF weights.

13) 7-18-97, AFter the DocTors WAS EXAMINED My All blood test with My NEW blood My system came very Lower I dont what kind stuFF they given Me IN the Food that caused that. the doctor WAS ordered A 3000 diet coloRies with A (N) SNAck they NEVER git to Me.

# STATEMENT OF FACT

1) ON 9-19-96, I WAS ARRIVED IN THE JAIL HOUSE with bleeding and sorrowful by beated and kicked by police I don't seen a Doctor till 1-28-97, AND NO SHERIFF's PAY ANY ATTENTION TO ME:

2) 1-28-97;
Deputy riches donot Feeding Me.

3) Also 1-28-97 I was seen Doctor, HE was ordered a regular diet For Me ACCORDING to My blood test result with some Medication, Also ON 6-12- AND 7-18-97, I NEVER received My doctors order like I supposed too: Also the Medical Failed to given Me My prescription order. treatment the Doctors was ordered For Me.

4) 1-16-97,
Deputy GONZA JUEZ SR was taked My commissary. HE NEVER returned them to Me when I asked Him For them HE locked Me IN lock down.

5) ON 2-21-28-97 to 5-2-97,
oFFICER deputy R. KREITZMAN begin not Feeding Me till I leaved the JAIL House. HE and some other oFFICERS given the trusties stuFF to given Me IN My Food: cause I almost dead.

6) 4-8-97
oFFICER DEPUTY DIXON JOIN with State not Feeding Me too. And Maltreated My Food.

## STATEMENT OF FACTS:

7) 5-11-97,
OFFICER DEPUTY: D. PULVER TRAPED ME IN MY
FOOD by GIVEN ME POISONEOUS STUFF IN THE FOOD
CAUSED I ALMOST dead.

8- 6-12-97; 8 DOCTORS ESPECIALISTS WAS ANALIZED
ME WAS ORDERED SOME PRESCRIPTION MEDECATION
WITH A 3000 diet COLORIES to build up MY LOWER
ticel the MEDICAL AND the kitchen WAS REFUSED
to given ME MY doctor order.

9) 7-3-97
the KITCHEN JEER AT ME. they WRAPED A EMPTY
TRAY WITH MY NAME ON it FOR MY DOCTOR ORDER.

10) ON 7-18-97,
lot other doctor specialists WAS EXAMINED All
MY bloods tests and they Are REORDERED some
PRESCRIPTION WITH a diet AGAIN to build up MY
lower the ticel, they Are REFUSED to give it
to Me. CAUSE MY SICKNESS AGITED ULTRA IN MI

11) SINCE 9-19-96 till DECEMBER 97.
the DEPUTIES SHERIFF keep ME sleep. ON the
FLOOR CAUSED COOL INTER to MY (both) body till
NOW I keep SUFFER WITH PAIN.

12) 2-5-97:
DEPUTY: F. LEE AND GONZAGUEZ plotted together
keep MALTREATED and threated ME very badly

13- IN the LOCKED down. ON 3-17-97 they MAKE the
NURSE MS. Bell cut MY MEDICATION out.

FLEE GONZAGE 31
MOORE, RICHES, NOT
Fed. 1-16, 17, 2-21-26 97

**give any legal arguments or cite any cases or statutes. If
you intend to allege a number of related claims, number and
set forth each claim in a separate paragraph. (Use as much
space as you need. Attach extra sheet if necessary.)**

1st
Claim

1. BECAUSE OF MY CONSTITUTIONAL RIGHTS IN
THIS ORDER HAS BEEN VIOLATED THE 4TH, THE
11TH AND THE 14TH AMENDMENT ALSO WAS
REPEATEDLY VIOLATED FOR EVERY UNECESSARY
REASON. IN THIS BROWARD COUNTY COURT

2nd.
Claim

2. BECAUSE OF THE BEHAVIOR AND UNPROFESSIONAL
ATTITUDES OF THE BROWARD COUNTY SHERIFF
DEPUTIES. TREATED ME CRUELY AND UN RIGHTEOUS
DEPUTY R. KREITZMAN. HE DIDNT FEED ME
ME REQUIRED MEAL BY FEDERAL ON 2-16

3. BECAUSE OF NEVER RECEIVING THE PROPER MEDICA
ATTENTION AND BEING APPOINTMENT SET ON MANY
OF OCCASION TO SEE THE DOCTOR AND NEVER
WAS BY REQUEST SLIP RECOMMENDED BY JAIL
RULES. I'VE BEEN TREATED CRUEL.

4. AND THIS DEPUTY GONZALEZ TOOK MY
PAID FOR OUT MY INMATE CANTEEN, COMMISSARY
STORE ITEMS AND PRODUCTS FROM ME AND
TOOK ME TOO LOOK DOWN WHICH IS CONSIDERED
CONFINEMENT AND AS I WAS RELEASED FROM
LOCK DOWN. I NEVER HAVE BE AWARDED THEM
BACK IN RETURN.

V.   **Relief** KREITZMAN: 2-17-97 - 2-21, 28,   97
5. CALVIN WITH HE'S HELPER: ON 12-26-97 WAS PICK UP AND
12-17,                                        DROPED MEON MY BACK
**State briefly exactly what you want the court to do for you.**

**Make no legal arguments. Cite no cases or statutes.**
I WISH FOR THIS COURT TO DISCIPLINE THIS
PARTY OF DEFENDANTS AND BRING THIS MATTER

IN THE JAIL HOUSE THEY ARE BEATED ME
10-10-97 HICKS AND BLACK MAN
AND ON 12-17-97

DEPUTY COMMISSARY CLOSED MY
FINGER ON 7-7-97

give any legal arguments or cite any cases or statutes. If
you intend to allege a number of related claims, number and
set forth each claim in a separate paragraph. (Use as much
space as you need. Attach extra sheet if necessary.)

1st Three specialist doctor was examined My from blood test
come out very lower 217 suppose to be listed and up. The TRINITY
Food service in the kitchen employees that diet department
was failure and refuse to give Me My prescription treatment
order My three doctor specialists was ordered My sick.

2nd 1-28-97 the 1st doctor examined My 1st blood test was order
a regular tray with a shake diet to help My Medication build
up My system lower treatment and take other blood from
Me for a second blood test.

3rd ON 6-12-97 the doctor examined My second blood test
come out very lower again. he place My 1st order for 3 one diet
regular tray with a snack three time a day to help My
strong Medication build up My lower I never get it.

4th I done another blood test come very lower, another specialist
lister on 7-18-97 was order the same order again a 3 one diet
tray with a shake even I told Him the kitchen diet employee
not going give it to Me. the doctor told Me to have to take them
older because My Medication was too strong. the employee
in the kitchen was refuse and never give Me My order.

5th ON 7-3-97 the kitchen wrapped a empty tray put My name
on it with nothing in it for My doctor order.

6th 7-21-97 I receive the order after that No More. each
time I drink My Medication get together with My
empty stomach I felt to the ground. the employee for

V.   Relief the thrinity food service said they are don't care
         I dead in My cell. it don't sell My shoes for to
State briefly exactly what you want the court to do for you.
Make no legal arguments. Cite no cases or statutes. some for my V.
                                                            be dead.
I wish the position of federal superior court is not
enough for grant My request for My rights. could be
able for a Declaratory Judgement injunctive
relief, and Money payment damage for
My civil righteousness.

give any legal arguments or cite any cases or statutes. If
you intend to allege a number of related claims, number and
set forth each claim in a separate paragraph. (Use as much
space as you need. Attach extra sheet if necessary.)

2-17-97
2-21-97    POMPANO JAIL. 2-17-97 Dep. R.Kheitman
2-28-97    Not Feeding Me. ALSO 2-21 do not Feeded
           Me again and take revenge on Me. ALSO 2-28-97,
4-8-97     Dep. D. Dixon not Feed Me and pay no Attention
           To Me and The trustie Kept Miss up My Food.
5-5-97     He kept the trustee give Me in My Food Keep
1-14-97 and My Stomach and My body and dead Way Full
           For Five month I Kept Suffer Since 9-14-97
           Tell Summary Never See a doctor
1-16-97    Deputy Gonzager take My Commissary Never
1-28-97    Return it to Me. When I ask For My He take it to lock
           Dep. Riches do not Feed Me and Refuse to let M
           See A Sergeant.
5-11-97    Dep. D. pulver Tried to get He trystie to put Some
           Poisonish Stuff in My Food to get Me Kill
2-5-97     Dep. F. Lee Make threat with other deputie Riche
1-3-9      Moore and Gonzager For they not to Feeded My
           in The lock down and After F Lee come Mocked Me
           and Make them Not Feeded Me 1-29-97, 1-28-9,
           and 1-31-97. I AM IN JAIL with out Feeding.
2-17-97    The Nurse M^c rell take My Medication out
MAIN JAIL- Deputy. perulla CAll Me From My bunk and cha
           ge Me with Fighting I don't Know Nothing about.
IN December. Dep. MALLINA CAll Me give A tShirt and Acc
V.  Relief  Me. 6-12-97 the MAIN JAIL Never give M
           My doctor order. I don't get My Medication tell Now
State briefly exactly what you want the court to do for you.

Make no legal arguments. Cite no cases or statutes.

I wish For the court discipline the party of
Defendant because of My constitution right
IN this order HAS been Violated the 4th, the
11th and the 14th Amendment ALSO Was repeatl
Violated For every unessairy Reason IN the
Broward county. AS Surely Like unprofessio
N AL

- Statement of claims

14) On 6-11-97, I am seated watching TV.

A) Right after head count. the deputies was sent inmate Thompson and Johnson to came fighting: Thompson pushed me and punched me. After that they are (~~that~~) charged me with battery and keep me in lock down.

B) at the trial court for that battery they put Thompson for witness who was testified against me. that look like no law was existed.

15) On 8-24-97, I was seated playing card in the Main Jail unit 7-D-2, they are ensend another inmate to came fighted me then after that they are taked me to lock down. And also another inmate was came in my room to try to killed me and they are so happy about that.

16) 7-24-97, I speak to the health care B.S.O administrator they not paid any attention to me

17) On 7-7-97:
the kitchen mocked at me for my doctor order by wrapped a empty tray with nothing in it and put my name on it for my doctor order.

18) On 7-18-97 another:
Doctor specialist was examined my blood (~~for~~) test situation my system (~~betap~~) became 212; it supposed to be 450 and up. He reordered the same order again they refused to give its to me.

- STATEMENT OF CLAIM -

19) ON 7-7-97

the COMMISSARY OFFICER DEputy closed My FIN-
GERs in the Front of the HEAVY DOOR AND da-
MAGes My hands Fingers FOR EVER

20: ON 10-10-97,

OFFICERS DEputy HICKS AND BLACK MAN ARE
beated Me very badly Just because I ASKED
them FOR My tennis SHOES to go to the court.

21) ON 12-26-97, I WAS VERY SICK (LAWS) laying
down on my bed in the lock down. sergeant
S. CALVIN CAME IN My lock ROOM cell with SOME
deputies to searched My ROOM. they ARE pick
ED Me up to searched My bed and they are
DROPPED me on the Floor over My back.
I WAS hurting very badly with PAIN INSIDE
My body till NOW I still keep suffer with
PAIN ESPECIALLY when it WAS cool.

22) ON 12-17-97,

sergeant S. CALVIN CAME AGAIN with SOME de
DEputies: At that I WAS suffured with A ve-
ry terrible headache. they are CAME Mal-
treated and Abuses Me because I WAS com.
plained Against them.

23- SINCE 2-12-97 till december 1997, EVERY
time OFFICER deputy R. KREITZ MAN WAS WOR-
KING He WAS Not Feeding and keep Maltrea-
ted Me FOR REVENGE AGAINST Me.

ARGUMENT IN SUPPORT:

1) BECAUSE OF My constitutional Right IN this ORDER. the SHERIFFs deputies has been violated the: 4th, 5th, 6th, 8th, 11th, 14th And 17th, AMENDMENTs OF My civil Right without Lawful authority FOR EVERY UNNECESSARY REASON OF the United states const. INside the Jail House.

2) BECAuse OF the BEHAVIOR AND UNPROFESSIONAL Atitute OF the BROWARD county SHERIFF deputies, Medical AND the Kitchen. they are threatened Me very cruel AND un righteous.

3) that WAS UNLAWFUlly: BECAUSE they are keep Me inside the Jail House with NOT FEEDing Me, no Medical care AND the are keep Maltreated Me AND keep used EXcessive use OF Force on Me; such violation Like that I prior You all PEER Nobles important SUPERIOR Authority to over Looked controlling points OF LAW or Facts IN these situation FOR proper procedure.

4) BECAUSE: NEVER Receive PROPER Medical care, proper Nutrition AND proper protection because they are keep beated Me AND keep Maltreated Me. these situation WAS Reasonable For you All PEER Nobles important SUPERIOR Authorities to be argued about and to considering AS A MAtter oF LAW.

ARGUMENT IN SUPPORT

A) Three SPECIALISTS doctors WAS EXAMINED All My blood TEST AND there ARE very LOWER 212, THEIR SUPPOSED to be 450 AND up: the Kitchen, trinity Food SERVICES WAS RE-Fused to given ME the order the Doctors WAS ordered For Me.

B) trinity Food SERVICE ke Employee in the Kitchen diet department was FAiLed And reFused to give Me My PRESCRiption treatment order the three doctors WAS or dered For SICKNESS

C) ON 1-28-97, 6-12-97 AND 7-18-97; the Doctors WAS RE-EXAMINED with My All blood test, there come out very LOWER AGAIN AND they are reorder the SAME ORDER AGAIN. the Medical AND the kitchen WAS reFused to given Me My doctors PRESCRIPTION order. EACH time I taked My Medication with EMPty stomach I keep Full desease FALLEN to the Floor AND they Are SAY to Me they dont care I dead in My cell.

D. 7-20-21-97;
I WAS received the order only two times I supposed to received the order According My doctors request 3 times a day (two) AND EVERY dAy. the Medical AND the kitchen donot obey to My doctors becAuse of the RACISM AND under color of State LAW.

## CONCLUSION

1) BECAUSE OF MY CONSTITIONAl RIGHT IN this order has been violated the 4th, 5th, 6th, and 14th AMENDMENTS OF MY Civil Right. Also repeatly violated FOR Every UNNECESSARY REASON INSide the Jail House. IN Broward county by RACISM.

2) BECAUSE OF the BEHEVIOR AND UNPROFESSIONAl Attitudes of the BROWARD county SHERIFF deputies. they ARE treated Me cruelty AND UNRighteous. Deputy R. KREITZMAN with All other deputies did not FEED Me. Just because I complaint to the UNIT MANAGER AFTER I Finish spoke to HIM Deputy: R. KREITZMAN Fighted Me hitted Me in the STAIRS WAY bar FOR revenge.

3 Deputy D. PULVER Also lot other deputies violated All My Civil right FOR NO REASON INSide the Jail House by constituted wickedness against me.

4) IN the beginning:
FROM 9-19-96 to JANUARY 28 1997, KEEPS SUFFERED by bleed AND pain FROM the oFFicers who WAS ARRESTED Me, I passed 4 Months like that befor I was seen a doctor. I was beated cruelty by police oFFicers I Never received proper medical CARE.

5) Nobody WAS pay ANY Attention to Me. I Filed lot request AND grievant Es FOR 4 MONths No body WAS Help Me AND I WAS SEVERLY INJURED FROM the police city beating AND KICK.

CONCLUSION

6) DEPUTY GONZAGUEZ taked My COMMISSA-
RY FROM AND HE NEVER returned it back to Me.
AFTER 1 day ½ I keep Ask HIM For comissary He
taked Me to lock down And He not Feed Me.

7) At POMPANO Jail:
ON 2-17.21.28-97 Deputy R. KREITZMAN WAS
Not Feeding Me. And lot other time in each
OCCASION He WAS WORKING:

8) pursuant to the Fed. R. civil p. And FLA. R. App. p.
IN the ARTicle V, Section 5, FLA. Const., And
Rule 1.630, FLA. R. civil p. the Jurisdiction
of this HONORABLE is invoked to challenging
the respondents For deprived My civil Ri-
ght in this cause Action.
PURSUANT to 1, §9, U.S. Const, Article 1, §13
ARticle V, §3(b) Fla Const. Chapter 79, FLA.
statutes (1995) AN Rule 1.630, Fl. R. civil p.
proved that the petitioner is being held, ille-
gally, deprived of his Liberty without LAW Ful
Authority IN VIOLATION of the 4th, 5th, 6th, 11th, AND
14th, AND 17th AMENDMENTS OF U.S. Const.
IN this ORDER BASIS FOR INVOKING Jurisdiction
this HONORABLE Court HAS Jurisdiction to is-
sue A civil Action under Article V, Section 3 (b)(8)
of the FLA. Const. AND 9.030 (b)(3) of the FLA. R.
App. p. civil Right Action is the proper remedy
to compel the defendants to this HONORABLE Court

"RELIEF SOUGHT": RESPECTFULLY:

1) WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FALLOW: to A RESOLVEMENT, FOR RELIEF OF PAYMENT. BECAUSE OF the CONSTITUTION OF AMERICA AND I AM REQUESTED that this FEDERAL HONORABLE COURT EXCUSE these SET OF PARTIES FROM Duties AT this CAUSE OF DISCRIMINATION AGAINST other AS Well IN this CASE ACTION.

2) REPECTFULLY: AND BEING this MATHER to RE-SOLVE FOR RELIEF OF PAYMENT IN AMOUNT AS PROOF BECAUSE OF the CONSTITUTIONAL OF AMERICA - I AM REQUEST that this FEDERAL HONORABLE EXCUSE these SET OF PARTIES FROM ALL duties AT the CAUSE OF DISCRIMINATION AGAINST other AS Well.

3) BECAUSE OF the BEHEVIOR AND UNPROFESSIONAL A HITUTE OF the BROWARD SHERIFF deputies: they ARE treatened Me CRUELTY AND UNRIGHTEOUS.

4) WHEREFORE: FOR ALL DAMAGES MY body WAS SUFFER AND I KEEP ON SUFFERING INSIDE My body ALL OVER: WITH INFECTION defecting WITH PAIN AND ANGUISH, SORROWFUL DAMAGES My body SUFFER AND KEEP ON SUFFERING Please I PRAYS FOR ALL the RELIEF Mentioned IN this RELIEF SOUGHT AND AS FOLLOWS:

1) FOR COMPENSATORY DAMAGES IN AN AMOUNT ACCORDING to PROOF.

2) FOR PUNITIVE DAMAGES IN AN AMOUNT ACCOR-

ding to proof.

3) For costs and reasonable attorney fees pursuant to: 42. U.S.C. § 1983

4) For such further relief as the court deems proper and just.

please I'm respectfully: requested For all the damages and My fingers was damages for ever, no way My fingers could be able to be straight again like the-re are been before.

please I please in you (and) and all other peer nobles jurisdiction to over looked controlling point or facts pursuant to the Fed. R. Civil. P. to granted My request favor for relief: because I am being damages illegally. they are deprived My civil right liberty with out lawful authority in violation of 4th, 5th, 6th, and 14th amendments to the U.S. Const for every unnecessary reason.

/s/ Sean George

Declaration pursuant    petitioner pro se
to § 92 Florida Statute.

Under penalties of perjury I declare that I have read the foregoing and that the facts stated in it are true.

Sean George
D.C. # B660423
Lake N. F. R. C.
P. O. Box 628
Lake Butler, Fl. 32054

PROPERTY OF NFRC LAW LIBRARY

RELIEF SOUGHT

WHEREFORE: FOR ALL the DAMAGes: MY bACK, MY teeth
Lossing, the gas I keep on SUFFERing with inside My sto-
MACH And FOR All the infections deFecting with pain And
Anguish sorrowful My body SUFFER And keep on suf-
FERing please I prays FOR RELIEF As follows:

1) FOR COMPENSATORY damages in An AMOUNt According to PROOF.

2) FOR punitive damages in An AMOUNt According to PROOF.

3) FOR cost And reasonable AttORNEY Fees pursuant 42: U.S.C §1983

4) FOR SUCH FURther RELIEF As the court deems proper And JUSt.
please PERUSING: the OFFICIAL/s STAFF inside the WA-
SHINGTON COR. institution was trampled My civil Rights
And My LIFE Under color OF STATE LAW And deprivation.
PROVING My civil Rights surrounding with DARKNESS
in United states Constitution. please I pray For this Relief.

Respectfully submitted,

Sean George

Petitioner pro se

**DECLARATION PURSUANT TO §92.525 FLORIDA STATUTE**

Under penalties of perjury I declare that I have read
the foregoing and that the facts stated in it are true.

SEAN GEORGE, D.C #660423
Petitioner
In Proper Person
4465 DAM MITCHELL DRIVE
CHAPLEY, FLORIDA, 32428
North Florida Reception
CenteR: P.O. BoX: 628
LAKE butleR, Fla 32054

-5-

CASE N°
95-15159 CF10

DATE: 1-26-98

TO: Circuit court of the 17 Judicial circuit in and For Broward County

FROM: SEAN GEORGE AKANAME
truename: GEORGE GENEUS
S.F.R.C. p.o.Box: 02-8538;
Miami, Fl.33102 **INQUIRY TO CLERK** DC:N° 66 0423
DORM G: 2208

RE:

Dear Honorable Clerk:

Please advise of: please I please in you, all of you in side 17 Judicial circuit court in and For Broward county to let Me Hear the date of the Hearing in this case and all other cases I get in side this office. please I ASK you all For the response about this case.
Since December 30, 98
I get transfered
From Main Jail I don't
receive any letter
or any answer From you all in this office
please let Me Hear From you all about all My cases. please: thank You

Respectfully Submitted,
Sean Geus

D.C.# B·66 0423

RESPONSE:

4th 4=: those deputies refused to feed me lot of times. Kept me slept on the floor for 13 month cause I catch cool inside my bone cause everytime I keept sutten with my bone inside my body.

5th the Jail House deputy on 7-7-97 damages my fingers. My finge damages for even. Nobody give me any justice for my right in this matter. All my case keep dimissed for every unnecessary.

6th on 10-10-97 those deputies beated me just because I ask for my shoes tennis to go to the court also the medical and the kitchen was refus to give me my doctor prescription also and no bodies in the high court do any thing about that to give me justice for my human right. please I please all of you to undens tand: if the majesty position of the high court is kind and king enough to give me justice for my human civil right please I please the high court to punished all my human civil right violator with apryment completely for my human civil right violation. please.

Office of the
**Sheriff**

Broward County
Post Office Box 9507
Fort Lauderdale, Florida 33310

August 8, 1997

Mr. Jean George, FL9613075
Broward County Main Jail
555 S.E. First Avenue
Fort Lauderdale, FL 33301

Dear Mr. George:

I have received many letters from you requesting that I resolve issues at the Main Jail. Please be advised that Superintendent Willie Roberts is the individual in charge of the operations at that facility and your requests, complaints, etc should be directed to him, as he is the appropriate person to resolve them. In the future, if your requests are mistakenly directed to this office, I will forward them to Superintendent Roberts.

Sincerely,

Susan W. McCampbell, Director
Department of Corrections and Rehabilitation

SWMcC/rk

cc:     Superintendent Willie Roberts

# RON COCHRAN
**SHERIFF**
**BROWARD COUNTY**
**P.O. BOX 9507**
**FORT LAUDERDALE, FL 33310**

August 14, 1997                                                                              97-145

Mr. George Jean
FL96-13075
Main Jail, 6B3
Fort Lauderdale, FL 33310

Dear Mr. Jean:

I received your letter dated August 7, 1997. I asked Mr. K. Jorgenson from EMSA, our medical provider to respond to your complaint.

Mr. Jorgenson stated that adjustments were made to your diet. You have not, and will not receive a three thousand calorie diet. Mr. Jorgenson also stated your fingers are not fractured. It was reported that your medication is here; however you refused to take it.

Mr. Jean it appears medical is making the effort to treat your condition, but you are not cooperating.

Sincerely,

Willis Robinson
Assistant Superintendent

hlb

cc:    Willie G. Roberts, Superintendent
       Kevin Jorgenson, Trinity Services

**Sheriff**

Broward County
Post Office Box 9507
Fort Lauderdale, Florida 33310

July 22, 1997

Mr. Jean George, FL96-13075
Broward County Main Jail
555 S.E. First Avenue
Fort Lauderdale, FL 33301

Dear Mr. George:

I have received your recent letter in which you indicate that there is some urgency to your health situation. I have spoken with Kevin Jorgenson, Health Administrator, who informs me that you are indeed receiving additional nutrients and have in fact gained some weight recently. Additional food will not solve your problem and unless you have a secondary issue such as an infection, on a day to day basis there is no other recommended treatment at this point.

Mr. Jorgenson also tells me that your health issue has been repeatedly discussed with you and you have had some difficulty accepting that information. Perhaps you would benefit from speaking with a psychologist about your situation, since I can see how it would be very upsetting to you. Please try to work with the health care staff on this issue. They do have your best interests in mind.

Thank you for contacting me.

Sincerely,

Susan W. McCampbell, Director
Department of Corrections and Rehabilitation

SWMcC/rk

cc:     Kevin Jorgenson, EMSA
        Superintendent Willie Roberts

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

GEORGE GENEUS,                                  CASE NO. 95-15159CF10
      Petitioner,

vs.                                                             JUDGE SPEISER

RON COCHRAN, SHERIFF OF
BROWARD COUNTY, ET AL.,

      Respondents.
_____/

## ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS AND WRIT OF MANDAMUS

THIS CAUSE came before the Court upon Petitioner's Writ of Habeas Corpus and Writ of Mandamus and this Court having considered same, the Response filed by the Office of the State Attorney, the Response filed by the Sheriff of Broward County, and being otherwise advised in the premises, hereby finds as follows:

Petitioner filed a Writ of Habeas Corpus and a Writ of Mandamus alleging numerous instances of abuse by the Broward Sheriff's Office while being detained at the Broward County Jail.   The Petitioner was transferred out of the Broward County Jail during the pendency of these Petitions.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Petitioner's Writ of Habeas Corpus and Writ of Mandamus are DENIED.

DONE AND ORDERED in Chambers, Broward County Courthouse, 201 Southeast

Sixth Street, Fort Lauderdale, Florida, 33301, this _____ day of _____, 1998.

JUN 1 7 1998

MARK A. SPEISER
CIRCUIT COURT JUDGE

Copies to:

Assistant State Attorney, J. Scott Raft

Elijah Williams, Esq. - Senior Assistant Legal Counsel
Attorney for Broward Sheriff's Office
Public Safety Building, #3548
2601 West Broward Blvd.
Fort Lauderdale, FL 33312

Defendant:        George Geneus/George Jean - Inmate # DC 660423
                  Washington Correctional Institution
                  4455 Sam Mitchell Drive
                  Chipley, Florida 32428

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

GEORGE GENEUS,                          CASE NO.:    95-15159CF10
                                        JUDGE:       SPEISER

        Petitioner,

vs.

RON COCHRAN, SHERIFF OF
BROWARD COUNTY, ET AL.,

        Respondents.

_____/

## RESPONSE TO PETITIONER'S WRIT OF HABEAS CORPUS
## AND WRIT OF MANDAMUS DIRECTED TO THE BROWARD SHERIFF'S OFFICE

    COMES NOW, Respondent, KENNETH C. JENNE, II, Sheriff of Broward County, Florida, by and through his undersigned counsel and responds to Petitioner's Writ of Habeas Corpus and Writ of Mandamus directed to the Broward Sheriff's Office as follows:

    1.    The Petitioner, GEORGE GENEUS, essentially alleges that (1) he is being illegally held in the Broward County Jail; (2) he was beaten by correctional deputies; and, (3) he is receiving poor medical attention. Through writs of habeus corpus and mandamus, the Petitioner is requesting that he be freed and receive injunctive relief, as well as some unspecified compensation for violations of his civil rights.

    2.    In response, the Sheriff would state that the Petitioner was sent to State prison on December 30, 1997. This transfer renders the gravamen of his complaints moot. Moreover, from a procedural and substantive standpoint, mandamus is not the appropriate vehicle for money judgment claims.

    **WHEREFORE,** the Sheriff of Broward County prays that this Court deny the Petitioner's Writs of Habeas Corpus and Mandamus.

h:\docs\elijah\geneus

**I HEREBY CERTIFY** that a copy of the foregoing was furnished by U.S. Mail to GEORGE JEAN, DC# 660423, at Washington C.I., 4455 Sam Mitchell Drive, Chipley, FL 32428.

KENNETH C. JENNE, II
SHERIFF OF BROWARD COUNTY

By:_____

ELIJAH WILLIAMS
Senior Assistant Legal Counsel
Public Safety Building, #3548
2601 West Broward Boulevard
Fort Lauderdale, FL 33312
Telephone: (954) 831-8920
Fla. Bar No. 400671

h:\docs\elijah\geneus.

2

**GJ Version of Events on 6-11-97**

I was watching TV, everyone was watching TV, he(RT) was playing cards. Hunter was on the TV. Deputy came in to a head count. I went to my room for two minutes and then I came out to the open area. He(RT) wanted to play cards. Thompson turned the TV off. Come on and play cards to me. (3 guys).

Wanted him to leave the TV alone. He(RT) pushed me(with one arm) in my chest and I backed up. He punched me in the head. I did not hit him back. Everybody was watching us. Deputy gave me a DR-he did not like me.

I said, "How come the man can punch me and you did not do anything to him. They did not feed me or give me clean sheets. Deputy came in the room after he punched me. I tried to expalin to him he hit me first.

RT is the same height and same size as me.  He always palyed cards and he knew the deputy would take his side.

RON COCHRAN
SHERIFF
BROWARD COUNTY
POST OFFICE BOX 9507
FORT LAUDERDALE, FLORIDA 33310-5907


DATE:     October 16, 1997

TO:       George Jean, FL96-13075

FROM:     Barbara Hanson-Evans, HSA, BSO

SUBJECT:  Letters dated 9-29-97 & 10-2-97

We are no longer giving protein shakes due to the milk
content, however, you should be receiving a nutrition
bar, if you are on a regular diet.  Again, there is no
such thing as a 3,000 calorie diet.  The correct diet
is 2,800 calorie with an evening snack.  You should
be receiving a regular diet and three nutrition bars,
however, I was informed that you also requested an
evening snack.  This cannot be done due to the fact
that you would be receiving two sets of diets.

Finally, you can only receive a regular diet with three
protein supplement or 2,800 calorie with an evening
snack.

BHE/tlr



**Office of the**
# Sheriff

Broward County
Post Office Box 9507
Fort Lauderdale, Florida 33310

July 22, 1997

Mr. Jean George, FL96-13075
Broward County Main Jail
555 S.E. First Avenue
Fort Lauderdale, FL 33301

Dear Mr. George:

I have received your recent letter in which you indicate that there is some urgency to your health situation. I have spoken with Kevin Jorgenson, Health Administrator, who informs me that you are indeed receiving additional nutrients and have in fact gained some weight recently. Additional food will not solve your problem and unless you have a secondary issue such as an infection, on a day to day basis there is no other recommended treatment at this point.

Mr. Jorgenson also tells me that your health issue has been repeatedly discussed with you and you have had some difficulty accepting that information. Perhaps you would benefit from speaking with a psychologist about your situation, since I can see how it would be very upsetting to you. Please try to work with the health care staff on this issue. They do have your best interests in mind.

Thank you for contacting me.

Sincerely,

Susan W. McCampbell, Director
Department of Corrections and Rehabilitation

SWMcC/rk

cc:    Kevin Jorgenson, EMSA
       Superintendent Willie Roberts

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

NOTE: THE COURT WILL NOT ACCEPT THE COMPLAINT FOR FILING UNTIL PLAINTIFF(S) FILL OUT THE FOLLOWING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES. UNDER THE PRISON LITIGATION REFORM ACT OF 1995, 42 U.S.C. § 1997e (AS AMENDED), THIS COMPLAINT IS SUBJECT TO <u>DISMISSAL</u> IF THE CLAIMS PRESENTED HAVE NOT BEEN PROPERLY EXHAUSTED.

A. DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS?

Yes (✓)                No ( )

[If your answer is YES, answer all the questions in this subsection. If your answer is NO, proceed to subsection III B.]

Exhaustion of administrative remedies pursuant to Fla. Admin. Code Chapter 33-29 is required prior to pursuing a civil rights action concerning events occurring within the Florida Department of Corrections. Any required grievances, appeals, and responses **must** be submitted to the Court to verify exhaustion. Each plaintiff must complete a separate Section III.

**EXHAUSTION STEPS REQUIRED:**

\* Emergency Grievance, Grievance of Reprisal, Grievance of a Sensitive Nature, Medical Grievance, Grievance Concerning Violation of Americans with Disabilities Act (ADA), Medical Grievance, Grievance Involving Admissible Reading Material, Grievance Governed by Fla. Admin. Code Rule 33-11.0065 Incentive Gain Time, Grievance Involving Disciplinary Action.

a.    Formal Grievance to Superintendent or to the Office of Secretary (Form DC1-303) *YES*
b.    Appeal to the Office of Secretary (Form DC1-303)

\* General Grievance



a.    Informal Grievance (Form DC3-005)
b.    Formal Grievance (Form DC1-303)

**EXHAUSTION STEPS TAKEN:**

1.    Emergency Grievance, Grievance of Reprisal, Grievance of a Sensitive Nature, Medical Grievance, Grievance Concerning Violation of Americans with Disabilities Act (ADA), Grievance Involving Admissible Reading Material, Grievance Governed by Fla. Admin. Code Rule 33-11.0065 Incentive Gain Time, Grievance

Involving   Disciplinary   Action   (these   are   requests   for Administrative Remedy or Appeal, by-passing the informal grievance step).

    a.   Did you submit your grievance directly to the Superintendent and/or to the Office of Secretary (Form DC1-303)?

        Yes(✓)               No( )

    b.   If so, you must attach a copy of the grievance and response to this complaint form.

    c.   Were you denied emergency status or otherwise required to first file an informal grievance?

        Yes(✓)               No( )

    d.   Did you have a disciplinary hearing concerning this matter?

        Yes(✓)               No( )

    e.   If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this complaint form.

2.   Informal Grievance (Request for Interview)

    a.   Did you submit an informal grievance (Form DC3-005)?

        Yes(✓)               No( )

    b.   If so, you must attach a copy of the grievance and response to this complaint form. *SURE*

3.   Formal Grievance (Request for Administrative Remedy or Appeal)

    a.   Did you submit a formal grievance (Form DC1-303)?

    b.   If so, you must attach a copy of the grievance and response to this complaint form.

4.   Appeal to the Office of the Secretary (Request for Administrative Remedy or Appeal)

    a.   Did you submit an appeal to the Office of the

Revised 2/97                 4

Secretary (Form DC1-303)?

Yes(✓)                    No( )

b.   If so, you must attach a copy of the appeal and response to this complaint form.

B. DOES YOUR COMPLAINT CONCERN EVENTS OCCURRING WITHIN A COUNTY JAIL?

Yes(✓)                    No( )

If your answer is YES, answer the following questions.

1.   Is there a grievance procedure at your institution or jail?

Yes(✓)                    No( )

2.   Did you present the facts relating to your complaint in the prison grievance procedure?

Yes(✓)                    No( )

3.   If your answer is YES:

a.   What steps did you take? *REQUESTS/ GRIEVANCES: PROSE*

b.   What were the results? *NEGATIVE, Nobody PAY ANY ATTENTION TO ME:*

4.   If your answer is NO, explain why not:

IV.  PREVIOUS LAWSUITS

NOTE: UNDER THE PRISON LITIGATION REFORM ACT OF 1995, 28 U.S.C. § 1915 (AS AMENDED), NO PRISONER SHALL BRING A CIVIL ACTION OR APPEAL A JUDGMENT IN A CIVIL ACTION UNDER 28 U.S.C. § 1915 IF THE PRISONER HAS, ON 3 OR MORE PRIOR OCCASIONS, WHILE INCARCERATED OR DETAINED IN ANY FACILITY, BROUGHT AN ACTION OR APPEAL IN A COURT OF THE UNITED STATES THAT WAS DISMISSED ON THE GROUNDS THAT IT IS FRIVOLOUS, MALICIOUS, OR FAILS TO STATE A CLAIM UPON WHICH RELIEF ____ __ _____, _____ __ __ __ __ ____ __ ___ ____ OF SERIOUS PHYSICAL INJURY.  THEREFORE, IT IS EXTREMELY IMPORTANT THAT THIS SECTION BE COMPLETED IN **THE MOST TRUTHFUL AND COMPLETE MANNER POSSIBLE.**  FAILURE TO GIVE COMPLETE AND TRUTHFUL INFORMATION ABOUT PRIOR CASES CAN RESULT IN THE **DISMISSAL** OF THIS ACTION.

A.   Have you initiated other actions in **state** court dealing with the same or similar facts or issues as involved in this action?    Yes(✓)    No( )

Revised 2/97                  5

B.  Have you initiated other actions in **federal** court dealing with the same or similar facts or issues as involved in this action?    Yes (✓)    No ( )

C.  If your answer to either (A) or (B) is YES, describe each action in the space provided below. If there is more than one action, describe all additional actions on a separate piece of paper, using the same format as below.

   (1)  Parties to previous action:
        Plaintiff(s): JEAN GEORGE
        Defendant(s): South FlA. RECEPTION CENTER

   (2)  Court (if federal court) name the district; if state court, name the county):

   (3)  Docket Number: 5:98 CV.851/R.V/ SMN.

   (4)  Name of Judge: SUSAN M. NOVOTNY

   (5)  Briefly describe the facts and basis of the action: BRUTALITY AND CAUSED BACK DAMAGE:

   (6)  Disposition (Was the case dismissed? If so, why? Did you appeal? What result?): Not yet:

   (7)  Approximate filing date: FEbRUARY 98

   (8)  Approximate disposition date: MARCH 98

D.  Have you initiated other actions (other than those listed in (A) or (B)) in state or federal court relating to the fact or manner of your imprisonment or the conditions of your imprisonment?    Yes (✓)    No ( )

E.  If your answer to (D) is YES, describe each action in the spaces below. Attach additional pages if necessary.

   (1)  Court (if federal court) name the district; if state, name the county):

   (2)  Docket Number: 97-6933

   (3)  Parties to the previous action,
        (a). Plaintiff(s): JEAN GEORGE
        (b). Defendant(s): RON COCHRAN

   (4)  Basis of action: BRutAlity / FINGERS damages

   (5)  Is it still pending?    Yes ( )    No (✓)

W AY                    is                7-23-97
From: GEORGE SEAN
Annest N° FL 96-13075
Main Jail
Unit: 7-D-3

                    to: Unit MANAGER
            M= Willie Robinson

                                        Please
UNIT MANAger M= Willie Robinson
Please I please in you to do Me a FA-
Vok Soon you receive this letter. IF
your MAJesty position is Kind and
King enough to gnant My request.
please call the sengeant and the deputie
IN Unit 7-D-3 please ask Him to take
Me to school At art class. Please I please
in you Because they are take all other
inmates to school and they are refused
to take Me to school. I ask tHem., I
Begging them they are refuse to take
Me to school. Please To Much violation
discrimination against My righteous
ness Liberty Freedom: Why those such
Violation like that in Here inside the
Jail House. please iF your position is
Highest enough to result this problem
For Me please do it Fast is possible.
I get deputies stolow and Me clover
and the sengeant WAS refused to pay

**BROWARD SHERIFF'S OFFICE**
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

**TO BE COMPLETED BY INMATE**

*I don't get*

GeorGE Sean    FL 96-13075    7-93    My order 7-1-
Inmate's Name ___ Arrest# ___ Cell ___ Facility ___ Date

**PART A – INMATE'S GRIEVANCE**

Please I get a copy From the order The doc
For order For. M. For Four days I do not eated
Nothing because I don't get My 3.wo diet
Tray with My sHack. even My Medication I
cannot Take because of the sorrow of My stoMach
I can't breath. Now I cannot WalK. Please Why
eVerybody get What the doctor order Them

Inmate's Signature _____ Date Signed
*and Me I don't get*

George Sean    7-1-

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**

**PART B – RESPONSE**

My order please    What Such Viola
tion is that. Why I don't get My order. please tell Me
to Where is going Make Five days I don't eat. please Help

_____    _____
Reviewing Deputy's Signature/CCN                Date

_____    _____
Supervisor's Signature/CCN                      Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
I _____, wish to appeal the response.

_____    _____
Inmate's Signature                              Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

_____
_____
_____
_____

_____    _____
Director's Signature                            Date

BSO DJ#51 (Revised 4/93)

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

### TO BE COMPLETED BY INMATE *I have no incentive-ally*

GEORGE SEAN FLYG 13075  8-B 4 *del complete* 9-7-97

_Inmate's Name_ _____ _Arrest#_ __ _Cell_ __ _Facility_ __ _Date_

### PART A - INMATE'S GRIEVANCE

Please I Please in you told that I when soon you are
alive this grievance Please if your highest Majesty *pos.-
tions is kind enough to grant My given request Please*
I get 13 days in that 8-B yesterday day I get less food
than I get *now I suppose I get I reported this thin*
*to the unit* and kitchen Manager. The result was
nightly *rather poor* *no attention* to the. Please I Please

_Inmate's Signature_ _____ _Date Signed_ 9-7-97

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

*as you if a Please you noted by Please result this problem
I will not make a complaint in the dietary counter to.*

_____

_____

_Reviewing Deputy's Signature/CCN_ _____ _Date_

_Supervisor's Signature/CCN_ _____ _Date_

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

_Inmate's Signature_ _____ _Date Signed_

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_Director's Signature_ _____ _Date_

BSO DJ#51 (Revised 4/93)

*[handwritten at top]* Please Sergeant in this situation I want to

If you haven't asked the housing unit deputy to solve this problem, do so before completing this request. *Ask you a question. Your knowledge may help Me.*

## TO BE COMPLETED BY INMATE

Date of Request: 3-7-1997         Inmate's Name: GEORGE SEAN

(Alias, if used)

Arrest #: FL96-13075         Location: 4B4      DOB: 7-1-58

To: Sergeant; BARNETT No. # 1788

| | | | |
|---|---|---|---|
| Program Specialist ☐ | Mailroom ☐ | Commissary ☐ | |
| Classification ☐ | Food Service ☐ | Other ☐ | |

Nature of Request: Please I want to speak to you or to some body can help this situation. The air have a problem The Deputie open door for every body to get fresh air could be able to breath only Me He don't open the door. I stay inside over Health Held with Hot. Why Dep. J. George done such terrible Discrimination like that to Me. Please this was too much

Inmate's Signature _____ God Created ME A HUMAN_____ Date Signed _____

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM. RETURN ALL OTHER COPIES TO THE INMATE REQUEST BOX LOCATED IN EACH POD. Like you. Why I can't get breath too with Them. I need ___ DO NOT WRITE BELOW THIS LINE: F Some Fresh Air too. Please I need ACTION TAKEN/RESPONSE some to speak with. Please

Completed By: _____ CCN _____ Date: _____ Time: _____

All requests will be handled by the responding deputy in one of the following ways:

☐  Written Information              ☐  Personal Interview

1 grievances will be responded to, in writing, by the Office of Information and Review.

DJ#24 (Rev. 4/93)

**TO BE COMPLETED BY INMATE**

*(handwritten across top margin: To MUCH feRMiCRL IN UNIFoRM: UNIFoRM With So MUCH feRMICRL IN iT KeePS eRAPed MY SKIN 10-96)*

GEORGE SEAN    FL 96-13075-5    131    My SKin   10-96
Inmate's Name                          Arrest#        Cell   Facility          Date

**PART A – INMATE'S GRIEVANCE**

*(handwritten)* please I hate Somebody SAY thRee teRs tie WoRKing in the Lon dre pAssed Uni foRm Set A UNIFoRM foR Me With So Much feRMICRL in A this UNIFoRM Make My SKin eatching and SeRaped So bad in My SKin. please You Need to ChAnge those tRustie, please

_____    _____
Inmate's Signature                    Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B – RESPONSE**

_____
_____
_____
_____

_____    _____
Reviewing Deputy's Signature/CCN                      Date

_____    _____
Supervisor's Signature/CCN                             Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
I _____, wish to appeal the response.

_____    _____
Inmate's Signature                                    Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

_____
_____
_____
_____

_____    _____
's Signature                          Date
ɔ1 (Revised 4/93)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

*To the Director, Mr. ...... (to my) SGT SUSAN Mc CAMPBELL*

## TO BE COMPLETED BY INMATE

FROM: GEORGE SEAN VI. 96-13075  6°C-1   Violation  8-9-97
_Inmate's Name_ ___ _Arrest#_ ___ _Cell_ ___ _Facility_ ___ _Date_

### PART A – INMATE'S GRIEVANCE

Please I please in you to understand My situation in Here. please if it please your Majesty position. Please Help Me with those problem: on 8-7-97 I was in room write a letter, nobody call say the nurse at the door. but I Alway keep paid attention because it is the time for the nurse, sometime the nurse come very Late. In the last Minute I Look for the nurse I saw the nurse will to Left. I Hunny to stop the nurse for My Medication. dep. P. Jennings was

_Inmate's Signature_ refuse to let Me get My Med  _Date Signed_

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW

### PART B – RESPONSE

cation. on 8-8-97 again I after ate I tray He Refuse to take My tray to another inmate who was Lock down. After 15 Minutes He guy said He dont want that tray. When deputy P. Jennings refuse to take it cuz the guy said said it not His nam name. When dep P. Jennings open the door take the tray and give it to Me. I said no I don't want it because the guy get the tray for 15 Minutes. dep. P. Jennings told Me parked up and

_Reviewing Deputy's Signature/CCN_ Move Me To another unit _Date_ please c San

you receive this request please come to see Me Soon is possible

_Supervisor's Signature/CCN_ and # please result this problem for Me. _Date_

## TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

_Inmate's Signature_ _____ _Date Signed_

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_____

_Director's Signature_ _____ _Date_
BSO DJ#51 (Revised 4/93)

Case 0:00-cv-06059-WPD   Document 1   Entered on FLSD Docket 01/13/2000   Page 41 of 367

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

*I don't get my*

## TO BE COMPLETED BY INMATE

GEORGE SEAN FL 96-13075 7-D-2 diet Hrery 10.2.9,

Inmate's Name          Arrest#     Cell   Facility        Date

### PART A - INMATE'S GRIEVANCE

Please I please in you to understand My
Sickness I suffer Hypoglossima and Lower ficel.
those docta not crazy. they are examined all My
blood test come out very lower. the docta was order
a 3.voodiet with a shaker for Me. your employees was
refused to give it to Me. please the kitchen Make
the Medical change it for 2800 diet Bt new Ideni

Inmate's Signature                    Date Signed

Seen Sean    **WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**   10·2·97
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

get My 2800 diet **TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW** My New order I get
on 9-26-97 because I lost weight don't Have nonthing
todo with My old order My 2800 diet. please it
you Highest Majesty position. please take this
problem For Me Soon you receive this request.
Please I Please in you. thank you.

**PART B - RESPONSE**

Reviewing Deputy's Signature/CCN                    Date

Supervisor's Signature/CCN                         Date

## TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature                    Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

Director's Signature                    Date
BSO DJ#51 (Revised 4/93)

*[handwritten across top: "and The kitchen MA    NAZELL    Not Feeding"]*

**FROM**

**TO BE COMPLETED BY INMATE**

GEORGE SEAN FL 96·1307S  7C-1  MC  12-21-97

Inmate's Name _____ Arrest# __ Cell __ Facility __ Date

**PART A - INMATE'S GRIEVANCE**

Please please in you for you to understand
each this worker work curgirs the kitchen
No ensend My bhg. this worker cause the kit-
chen and the deputy not Feeding Me. this Not
Happen on 12-21-97 only that Happen each time
this penson work. please understand Why
this penson feed all othen 2800 diet and Me He

Inmate's Signature _George Sean_    Date Signed 12-21-97

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**

**PART B - RESPONSE**

Me I don't know why. this worker. Make the kitchen
Violated all My Human civil and All My prisoner
rightenusness please do understand the kitchen
refuse to feed. they are not feed. Me a breakfast.
Almost every Sunday I don't get My feed
because I curgirs this penson refuse to feed Me

Reviewing Deputy's Signature/CCN _the kitchen Never_ Date

_Make My 2800 diet Bt please understand_

Supervisor's Signature/CCN _the Kitchen Not feed Me_ Date

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**

I _ON 12-21-97_, wish to appeal the response.

_the Kitchen are violated all My right;_

Inmate's Signature _____ Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

_____

_____

_____

_____

Director's Signature _____ Date

BSO DJ#51 (Revised 4/93)

yo me
*Kitchen MANAGER*

TO BE COMPLETED BY INMATE *At LUNCH ON 8-16-97*

GEORGE SEAN VI 96.13075  6A3 *I dont get MY TRAY  8-17-97*

Inmate's Name ___ Arrest# ___ Cell ___ Facility ___ Date

PART A – INMATE'S GRIEVANCE

Please Kitchen MANAGER Every SATURDAY and SUNday specialy Who ever Working in diet department put 1 peace breath and 1/2 cup spegetty in My TRAY and that it yet. ON 8-16- I dont get My diet TRAY back and ON 8-17-97 I dont get My SNACK. No diet TRAY look like My diet TRAY. I dont get No Food in My diet TRAY one peace breath and 1/2 cup spageHy. please I please in you if you in MAJesty Is Kind Enough

Inmate's Signature ___ Date Signed

*for g. Sean*  *George Myrequest*  2-17-97

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B – RESPONSE

*Please MAKE Sure that Worker completely My diet tray. I Summon state attorney office they told Me MAKE sure tell you Now WhAt this Worker Keep on doing. Please if it please MAjesty please correct that For Me. THANK you.*

_____

Reviewing Deputy's Signature/CCN ___ Date

_____

Supervisor's Signature/CCN ___ Date

TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I _____, wish to appeal the response.

_____

Inmate's Signature ___ Date Signed
WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_____

Director's Signature ___ Date
BSO DJ#51 (Revised 4/93)

# BROWARD SHERIFF'S OFFICE
## DEPARTMENT OF CORRECTIONS AND REHABILITATION
### INMATE GRIEVANCE FORM

*Quiet and White*
*Please Send Some* *und flo Speak to Me*

**TO BE COMPLETED BY INMATE**

*Deputy 4-17-97*
*D. Dixon*
*Refuse to Feed Me*

GEORGE SEAN FL.96-13075 11 D-2

| Inmate's Name | Arrest# | Cell | Facility | Date |

### PART A - INMATE'S GRIEVANCE

Please I write All of you this Grievance to let All of you understand What CRIME Some deputies keep on doing inside Jail House in Here. Some deputies been Not before Now I get deputy D. Dixon did something Refuse To Feed and Refuse To let Me to see A sekgreant. Please CRIME like this Was terrible. Other NATion Hear Thailand That could Make UNIT state loss Repeatation. Please

Inmate's Signature *Geor- Sean* *All Need to do something*

Date Signed 4-17-97

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

Before it too Late. UNIT STATE WAS A Big NATION When the Whole World Head and Hear What A Some deputies keep doing in side Jail House. Will Be very bad News to Here

Reviewing Deputy's Signature/CCN _____ Date _____

Supervisor's Signature/CCN _____ Date _____

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____
_____
_____
_____

Director's Signature _____ Date _____

BSO DJ#51 (Revised 4/93)

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

*Please Help us our diet shake miss up. Trustie put Trap in*

### TO BE COMPLETED BY INMATE

George Sean    FL 96-13075   11-D-2   My snack   5-2-97

| Inmate's Name | Arrest# | Cell | Facility | Date |

### PART A – INMATE'S GRIEVANCE

Please I ask you A FAVor please Help Me. IN My
Diet SNACK SHAKe the Trustie keeps spite in it and
put Nasty Trap in My SHAKe I speak to the sergeant
she say don't let HIM Wok in Here When the sergeant
left the deputies bring the Trustie back because
Lot of the deputies pay the Trustic Lot of Cigarette
to Missup My SHAKe. please My NAMe on My SHAKe

Inmate's Signature   *George Sean*          Date Signed   5-2-97
*let the Kitchen Bring it*

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B – RESPONSE

For Me. please the Trustie do What He WANT With us Food
Specialy My diet SHAKe. the Trustie Make us Call
A Cigarette Store No CARe IN Here For My Food. please Help
Some deputies Lended the Trustie With a Cigarette For SALe For the
Cookie-
Bell

Reviewing Deputy's Signature/CCN _____    Date _____

Supervisor's Signature/CCN _____    Date _____

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____    Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____
_____
_____
_____
_____

Director's Signature _____    Date _____

BSO DJ#51 (Revised 4/93)

# BROWARD SHERIFF'S OFFICE
## DEPARTMENT OF CORRECTIONS AND REHABILITATION
## INMATE GRIEVANCE FORM

### TO BE COMPLETED BY INMATE

Inmate's Name _____ Arrest# ___ Cell ___ Facility ___ Date ___

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

Inmate's Signature _____ Date Signed _____
**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

Reviewing Deputy's Signature/CCN _____ Date _____

Supervisor's Signature/CCN _____ Date _____

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed _____
**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

Director's Signature _____ Date _____

BSO DJ#51 (Revised 4/93)

**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☐ **DENTAL**    ☐ **MEDICAL**    ☐ **MENTAL HEALTH**

**(Please check one of the above)**

**PRINT ONLY**              **PRINT ONLY**              **PRINT ONLY**

Date: _____  Facility/Institution: _____

Name of Inmate: _____  D.O.B.: _____  Sex: _____

I.D. #_____  Cell #: _____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

**STAFF SECTION**

Person Triaging: _____  Date: _____  Time: _____
               (Name)

Disposition: _____

**FOR STAFF USE ONLY**

S: _____

_____

O: _____

_____

A: _____

_____

P: _____

_____

E: _____

Date: _____  Time:_____  _____
                                    Health Service Signature

White — Medical Department          Yellow — Other          Pink — Inmate

CL 1480-01

**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☐ **DENTAL**          ☐ **MEDICAL**          ☐ **MENTAL HEALTH**

**(Please check one of the above)**

---

**PRINT ONLY**                    **PRINT ONLY**                    **PRINT ONLY**

Date: _____          Facility/Institution: _____

Name of Inmate: _____          D.O.B.: _____

I.D. #: _____          Cell #: _____

Problem (In your own words): _____

_____

_____

_____

_____

I am aware that there is a fee for sick-call and a fee for each prescription. Charges will be made to my commissary account.

Inmate Pre-Authorization:          _____

                                            **Inmate Signature**

## \*\*\*\* DO NOT WRITE BELOW THIS LINE \*\*\*\*

### STAFF SECTION

Disposition: _____

Person Triaging: _____    Date: _____    Time: _____
                      (Full Name)

**FOR STAFF USE ONLY**

S: _____

_____

O: _____

_____

_____

A: _____

_____

P: _____

_____

_____

_____          _____
         **Date**                          **Health Service Signature**

CC 035                          White - Medical

**EMSA** CORRECTIONAL CARE

# INMATE MEDICAL REQUEST FORM

☐ DENTAL     ☐ MEDICAL     ☐ MENTAL HEALTH

(Please check one of the above)

| PRINT ONLY | PRINT ONLY | PRINT ONLY |
|---|---|---|

Date: _____     Facility/Institution: _____

Name of Inmate: _____     D.O.B.: _____  Sex: _____

I.D. # _____     Cell #: _____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

**STAFF SECTION**

Person Triaging: _____  Date: _____  Time: _____
                    (Name)

Disposition: _____

**FOR STAFF USE ONLY**

S: 6B3 Deputy V Senning refused To get Me got My Medication and dont give Me My diet Truy and Transfer to GCI 8-9-97 They

O: 6C1 I Lost My Tchirl Sgt Armstrong and the Depty farms for Me and Not search for it like HS Hedia To the 8-9. 8-14. 8-15. 97 I dont get My Medication.

A: 8-14 My back Full of pain the unit deputy Faced Me get on top a bunk Cause My back keep Me alone Miserable Night.

P: _____

E: _____

Date: _____  Time: _____

Health Service Signature

White — Medical Department          Yellow — Other          Pink — Inmate

CL 1480-01

**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☐ DENTAL      ☒ MEDICAL      ☐ MENTAL HEALTH

**(Please check one of the above)**

---

**PRINT ONLY**                    **PRINT ONLY**                    **PRINT ONLY**

Date: _____    Facility/Institution: _____

Name of Inmate: _____    D.O.B.: _____    Sex: _____

I.D. #_____    Cell #:_____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

---

**STAFF SECTION**

Person Triaging: _____    Date: _____    Time: _____
                        (Name)

Disposition: _____

**FOR STAFF USE ONLY**

S: _____

_____

_____

O: _____

_____

A: _____

_____

_____

P: _____

_____

E: _____

Date: _____    Time: _____    _____
                                                    Health Service Signature

---

White — Medical Department          Yellow — Other          Pink

CL 1480-01

EMSA CORRECTIONAL CARE

# INMATE MEDICAL REQUEST FORM

☐ **DENTAL**          ☐ **MEDICAL**          ☐ **MENTAL HEALTH**
**(Please check one of the above)**

**PRINT ONLY**                    **PRINT ONLY**                    **PRINT ONLY**

Date: _____          Facility/Institution: _____

Name of Inmate: _____          D.O.B.: _____

I.D. #: _____          Cell #: _____

Problem (In your own words):

_____

_____

_____

_____

**I am aware that there is a fee for sick-call and a fee for each prescription. Charges will be made to my commissary account.**

**Inmate Pre-Authorization:** _____
                              **Inmate Signature**

**\*\*\*\* DO NOT WRITE BELOW THIS LINE \*\*\*\***

**STAFF SECTION**

Disposition: _____

Person Triaging: _____          Date: _____          Time: _____
                 (Full Name)

**FOR STAFF USE ONLY**

S: _____

O: _____

A: _____

P: _____

_____          _____
Date                      Health Service Signature

CC 035                White - Medical Department    Yellow - Other    Pink - Inmate

**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☒ **DENTAL**    ☐ **MEDICAL**    ☐ **MENTAL HEALTH**

(Please check one of the above)

**PRINT ONLY**                  **PRINT ONLY**                  **PRINT ONLY**

Date: _____ Facility/Institution: _____

Name of Inmate: _____ D.O.B.: _____ Sex: _____

I.D. #_____ Cell #:_____

Problem (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

**STAFF SECTION**

Person Triaging: _____ Date: _____ Time: _____
                         (Name)

Disposition: _____

**FOR STAFF USE ONLY**

S: _____

_____

_____

O: _____

_____

_____

A: _____

_____

_____

P: _____

_____

E: _____

_____

Date: _____ Time:_____ _____
                                         Health Service Signature

White — Medical Department          Yellow — Other          Pink — Inmate

**CORRECTIONAL CARE**

# INMATE MEDICAL REQUEST FORM

☐ **DENTAL**      ☒ **MEDICAL**      ☐ **MENTAL HEALTH**

**(Please check one of the above)**

**PRINT ONLY**                    **PRINT ONLY**                    **PRINT ONLY**

Date: _____    Facility/Institution: _____

Name of Inmate: _____    D.O.B.: _____

I.D. #_____    Cell #:_____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

**STAFF SECTION**

Disposition: _____

Person Triaging: _____    Date: _____    Time: _____
                          (Name)

**FOR STAFF USE ONLY**

S: _____

_____

_____

O: _____

_____

_____

A: _____

- _____

_____

P: _____

_____

_____

Date: _____    _____
                                                    Health Service Signature

CC 018        White — Medical Department        Yellow — Other        Pink — Inmate        7/94



**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☐ DENTAL     ☒ MEDICAL     ☐ MENTAL HEALTH

**(Please check one of the above)**

| PRINT ONLY | PRINT ONLY | PRINT ONLY |
|---|---|---|

Date: _____    Facility/Institution: _____

Name of Inmate: _____    D.O.B.: _____

I.D. # _____    Cell #: _____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

**STAFF SECTION**

Disposition: _____

Person Triaging: _____    Date: _____    Time: _____
        (Name)

**FOR STAFF USE ONLY**

S: _____

_____

_____

O: _____

_____

_____

A: _____

_____

P: _____

_____

_____

Date: _____

Health Service Signature

CC 018     White — Medical Department     Yellow — Other     Pink — Inmate     7/94

**EMSA** *CORRECTIONAL CARE*

# INMATE MEDICAL REQUEST FORM

☐ DENTAL    ☒ MEDICAL    ☐ MENTAL HEALTH

**(Please check one of the above)**

| PRINT ONLY | PRINT ONLY | PRINT ONLY |
|---|---|---|

Date: _____    Facility/Institution: _____

Name of Inmate: _____    D.O.B.: _____

I.D. # _____    Cell #: _____

Problem: (in your own words)

_____

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**

## STAFF SECTION

Disposition: _____

Person Triaging: _____    Date: _____    Time: _____
(Name)

**FOR STAFF USE ONLY**

S: _____

_____

_____

O: _____

_____

_____

A: _____

_____

_____

P: _____

_____

_____

Date: _____

Health Service Signature

White — Medical Department          Yellow — Other          Pink — Inmate

CC 018



# INMATE MEDICAL REQUEST FORM

☐ **DENTAL**      ☐ **MEDICAL**      ☐ **MENTAL HEALTH**

**(Please check one of the above)**

---

**PRINT ONLY**                    **PRINT ONLY**                    **PRINT ONLY**

Date: _____    Facility/Institution: _____

Name of Inmate: _____    D.O.B.: _____    Sex: _____

I.D. #_____    Cell #:_____

Problem: (in your own words)

_____

_____

_____

_____

### DO NOT WRITE BELOW THIS LINE

---

### STAFF SECTION

Person Triaging: _____    Date: _____    Time: _____
                        (Name)

Disposition: _____

**FOR STAFF USE ONLY**

S: _____

_____

O: _____

_____

A: _____

_____

P: _____

E: _____

Date: _____    Time:_____

Health Service Signature

White — Medical Department          Yellow — Other          Pink — Inmate

CL 1480-01

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

## TO BE COMPLETED BY INMATE

Inmate's Name _____ Arrest# _____ Cell _____ Facility _____ Date

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

_____

_____

Inmate's Signature _____ Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

_____

Reviewing Deputy's Signature/CCN _____ Date

Supervisor's Signature/CCN _____ Date

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

Director's Signature _____ Date
BSO DJ#51 (Revised 4/93)

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

**TO BE COMPLETED BY INMATE** My SNAKe Keep.

GEORGE JEAN    FL96-13075    11D-2    Missup    4-27-99
_Inmate's Name_                           _Arrest#_    _Cell_    _Facility_    _Date_

**PART A – INMATE'S GRIEVANCE**

To Ms STANLEY HolMes:

Please I wrote you this grievance to let you know
the snake the doctor order for Me do not HAVE No
good cake. Some deputies like D. CURRIe and other
deputies give the TRuSties cigarrette the pay them to Mix
up my life in the SNAKe SHAKe but some Nasty STuFF in it
keep spite in it and put Mop WAter in it. Nobody cant

_Inmate's Signature_                           _Date Signed_

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B – RESPONSE**

DRink or eat such Thing like Inmate. Please When
the kitchen put Name in the cups snake please do not
put my Life in TRusties Hand the deputies dont care.
Please do us A FAvor let the kitchen delivery My SHAKe
That trustee No Longer works in 1(I) Please.

~~Dep D~~ /7710                           5/22/97
_Reviewing Deputy's Signature/CCN_                _Date_

_Supervisor's Signature/CCN_                      _Date_

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**

I _____, wish to appeal the response.

_Inmate's Signature_                           _Date Signed_
**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

**DIRECTOR'S RESPONSE TO APPEAL**

_Director's Signature_                          _Date_
BSO DJ#51 (Revised 4/93)

BROWARD SHERIFF'S OFFICE
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

## TO BE COMPLETED BY INMATE

GEORGE SEAN F196.13075 11D2 Main Jail 5-4-97

Inmate's Name          Arrest#     Cell  Facility    Date

### PART A - INMATE'S GRIEVANCE

Please something I cannot believe to those
deputies pay the gang trusties pot or cigarette
to trap to and drink to give to me. Twice I find
pot or hurt with alcohol drink. I try to speak to
_____ and _____ to any body use the ___
_____ they deputies _____ use the same
_____

Inmate's Signature                          Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

_____

Reviewing Deputy's Signature/CCN                    Date

Supervisor's Signature/CCN                          Date

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature                          Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

Director's Signature                         Date
BSO DJ#51 (Revised 4/93)

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

### TO BE COMPLETED BY INMATE

BB409

| Inmate's Name | Arrest# | Cell | Facility | Date |
|---|---|---|---|---|

### PART A – INMATE'S GRIEVANCE

_____
_____
_____
_____
_____
_____

| Inmate's Signature | Date Signed |
|---|---|

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B – RESPONSE

_____
_____
_____
_____

| Reviewing Deputy's Signature/CCN | Date |
|---|---|

| Supervisor's Signature/CCN | Date |
|---|---|

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

| Inmate's Signature | Date Signed |
|---|---|

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

You were supposed to have 1 slice of bread. As long as you are on a diabetic diet your sugar and fat will be controlled and you will receive more fruits and juices, also an HS snack. You will also see more vegetables on your tray. No snacks are on this diet.

| Director's Signature | Date |
|---|---|

BSO DJ#51 (Revised 4/93)

# BROWARD SHERIFF'S OFFICE
## DEPARTMENT OF CORRECTIONS AND REHABILITATION
## INMATE GRIEVANCE FORM

### TO BE COMPLETED BY INMATE

FC 9613075

Inmate's Name _____  Arrest# _____  Cell ____ Facility ____  Date ____

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

Inmate's Signature _____     Date Signed _____

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_[handwritten response, illegible]_

Reviewing Deputy's Signature/CCN _____     Date _____

Supervisor's Signature/CCN _____     Date 10-13-97

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____     Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

Director's Signature _____     Date _____

BSO DJ#51 (Revised 4/93)

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

*please Some how the Need to Help this situation*

## TO BE COMPLETED BY INMATE

GEORGE JEAN    FL 96-13075    9B4    Not Feed Me    1-28-97
_____
Inmate's Name            Arrest#    Cell    Facility    Date

### PART A - INMATE'S GRIEVANCE

*please I dint Receive My BR.FAST Feeding on 1-28-*
*97. Deputie Ritches Was Working From 11ᵉᵐ to 7-Pᵐ*
*I get When I try I get I suppose to get Diet Tray with*
*Sp. box. He take that I from me Never Return*
*On the Tray. I ask to speak to sergeant He Refus*
*since Nobody Feeding me. Please Why I dint Feed*
*this is further please*

_____
Inmate's Signature                    Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

*1/29/97 I called Nurse thurston and Kitchen he only Receives*
*A Regular Tray with liquid Supplement for P m*
*1/28/97 1:00 He Received Regular tray with Protein*

Sgt R. Barnett 1788
_____
Reviewing Deputy's Signature/CCN                    Date

_____
Supervisor's Signature/CCN                    Date

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

_____
Inmate's Signature                    Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____
_____
_____
_____
_____

_____
Director's Signature                    Date

BSO DJ#51 (Revised 4/93)

Case 0:00-cv-06059-WPD Document 1 Entered on FLSD Docket 01/13/2000 Page 63 of 367

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

**TO BE COMPLETED BY INMATE**

Inmate's Name _____ Arrest# ____ Cell ____ Facility ____ Date ____

**PART A – INMATE'S GRIEVANCE**

_____

_____

_____

_____

_____

_____

Inmate's Signature _____ Date Signed _____

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

**TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW**
**PART B – RESPONSE**

_____

_____

_____

You were seen 6-25-97 & 6-28-97

Reviewing Deputy's Signature/CCN _____ Date _____

Supervisor's Signature/CCN _____ Date _____

**TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.**
I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed _____

WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

**DIRECTOR'S RESPONSE TO APPEAL**

_____

_____

_____

_____

Director's Signature _____ Date _____
BSO DJ#51 (Revised 4/93)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

[illegible]

TO BE COMPLETED BY INMATE

GEORGE SEAN FL 96-13075 | 11 D-2 | [illegible] | 4-2[illegible]

Inmate's Name | Arrest# | Cell | Facility | Date

PART A - INMATE'S GRIEVANCE

To Mr. Stanley Holmes :
[illegible]

Inmate's Signature | Date Signed

WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
PART B - RESPONSE

[illegible]

Reviewing Deputy's Signature/CCN | Date

Supervisor's Signature/CCN | Date

TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I ______________________, wish to appeal the response.

Inmate's Signature | Date Signed

WHEN COMPLETED, KEEP THE TOP OF THE FORM.
RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.

DIRECTOR'S RESPONSE TO APPEAL

Director's Signature | Date

BSO DJ#51 (Revised 4/93)

## TO BE COMPLETED BY INMATE

| Inmate's Name | Arrest# | Cell | Facility | Date |
|---|---|---|---|---|

### PART A - INMATE'S GRIEVANCE

450

3000                                          eetheResu

Inmate's Signature                                    Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

I SPoke To Gain's Aual Nurse Harrisson who Said, I
will be A Regular Tray Plus A Supplement drink To inmate T 3000 calories.
Nurse Hopersson will do a folloup on B.t office

Sgt K Barnett / 788                                    6-11-97
Reviewing Deputy's Signature/CCN                       Date

Supervisor's Signature/CCN                             Date

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature                                    Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

Director's Signature                                   Date
BSO DJ#51 (Revised 4/93)

**BROWARD SHERIFF'S OFFICE**
**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INMATE GRIEVANCE FORM**

## TO BE COMPLETED BY INMATE

Inmate's Name _____ Arrest# _____ Cell ____ Facility _____ Date _____

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

_____

Inmate's Signature _____ Date Signed _____

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

_____

Reviewing Deputy's Signature/CCN _____ Date _____

Supervisor's Signature/CCN _____ Date _____

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____ Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

Director's Signature _____ Date _____

BSO DJ#51 (Revised 4/93)

BROWARD SHERIFF'S OFFICE
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

### TO BE COMPLETED BY INMATE

_____   _____ ____ _____ _____
Inmate's Name                        Arrest#  Cell Facility   Date

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

_____

_____        _____
Inmate's Signature                            Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

_____

_____        _____
Reviewing Deputy's Signature/CCN               Date

_____        _____
Supervisor's Signature/CCN                     Date

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.
I _____, wish to appeal the response.

_____        _____
Inmate's Signature                            Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_____        _____
Director's Signature                           Date

BSO DJ#51 (Revised 4/93)

# DEPARTMENT OF CORRECTIONS AND REHABILITATION
## INMATE GRIEVANCE FORM

### TO BE COMPLETED BY INMATE

| Inmate's Name | Arrest# | Cell | Facility | Date |
|---|---|---|---|---|
| | | | | |

### PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

_____

| Inmate's Signature | Date Signed |
|---|---|

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
### PART B - RESPONSE

_____

_____

_____

_____

| Reviewing Deputy's Signature/CCN | Date |
|---|---|

| Supervisor's Signature/CCN | Date |
|---|---|

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

| Inmate's Signature | Date Signed |
|---|---|

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

| Director's Signature | Date |
|---|---|

BSO DJ#51 (Revised 4/93)

## TO BE COMPLETED BY INMATE

_____    _____ ____ _____    _____
Inmate's Name                    Arrest#  Cell Facility    Date

## PART A - INMATE'S GRIEVANCE

_____

_____

_____

_____

_____

_____

_____

_____        _____
Inmate's Signature                        Date Signed

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW
## PART B - RESPONSE

_____

_____

_____

_____

_____

_____        _____
Reviewing Deputy's Signature/CCN          Date

_____        _____
Supervisor's Signature/CCN                Date

## TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

_____        _____
Inmate's Signature                        Date Signed

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

## DIRECTOR'S RESPONSE TO APPEAL

_____

_____

_____

_____

_____        _____
Director's Signature                      Date

BSO DJ#51 (Revised 4/93)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE GRIEVANCE FORM

*To... WilliamZinder*                                                  *No problem okay*

## TO BE COMPLETED BY INMATE                    *For My Diet Snak*

GEORGE  SEAN  FL96-13075  U-D-2 *FROM The Kitchen*

Inmate's Name _____ Arrest# _____ Cell _____ Facility _____  Date _____

### PART A - INMATE'S GRIEVANCE                                4-13-77

*please I wrote the grivance to ask you
A favor. the doctor order Me A sppl Diet snak
shake from the kitchen I sunpose to get A full
cup shake three time a day. the trustie drink
½ half cup plus out side the cup will dirty. I allway
have half cup. the trustie mistreat it. please
can the kitchen bring us Diet shake in us unit*

Inmate's Signature _____      Date Signed _____

**WHEN COMPLETED, KEEP ORIGINAL (WHITE) FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### TO BE COMPLETED BY THE OFFICE OF INFORMATION AND REVIEW  *please*
### PART B - RESPONSE

*Please Call the kitchen Do something about that.
Please speak to the housing Deputy  Think
about the trusty, this is not a issue for the
kitchen.*

*Thank You  Dep. Hagman*                             4/18/97

Reviewing Deputy's Signature/CCN _____      Date _____

Supervisor's Signature/CCN _____            Date _____

### TO BE COMPLETED IF INMATE WANTS TO APPEAL RESPONSE.

I _____, wish to appeal the response.

Inmate's Signature _____      Date Signed _____

**WHEN COMPLETED, KEEP THE TOP OF THE FORM.**
**RETURN ALL OTHER COPIES TO THE GRIEVANCE BOX LOCATED IN EACH POD.**

### DIRECTOR'S RESPONSE TO APPEAL

Director's Signature _____     Date _____
BSO DJ#51 (Revised 4/93)

IN THE CIRCUIT COURT OF THE _U.S. District_ JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR _West Palm Beach_ COUNTY _of Florida_

STATE OF FLORIDA,
Plaintiff,

Vs.

_SEAN GEORGE_
Defendant.

CASE NO.: _____

_to be assigned by clerk_
_...._
_95-15159 CF 10_

## MOTION FOR APPOINTMENT OF COUNSEL

COMES NOW the Defendant, _SEAN GEORGE_ in propria persona,
acting as his own counsel, and moves this Honorable Court, pursuant to Fla.R.Crim.P.,
Rule 3.111(b)(2), to appoint counsel to represent his interests in this action.  In support
hereof, Defendant submits the following:

1.  The Defendant has filed a Motion got Post Conviction Relief with this Court
on (12-30- ~~96~~ 97)  N/P

2.  The Defendant is confined within the Department of Corrections, as an
indigent person.  As a result, he is unable to pay costs associated with the employing of
counsel and has attached his sworn Affidavit of Indigence hereto.

3.  The Defendant is unskilled in the practice and presentation of the law.  He
submits this request in good faith and verily believes that if counsel is not afforded him,
the viable issues will be ill-presented and/or overlooked because of his layman status.
Moreover, the appointment of counsel would undoubtedly benefit the Court by avoiding
the waste of unnecessary judicial time and expense.

4.  The Defendant is aware the granting of this Motion is purely within the
discretion of the Court.  In support thereof, a Memorandum of Law is attached hereto and
made a part hereof as reference.

1

WHEREFORE, the Defendant prays the Court will grant this Motion for the foregoing reasons.

Respectfully submitted,

SEAN GEORGE
DC# B660423
North Fla. Reception Center
P.O-Box : 628
Lake butler, Fl. 32054

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Appointment of Counsel has been sent by First Class U.S. Mail to the following State Offices on this _6_ day of _January 2000_.

Office of the State Attorney

Broward county court House
201 S.E 6th street
Fort Lauder dale, Fl. 33301

SEAN GEORGE
Defendant, pro se

2

## MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF

## COUNSEL

It is within the discretion of this Court to appoint counsel to the Defendant herein. Gordon V. State, 529 So.2d 1129 (Fla. 5th DCA 1988); Williams V. State, 472 So.2d 738 (Fla. 1985).

However, although the appointment of counsel is not required for every proceeding, it is well settled that a trial court judge's discretion must be exercised as set forth in Graham V. State, 373 So.2d 1363 (Fla. 1979).

The Graham Court set out four factors to be considered in the decision for whether to appoint counsel in collateral proceedings for post conviction relief. Id. at 1366. Also see, Gordon, supra, at 1130.

The Defendant submits that he is unqualified to present his claims without the assistance of counsel and, as such, this Court should grant the attached Motion. As stated by the Graham Court, "any doubt about the need for counsel must be resolved in favor of the indigent defendant."

Respectfully submitted this _6_ day of _JANUARY 2000_.

Respectfully submitted,

_SEAN GEORGE_

Defendant, pro se

3

all of his pre-existing clients combined.

11)   In total, the undersigned devoted 124.5 hours outside of court and 33.5 hours in court, for a total of 158 hours in the defense of this case.

12)   It is within the inherent power of Florida's trial courts to allow, in extraordinary and unusual cases, departure from the statute's fee guidelines when necessary in order to ensure that an attorney who has served the public by defending the accused is not compensated in an amount which is confiscatory of his or her time, energy and talents. <u>Makemson v. Martin County</u>, 491 So. 2d 1109, 1115 (Fla. 1986)

13)   By their very nature, all capital cases can be considered extraordinary and unusual. <u>White vs. Pinellas County</u>, 527 So. 2d 1376 (Fla. 1989)

14)   The time constraints placed upon the undersigned made this an especially extraordinary and unusual case.

15)   Compensation at the rate of forty dollars per hour in this case would be unreasonably confiscatory of the undersigned's time, energy and talents.

16)   The undersigned has a standard hourly rate for private clients of one hundred twenty-five dollars, which numerous courts have found reasonable based upon the undersigned's experience.

WHEREFORE, the undersigned respectfully requests this honorable Court to find that one hundred and fifty-eight hours were reasonably necessary in this cause, that counsel expended said

144

hours, that one hundred twenty-five dollars per hour is a reasonable rate of compensation for the undersigned, that the sum of nineteen thousand seven hundred fifty dollars ($19,750.00) is a reasonable attorney's fee for the undersigned in this case, and that said fee be taxed against the Board of County Commissioners of Indian River County.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing Motion has been furnished to Sharon Brennon, Assistant County Attorney, 1840 25th Street, Vero Beach, Florida 32960, by United States Mail on the _23rd_ day of August, 1991.

Respectfully submitted,

**KESSLER & WHITTON, P.A.**
Attorneys for the Defendant

Michael J. Kessler, Esquire
239 South Indian River Drive
Fort Pierce, Florida  34950
(407) 466-4900
Florida Bar No.  0518778

/45

EXHIBIT "A"
TIME ACCOUNTING

COMES NOW, Michael J. Kessler, counsel for the Defendant herein and files this Affidavit for time spent in defending this cause, as follows:

### OUT OF COURT TIME

DATE                    WORK PERFORMED

6/21/91     Conference with Pacetta re: review of file.
            Conference with Park re: remaining discovery.
            Conference with Garland's secretary re:
            deposition tapes.  Telephone call to clerk;s
            office to confirm appointment.  Travel to Vero
            to obtain portion of casefile.   Conference
            with Pacetta to establish my role as
            sentencing phase and objections/record maker.

                    TIME: 1.0 Hours

6/22/91     Review of indictment.  Review of police reports.
            Review of Tyrone Johnson's statements of
            January 30 and January 31.  Review of client's
            January 30 statement.  Review of statutory
            aggravating and mitigating factors.

                    TIME:  2.5 Hours

6/24/91     Creation of office file. Transport of office
            computer and related supplies to Vero.
            Conference with Pacetta about tasks remaining
            to be done, manner of preparing for sentencing
            phase of capital trial.   Preparation of
            chronology of events, including police
            investigative work. Review of State's witness
            list.

                    TIME: 6.0 Hours

146

6/25/91        Conference with Pacetta, client at jail.
               Introductory discussion of capital trial
               procedure.    Discussion    of   sentencing
               guidelines,  plea  offer,  alibi  witnesses.
               Review of police reports, discovery documents,
               deposition   transcripts.     Preparation   of
               glossary  of  witnesses'  names,  anticipated
               areas of helpful/harmful testimony.

                         TIME:  5.0 Hours

6/26/91        Detailed review of names, dates from police
               reports, deposition transcripts.    Conference
               with   Pacetta   re:   State's   theory   of
               prosecution,  possible  avenues  of  defense.
               Conference with Pacetta re: cross-examination
               of Tyrone Johnson, Conference with client re:
               Pre-Trial Hearing.

                         TIME:  5.0 Hours

6/27/91        Review of deposition transcripts: Fafeita,
               Fornes, Hobin, Rathman, Sneed.    Review of
               Tryone's statements of January 30, January 31,
               April 1.   Conference with Pacetta re: cross-
               examination  of  Tyrone.    Conference  with
               Pacetta  re:  client's  background,  prior
               criminal/juvenile record.

                         TIME:  9.0 Hours

6/28/91        Review of deposition transcripts:  Fafeita,
               Lenz, Farless.    Telephone conference with
               Garland  re:  Kenneth  Johnson.   Telephone
               conference  with  Park  re:  depositions  of
               Preston, Kenneth Johnson, Kay Hammond.

                         TIME:  3.0 Hours

6/29/91        Review of Tryone materials:  3 statements,
               tape of May deposition.  Preparation of Notes
               on cross-examination of Tyrone.   Preparation
               of cross-index of Tyrone's contradictions.

                         TIME:  9.5 Hours

147

7/1/91        Preparation of Death Penalty Motions.
              (unconstitutionality of death penalty,
              specific aggravating factors, statutory
              scheme, death qualification of jury) Review of
              caselaw on change of venue.

                      TIME:  4.0 Hours


7/2/91        Preparation of report for client on
              applicability of specific aggravating factors
              to facts of his case.  Review of tapes of
              depositions of Troy Howard, Sylvester Berry.
              Conference with Pacetta re: Motion, order to
              transcribe depositions.

                      TIME:  4.0 Hours


7/3/91        Deposition of Kay Hammond.  Review of
              Tyrone's statements in light of Hammond's
              testimony.  Conference with Pacetta re:
              cross-examination of Tyrone, Hammond at trial.
              Conference with Pacetta re: advisability of
              calling Hammond as defense witness.
              Conference with Pacetta re: advisability of
              deposing Garland and "Peanut" Johnson.

                      TIME:  3.5 Hours


7/5/91        Preparation of report for client on
              applicability of statutory mitigating factors
              to facts of his case.  Legal research on
              principals, accomplices and accessories,
              including applicable standard jury
              instructions.

                      TIME:  3.5 Hours


7/7/91        Conference with client regarding death penalty
              phase procedures, applicability of specific
              aggravating factors

                      TIME:  2.0


7/8/91        Conference with client.  Review with Client
              of statutory aggravating factors.  Explanation
              of statutory mitigating factors, non-statutory
              mitigating factors, reasons to seek continuance.
              Review of plea offer, possible verdicts and
              corresponding guidelines sentencing ranges.

                      TIME:  3.0


148

7/9/91          Review of tapes of as-yet-untranscribed
                depositions: Tyrone Johnson, Sylvester Berry,
                Troy Howard, Zach Horskins, Larry Smetzer,
                Anthony Wilson.   Conference with Client,
                Pacetta at jail re:  not seeking continuance,
                client's belief in alibi defense.

                      TIME:  8.5 Hours

7/10/91         Review of alibi testimony:  TC Cannon, James
                "Blue" Brothers, Tommy Lee Bertion, Bridgett
                Bartice, Daniel Miles, based on deposition
                testimony and statements contained in police
                reports.  Legal research re:  alibi defense,
                necessity and sufficiency of notice of intent
                to rely on alibi.

                      TIME:  6.5 Hours

7/11/91         Preparation of cross-examination questions to
                include in general cross of witnesses to
                disprove of statutory aggravating factors and
                to   prove   statutory   and   non-statutory
                mitigating  factors.    Legal  research  re:
                applicability of specific aggravating factors
                to this case, specifically as to acts actually
                committed by co-defendants but not client.
                Preparation  of  sentencing  phase  closing
                argument.  Conference with Pacetta re:  cross-
                examination of Tyrone Johnson.

                      TIME:  7.0 Hours

7/12/91         Conference with Pacetta, client at jail
                re:  withdrawal of alibi defense.   Phone
                conference with Blaxill-Deal.  Travel to Vero
                for Preston deposition.  Phone calls to locate
                Pacetta for Preston deposition.  Deposition of
                Carolyn Preston.   Conference with Park and
                Blaxill-Deal re:  length of trial, State's
                decision   not   to   seek   death   sentence.
                Conference with Pacetta re:  removal of death
                penalty considerations.  Discussion of changes
                to be made in voir dire as result of State's
                decision.  Discussion with Pacetta re:  lost
                opportunities in Preston deposition.  Review
                of tape of Preston depositions.  Preparation
                of cross-examination of Preston and Johnnie
                Sneed.

                      TIME:  6.5 Hours

149

7/13/91          Conference with Pacetta. View of crime
                 scene.   Discussion of vantage points from
                 which Miles, Preston and Sneed claim to have
                 viewed Bagley house.   Review with Pacetta
                 consistencies    and    inconsistencies    of
                 eyewitnesses' expected testimony, based on
                 review of deposition transcripts and tapes.
                 Legal research on admissibility of transcripts
                 of defendant's taped statement.   Discussion
                 with Pacetta re: cross-examination of Tyrone
                 Johnson.   Review with Pacetta of Carolyn
                 Preston depositions of July 12, including
                 difficulties    of    impeachment    without
                 transcript.   Conference with Pacetta re:
                 contents of opening statement, tactics and
                 strategy re: timing of making opening
                 statement.    Review of caselaw re: death
                 qualification of jury when State does not seek
                 death penalty.   Review of jury instructions
                 re: third degree felony murder.

                        TIME: 8.0 Hours


7/14/91          Review of jury selections materials.
                 Preparation of topic sheets and question
                 gambits  for  use  by  Pacetta  during  jury
                 selection.  Conference with Pacetta re:  voir
                 dire  issues,  goals,  opportunities.   Review
                 with Pacetta specific lines of questioning for
                 use   on   cross-examination   of   particular
                 witnesses, notably Tyrone Johnson and Anthony
                 Wilson.   Conference with client, including
                 review   of   jury   selection   procedures,
                 withdrawal of alibi notice, waiver of death
                 penalty, plea offer.

                        TIME: 7.5 hours

7/15/91          Review of case on prosecutorial misconduct
(before Court)   during voir dire, including Slappy cases.
                 Review of venire for known names, racial
                 makeup.  Conference with Pacetta re:  burden
                 of proof questions.  Review of twelve pages of
                 jury selection topics and question sets.
                 Conference with Pacetta re:    pretrial
                 publicity.  Conference with client re:  plea
                 offer.

                        TIME: 1.5 Hours


/50

7/15/91
(after court)

Conference with Pacetta re: jury make-up, opening arguments, witnesses anticipated for Tuesday. Another discussion about how best to cross-examine Tyrone. Preparation of cross-examinations of Fafeita, Preston, Sneed, Miles as to identify and Howard, Cannon, Brothers, Wilson, and Johnson as to possession of gun.

TIME: 3.5 Hours

7/16/91
(before court)

Explanation of trial procedures (relating to questioning of witnesses) to client. Review of notes for cross-examinations of Fafeita, Preston, Horskins, Howard. Conference with Client re: plea offer, gain time. Legal research re: applicability of mandatory firearm sentence to one not in possession of firearm.

TIME: 2.5 Hours

7/16/91
(after court)

Review of Preston testimony. Preparation of cross-examination of Johnnie Sneed. Conference with Pacetta re: his decision to cross-examine all remaining witnesses, including Tyrone Johnson and Anthony Wilson. Review of trial notes and preparation of "transcripts" for use in preparing closing arguments later.

TIME: 3.5 Hours

7/17/91
(before court)

Conference with Defendant re: witnesses and testimony expected. Discussion re: plea offer. Review of statements of Johnson, Wilson and Berry.

TIME: 1.5 Hours

7/24/91

Telephone conference with Pacetta re: preparation of Motion for New Trial. Review of trial notes. Legal research on limitation of cross-examination, requested jury instructions

TIME: 3.5

151

7/26/91          Preparation of Motion for New Trial, Notice
                 of Hearing

                           TIME:  1.0


8/6/91           Preparation for Hearing on Motion for New
                 Trial. Review of relevant cases to be
                 argued in support.

                           TIME:  2.0

8/13/91          Preparation of Notice of Appeal, related
                 documents

                           TIME:  1.5

                 Total Out-of-Court Time          124.50

152

COURT TIME

Date                          WORK PERFORMED


7/3/91              Pre-trial Conference, Announcement
                    by defense that it would not seek
                    continuance.  Instructions from
                    Court regarding death penalty
                    procedures to be decided at July 9th
                    conference.

                        TIME:  0.5 Hours


7/9/91              Pre-trial conference.  Hearing on
                    death penalty motions filed by defense,
                    proposed jury selection issues.

                        TIME:  1.0 Hours


7/15/91             Trial:  Jury selection.  Proffer of
                    Williams Rule evidence.  Hearing on
                    Motion to Exclude Williams Rule Evidence.
                    State's opening statement.  Defense
                    opening statement.

                        TIME: 7.5 Hours


7/16/91             Trial: Direct and cross-examinations,
                    including proffers, of witness Fornes,
                    Frazier, Willis, Fafeita, Hobin, Miles,
                    Preston, Green, Horskins, Howard, Farless
                    and Cannon.

                        TIME:  7.5 Hours


7/17/91             Trial:  Direct and cross-examinations,
                    including proffers of Witnesses Sneed,
                    Berry, Bertion, Rathman, Fafeita, Tryone
                    Johnson and Anthony Wilson.

                        TIME: 7.0 Hours

lists.  Hearing on Defense Motion for
Judgment of Acquittal.  Hearing on
jury instructions proposed by Court,
prosecution and defense.  Defense closing
argument.  Prosecution closing argument.
Defense rebuttal argument.  Jury
instructions.  Hearing on Defense
objections to jury instructions.
Additional jury instructions.  Jury
deliberations.  Announcement of jury
question and response.  Further jury
deliberations.  Announcement of jury
verdict.

        TIME:  8.0 Hours

8/6/91        Hearing on Motion for New Trial
Sentencing Hearing.

        TIME:  2.0 Hours

    Total Hours in Court:  33.5

### SUMMARY

Out-of-Court Time 124.50 Hours
In-Court Time 33.5 Hours

TOTAL HOURS:  158.00

                Respectfully submitted,

                KESSLER & WHITTON, P.A.
                Attorneys for the Defendant

                Michael J. Kessler, Esquire
                239 South Indian River Drive
                Fort Pierce, FL 34950
                (407) 466-4900
                Florida Bar No.:  0518778

154

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, STATE OF FLORIDA

CASE NO. 91-83B CF-LBV

STATE OF FLORIDA

vs.

FREDERICK D. JOHNSON

_____/

## MOTION IN LIMINE

COMES NOW the Defendant, FREDERICK D. JOHNSON. by and
through his undersigned counsel, and before trial and the
selection of the Jury, moves this Honorable Court in Limine
to enter a pretrial Order with regard to the following:

1) The Defendant requests that the State and witnesses
for the State be ordered not to mention that the Defendant
had purchased a gun from some inidentified individual be-
cause testimony adduced at the hearing through Officer
Farless indicated that the gun which was purchased by Defendant
bore no resemblance whatsoever to the gun which has been
identified as the murder weapon.  For the Defendant to purchase
a gun is not, in and of itself, illegal;  however to mention
such purchase of a gun which has nothing to do with the murder
is not only irrelevant but extremely prejudicial to Defendant's
interests and of no evidentiary value to the State.

2) The Defendant requests that the State and witnesses
for the State be ordered not to make mention of any drug use
or drug sale by the Defendant.  THe Defendant is not charged
with any such use or sale of drugs relating to the murder
and to allow remarks about drug use or sale by the State or
witnesses would not only be irrelevant but highly prejudicial
to Defendant's rights and interests.

3) The Defendant requests that the State and witnesses
for the State be ordered not to mention or make any reference
to any record or activity of Defendant involving Juvenile
Delinquincy which might or might not have occurred in the

State of Georgia. . To make reference to such activity is not only contrary to law but it would be irrelevant to the charges herein and highly and harfully prejudicial to the Defendant's rights and interests.

WHEREFORE, the Defendant respectfully requests that this Honorable Court grant this Motion in Limine in whole or in part as deemed appropriate.

I CERTIFY that a copy hereof has been furnished to the Office of the State Attorney, 2101 15th Avenue, Vero Beach, Florida 32960; to Katharine Hammond, Esq., 1405 21st. Street, Vero Beach, Florida 32960; and to Jeffrey H. Garland, ESq., 100 Avenue A, Suite 2-C,Fort PIerce, Florida 34950, this 19th day of June, 1991.

ALBERT S. PACETTA, ESQ.#0844527
Attorney for DEfendant, F.D. Johnson
1432 21st Street Suite Q
Vero Beach, Florida 32960
407-770-5907

156

**FELONY MURDER — SECOND DEGREE**
**F.S. 782.04(3)**

Before you can find the defendant guilty of Second Degree Felony Murder, the State must prove the following four elements beyond a reasonable doubt:

Elements

1. (Victim) is dead.

Give 2a, 2b or 2c as applicable —

2. a. [The death occurred as a consequence of and while the crime of (crime alleged) was being committed.]

   b. [The death occurred as a consequence of and while there was an attempt to commit (crime alleged).]

   c. [The death occurred as a consequence of and while there was an escape from the immediate scene of (crime alleged).]

3. (Defendant) was not the person who actually killed (victim) but did knowingly aid, abet, counsel, hire or otherwise procure the commission of (crime alleged).

4. The person who actually killed (victim) was not involved in the commission or the attempt to commit the (crime alleged).

Notes to Judge

1. Define the crime alleged. If Burglary, also define crime that was object of burglary.

2. If 2b above is given, also define "attempt" (see page 55).

*October 1985*                    67

*Exhibit #10.*                    157

## WILLIAM'S RULE

The evidence which has been admitting showing similar crimes, wrongs, or acts allegedly committed by the defendant will be considered by you as an inextricably interwined act or as evidence that relates only to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, the absence of mistake or accident on the part of the defendant.

158

Exhibit #11

R - 4

*16-0915*

1

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT IN AND FOR
INDIAN RIVER COUNTY, FLORIDA

CASE NO. 91-83 B

JUDGE PAUL B. KANAREK

STATE OF FLORIDA,

       Plaintiff,

vs.

FREDERICK D. JOHNSON,

       Defendant.

_____

MOTION FOR POST-CONVICTION RELIEF

    This cause came on for hearing on the 3rd day of December, 1996, before the Honorable Paul B. Kanarek, at the Indian River County Courthouse, Vero Beach, Florida.

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

JAN 2 2 1998

CRIMINAL OFFICE
WEST PALM BEACH

Appearances:

| FOR THE STATE | FOR THE DEFENDANT |
|---|---|
| NIKKI ROBINSON | GEORGE. D. DUGAN |
| Assistant State Attorney | 323 South Second Street |
| 2000 16th Avenue | Fort Pierce, Florida 34950 |
| Suite 329 | |
| Vero Beach, Florida 32960 | |

2

# I N D E X

                                                             Page

DEFENSE WITNESS:

KENNETH JOHNSON
        Direct examination by Mr. Dugan              4
        Cross-examination by Ms. Robinson           10
        Voir dire examination by Mr. Dugan          13
        Examination by the Court                    18



EXHIBITS
                                    Introduced    Admitted
Defense Ex #2, Affidavit                11          14

3

1                    P R O C E E D I N G S

2          THE COURT:  All right.  We're here in 91-83-B, State of

3     Florida versus Frederick Johnson.  This is a continuation of

4     the motion for post conviction relief.  Where's the defendant?

5          BAILIFF GUIRY:  I'll bring him out right now.

6          THE COURT:  Present are the defendant, Mr. Frederick

7     Johnson, his lawyer, Mr. Dugan, and Counsel for the State, Ms.

8     Robinson.  Yes, sir.

9          MR. DUGAN:  Your Honor, just real briefly.  The Court had

10    continued this last time to allow us time to secure some

11    witnesses.

12         THE COURT:  Yes, sir.

13         MR. DUGAN:  And I wanted to advise the Court that of

14    those witnesses, we were not able to locate Haitian Mary, we

15    were not able to locate Mr. Carter, and the other witness that

16    we had, James Brothers, Mark Givens advised this morning that·

17    he went out to pick him up and Mr. Brothers has passed away.

18         THE COURT:  Yes, sir.

19         MR. DUGAN:  So, at this point I just wanted the Court to

20    know what, what we have to offer.  We're going to be offering

21    a witness, Kenneth, Kenneth Johnson.

22         THE COURT:  All right.  You're ready to proceed?

23         MR. DUGAN:  Yes, your Honor.

24         THE COURT:  State ready to proceed?

25         MS. ROBINSON:  Yes, Judge.  Well, no.  One statement I'd

4

1    like to make to the Court.   Mr. Kessler has been, was

2    subpoenaed for the last time here.  He has got a case in Fort

3    Pierce.   I've made arrangements to handle this testimony, if

4    needed, over the phone.   There's been no objection from the

5    defense, if we get to that point.

6         THE COURT:  Is that right, Mr. Dugan?

7         MR. DUGAN:  I have no objection doing it by phone.

8         THE COURT:   All right.   Yes, sir.   Call your next

9    witness.

10        MR. DUGAN:  We'd call Kenneth Johnson.

11   (The witness was sworn by the clerk).

12        THE WITNESS:  (Inaudible.)

13        THE COURT:  Yes, sir.

14        MR. DUGAN:  Your Honor, could I ask the bailiff to maybe

15   loosen or change the arrangement around on the defendant's

16   cuffs so that he could write, if he could --

17        THE COURT:  Okay.

18        MR. DUGAN:  -- just lash one hand or change it around

19   differently.

20   Whereupon,

21                     KENNETH JOHNSON,

22   called as a witness on behalf of the defense, was duly sworn

23   and testified as follows:

24                     DIRECT EXAMINATION

25   BY MR. DUGAN:

5

| | | |
|---|---|---|
| 1 | Q | Kenneth, would you state your name and your address? |
| 2 | A | Kenneth Duane Johnson.  4341 30th Avenue. |
| 3 | Q | And where is it now? |
| 4 | A | Century Corrections Institution. |
| 5 | Q | And what are you in Century for? |
| 6 | A | Murder. |
| 7 | Q | And the murder of who? |
| 8 | A | Miss Bagley. |
| 9 | Q | And how long, how long of a sentence did you get? |
| 10 | A | Two life sentences. |
| 11 | Q | Okay.  And did you have a trial or enter a plea? |
| 12 | A | Plea. |
| 13 | Q | All right.   What relation are you to Frederick |
| 14 | | Johnson? |
| 15 | A | Blood cousins. |
| 16 | Q | And were you called as a witness in his trial? |
| 17 | A | Yes, sir. |
| 18 | Q | And did you testify at his trial? |
| 19 | A | Did I testify? |
| 20 | Q | Yes. |
| 21 | A | Now I'm testifying. |
| 22 | Q | Yeah.  But you didn't testify at the trial, did you? |
| 23 | A | No, sir. |
| 24 | Q | Okay.  All right.  On the night that Miss Bagley |
| 25 | | was, you know, was killed, can you tell me where Kenneth was, |

6

1    or where Frederick was on that night?

2        A    Well, he was in Roy Brown's quarters.

3        Q    Okay.  When did you first come in contract, contact

4    with Frederick that evening?

5        A    Around about eight o'clock.

6        Q    Eight o'clock? What morning?  The morning before or

7    after the murder occurred, the killing?

8        A    The morning before.

9        Q    Before.  About around eight o'clock?

10        A    Yes.

11        Q    And when did Frederick leave your company?

12        A    Five o'clock.

13        Q    About five o'clock the following evening?

14        A    Yes.

15        Q    Okay.  And was it the following evening or the

16    following morning?

17        A    Following morning.

18        Q    Okay.  Five o'clock a.m. then?

19        A    Yes, sir.

20        Q    All right.  And when did, when did Miss Bagley's

21    death or attack occur?

22        A    I don't know.

23        Q    Okay.  Have you been told subsequent to then

24    approximately when it was?  Do you understand about what time

25    it was?

7

1       A    I believe it was in the morning time.  That's what

2    they said.

3       Q    Okay.  Early morning?  Is it your understanding it

4    was before Frederick left your company?

5       A    Explain that to me again, sir?

6       Q    Okay.  Was it your understanding that Frederick was

7    in your company at the time that this killing occurred?

8       A    Yeah, I would say, all of us was at Roy Brown's

9    quarters.

10      Q    Yeah.  And what, and do you know, and you know what

11   time Frederick left you; right?

12      A    Yes.

13      Q    Around five?

14      A    Yes, sir.

15      Q    And what time, do you know what time the killing

16   occurred?

17      A    No, sir.

18      Q    Okay.  All right.  Were you present when the killing

19   took place?

20      A    I was in Roy Brown's quarters.

21      Q    Okay.  And where did the killing take place?

22      A    I don't know.  They said it, I don't know what

23   happened (inaudible).

24      Q    Okay.  All right.  And do you know, in fact, who

25   shot Miss Bagley?

8

```
 1        A    Well, Anthony Wilson, he had came to Roy Brown's
 2   quarters that morning and told us he had done something which
 3   we wouldn't, you know, you know, didn't know what was going on
 4   there or nothing.  My cousin, Fred, he left and went to my
 5   cousin (inaudible) house, and we left and went to my
 6   grandmother's house.  My grandmother say the police and stuff
 7   had been by the house and said that we had committed a murder.
 8   So she told us to go turn ourselves in, which what we, which
 9   that what we did, you know.  Ant then he turned himself in,
10   too, because, you know, something like that, you know, if you
11   didn't do it, you know what I'm saying, ain't no, you know,
12   ain't no (inaudible).
13        Q    And were you or anyone else with you using, using
14   alcohol or drugs?
15        A    My brother Tyrone.
16        Q    Your brother Tyrone?
17        A    Yes.
18        Q    What was he using?
19        A    Alcohol.
20        Q    Were you using any alcohol or drugs?
21        A    Not that much.
22        Q    Okay.  By not that much, well, how much, how much
23   would you say?
24        A    About three or four drinks.
25        Q    Okay.  Any drugs or anything?
```

9

```
1        A    A couple joints.

2        Q    Okay.  Any other drugs?

3        A    No.

4        Q    And you're sure that during this period from eight

5   a.m. until five a.m. the next morning that Frederick was in

6   your company?

7        A    Yes.  All of us were at Roy Brown's quarters.

8        Q    Okay.  And did he ever leave your side for five or

9   ten minutes or anything?

10       A    No, sir.

11       Q    And if he had you would have noticed it; is that

12  correct?

13       A    Yes, sir.

14       Q    All right.  And who all was, who all was with you

15  and Frederick?

16       A    Me, Fred, my brother, Tyrone Johnson.

17       Q    Uh huh.  Okay.  And you were not present when Miss

18  Bagley was killed?  You didn't see her get killed?

19       A    No, sir.

20       Q    And you don't know what time it occurred but some

21  time early morning?

22       A    That's what they said.

23       Q    Okay.  And you understand that it was before five

24  o'clock?

25       A    Yes, they said that.
```

10

1       Q     Okay.

2       MR. DUGAN:   That's all the questions I have for this

3    witness, your Honor.

4       THE COURT:   Yes, ma'am.

5                           CROSS-EXAMINATION

6    BY MS. ROBINSON:

7       Q     Mr. Johnson, you indicated that from eight o'clock

8    in the morning, which was the day before the murder, at eight

9    a.m., until five a.m. the next morning you were with Freddie;

10   is that what's you're saying, January 30th?

11      A     Yes.

12      Q     From January 29th at eight o'clock in the morning,

13   which was the day before the murder, up until five a.m. the

14   next morning you were with Freddie?

15      A     Yes.

16      Q     Okay.   Do you remember signing an affidavit for

17   Frederick?

18      A     Sign an affidavit?

19      Q     Yes.   Let me show you what's been marked as State's

20   Exhibit Number --

21      THE COURT:   It's actually number 2.   There was previously

22   another affidavit marked.

23                      CROSS-EXAMINATION (Continued)

24   BY MS. ROBINSON:

25      Q     Mr. Johnson, let me show you what's been marked as

11

1    State's Exhibit Number 2 and ask if you recognize this and the

2    second page as being your signature.  Is that your signature?

3         A    Yes, ma'am.

4         Q    Do  you  remember  signing  this  affidavit  for

5    Frederick?

6         A    Signing right where?

7         Q    Signing right here (indicating.)

8         A    Yes, ma'am.

9         Q    Can you read what State's Exhibit Number 2 says on

10   the first page, number 2, the affiant being yourself?  Can you

11   read that for me out loud?

12        A    The affiant stated here the confident in the above

13   styled case --

14        Q    Right here.  Number 2, affiant states.

15        A    Affiant states that on first, twenty-nine, first

16   twenty-nine, ninety-one, that he along with Frederick D.

17   Johnson and Tyrone L. Johnson and Anthony J. Wilson were

18   together until twelve, around twelve o'clock a.m. at which

19   time left Frederick to Roy Brown's quarter, Apartment 15,

20   Gifford, Florida.

21        Q    Okay.  And what does number 3 say?

22        A    Defendant state that between the early hours of one

23   o'clock a.m. that he not come into contact with Frederick D.

24   Johnson.

25        Q    Okay.  So that's saying here that you did not come

12

1    into contact with Freddie Johnson from one o'clock in the

2    morning to five a.m.

3         A    Yes, ma'am.  But I, this writing I didn't, I didn't

4    really, you know, I didn't really understand the clerk

5    Okaloosee Correction Institution there, he kind of, you know,

6    pushed me to, I didn't understand half of that.

7         Q    This is your signature.

8         A    Yes.

9         Q.   You're saying that, however, that you were with --

10   MS. ROBINSON:  Let me move State's Exhibit Number 2 for

11   Identification into evidence.  I think it's already part of

12   that 3.850 that was an exhibit attached.

13   THE COURT:  Any objection?

14   MR. DUGAN:  I'd just like to cross-examine him, your

15   Honor.

16   THE COURT:  Do you have an objection to the document

17   being admitted?

18   MR. DUGAN:  I'd just like to cross-examine him before

19   it's, you know, I --

20   THE COURT:  Well, an objection would be that it's not an

21   accurate copy.  I mean, cross-examining is one thing but an

22   objection would be to the admissibility of it.  Is there some

23   objection you have to it's admissibility?

24   MR. DUGAN:  Just until I've examined him I would object

25   to it, your Honor.  I want to ask him, you know, some

13

1    questions about whether or not he made it, what state he was

2    in, before I determine whether or not I feel it's reliable.

3         THE COURT:   You wish to voir dire the witness on the

4    exhibit?

5         MR. DUGAN:   Yes.  Just briefly.

6         THE COURT:   That's fine.  Go ahead.

7                        VOIR DIRE EXAMINATION

8    BY MR. DUGAN:

9         Q    Kenneth, you recall making this deposition?

10        A    What was that?

11        Q    Do you recall signing that deposition?

12        A    No, sir.

13        Q    Okay.  And is what you said in here today the truth?

14        A    Yes, sir.

15        Q    Okay.  Is, was that a, what you read before, what

16   you just read on that sheet of paper, was that accurate on

17   that affidavit?

18        A    No, sir.

19        MR. DUGAN:   That's all the questions I have.

20        THE COURT:   You have any objection to the admission of

21   the document?

22        MR. DUGAN:   Judge, I would object to it in that he

23   recants the statement.  It may go to the weight rather than

24   the admissibility, but I'll object to it.

25        THE COURT:   Over objection it'll will admitted as

14

1    State's 2.

2              CROSS-EXAMINATION (Continued)

3    BY MS. ROBINSON:

4        Q    Mr. Johnson, you indicated that you were together

5    with Frederick Johnson up until five a.m.?  That's what your

6    testimony is here now; is that correct?

7        A    Yes.

8        Q    And you did not kill Mrs. Bagley?

9        A    No.

10       Q    You didn't even go near her house that particular

11   morning?

12       A    No, ma'am.

13       Q    But you pled, didn't you, to the murder of Mrs.

14   Bagley?

15       A    I didn't plead no murder to Bagley.  I didn't say I

16   killed nobody.

17       Q    Did you plead guilty to the charge?

18       A    Yes, I plead guilty because of the conflict,

19   conflict that was going at the time, you know, and they was

20   saying that this way and that right there, and you done it,

21   and I ain't done anything, and had people saying this hand

22   (inaudible) they said I won't get the electric chair, on the

23   other hand they said it's in my best interest, you know, to do

24   this right here.  You know.  When you got people shooting at

25   you like that, you know what I'm saying, you got to plead for

15

1    something.  You know?

2         Q    Okay.  Mr. Johnson, were you aware of the fact that

3    your palm print was found in the murder scene?

4         A    No, ma'am.

5         Q    You weren't aware of that?

6         A    No, ma'am.

7         Q    Your defense attorney was who?

8         A    Mr. Garland.

9         Q    Mr. Garland?

10        A    Yes.

11        Q    And he didn't explain to you that your palm print --

12        A    No, ma'am.

13        Q    -- was found -- You didn't read any of the

14   depositions in this case?

15        A    No, ma'am.

16        Q    Were you aware that your brother, Tyrone, testified

17   against Frederick?

18        A    No, ma'am.

19        Q    Indicating that you and Frederick participated in

20   the robbery and murder of Mrs. Bagley?

21        A    No, ma'am.

22        Q    You weren't aware of that?

23        A    No, ma'am.

24        Q    Are you aware that he testified during Frederick's

25   trial to that?

16

1     A     I was sent to prison.

2     Q     You were sent to prison?

3     A     Yes, ma'am.

4     Q     And where is Tyrone?

5     A     In prison.

6     Q     He's also in prison.  What did he plead to?

7     A     I don't know.

8     Q     Isn't it true he pled to second degree murder?

9     A     I don't know.

10    Q     Now, what did you indicate about Anthony Wilson?

11    You said something about Anthony Wilson that particular

12    morning talking to you.

13    A     Yeah.  He came to Roy Brown's quarters.

14    Q     I'm sorry.  He came to Roy Brown's --

15    A     Quarters.

16    Q     Quarters?  At what time?

17    A     About five o'clock that morning.

18    Q     Five o'clock that morning.  Did he say anything?

19    A     He said he had done something but which, you know,

20    I didn't know what he, you know, was talking about.  And then

21    when we went to my grandmother's house the next morning, that

22    same morning my grandmother said that they had been, the

23    police and the detective been by the house and said that we

24    committed a murder.  So we turned ourselves in.

25    Q     So, Mr. Johnson, just to be sure, you're indicating

17

1    that, first of all, that affidavit that you signed indicating

2    was true and correct, you didn't understand it when you signed

3    it?  That affidavit that I showed you.

4         A    I didn't understand it.  That's right.

5         Q    I'm sorry?

6         A    I didn't understand it.

7         Q    When you signed it.  Can you read and write English?

8         A    A little bit.

9         Q    You read it out loud in court?

10        A    Yes, ma'am.

11        Q    You understood what you read, didn't you?

12        A    Yes, ma'am.

13        Q    Okay.  And you're saying that's in contradiction to

14   what you're testifying to now; is that correct?

15        A    What I'm saying is that when that there was pushed

16   to me the state of mind I was in, the way it was pushed to me,

17   it was my, not, I, I couldn't, you know, I didn't, you know,

18   it was pushed to me as force, you know what I'm saying, by the

19   lawyer, the man at Okaloosee.  You know what I'm saying?

20        Q    What man?

21        A    I don't know what, I don't, at the time that I was,

22   you know, I was going through a lot of problems.

23        Q    What problems?

24        A    A whole lot of problems.

25        Q    What type of problems?

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, STATE OF FLORIDA

‹CASE NO. 91-83B CF

STATE OF FLORIDA

vs.

FREDERICK D. JOHNSON
_____/

NOTICE OF ALIBI PURSUANT TO RULE 3.200 R. Cr. P.

To:  Office of State Attorney, Lunn Park, Esq.

Please take notice that the Defendant, through his under-
signed attorney, intends to use the defense of Alibi in the
above-styled cause and submits for your information the follow-
names of witnesses, their addresses as last known to the
Defense, and the place where Defendant claims to have been
during the time that the alleged crimes occurred for which the
Defendant stands charged:

1.  James Brothers - 407 34th Ave. Vero Beach, Fl.32060
2.  Daniel Miles - 3890 45th Street, Vero Beach, Fl.32960
3.  Eugene Carter - Lot 5 Harry's Mobile Park, GIfford,Fl.
4.  Tommy Lee Bertion - 3400 43rd St. #15 Vero Beach, Fl. 32960.

I HEREBY CERTIFY that a true and correct copy of the fore-
going has been furnished this 1st day of July, 1991, by hand
delivery to the Office of State ATtorney, 2101 15th Ave,
Vero Beach, Fl. 32960, and Katharine Hammond, Esq., 1405 21st St., Vero
Beach, Fl. 32960

Respectfully submitted,

ALbert S. Pacetta, ESq. #0844527
Attorney for DEf. Frederick JOhnson
1432 21st. ST. Vero Beach, Fl. 32960
407-770-5907

Exhibit #7.

18

1          A     Family problem, you know, and these problems right

2    here.

3          MS. ROBINSON:  I have nothing further.

4          THE COURT:  Yes.

5          MR. DUGAN:  Nothing further, your Honor.

6          THE COURT:  Sir, let me ask you, this affidavit that's

7    been admitted as State's Number 2, who asked you to sign that?

8          THE WITNESS:  I don't know the man's name.

9          THE COURT:  Well, how, did somebody tell you that your,

10   that Frederick was filing some sort of motion in court?

11         THE WITNESS:  No.  He told, he told me we were going, you

12   know, you know, we was trying to get back in court, you know.

13         THE COURT:  Did Frederick ask you to sign that affidavit?

14         THE WITNESS:  Well, he didn't, he didn't, you know, I,

15   you know, I was called, I was called up front to the law

16   library.

17         THE COURT:  Right.

18         THE WITNESS:  And the man offered me a pad, he offered me

19   to sign that right there and I told him, I said, what is this

20   right here.  You know.  And he wanted, you know, trying to

21   explain and I was saying, I don't, I don't understand what

22   you're talking about, you know.

23         THE COURT:  Well, when you, you got called to sign this

24   affidavit, did you know that Frederick was filing some sort of

25   pleadings or motion --

1          THE WITNESS:  Well, he --

2          THE COURT:  -- to have his case reviewed?

3          THE WITNESS:  -- he told me when we came back in court.

4          THE COURT:  I see.  So you knew that when they called you

5     up to sign this affidavit?

6          THE WITNESS:  Well, I knew that he was going, he told me

7     that he was going back to court, you know.

8          THE COURT:  He wasn't at the same institution you were

9     at, though, was he?

10         THE WITNESS:  Yes, he was at the same.

11         THE COURT:  He was at the same institution.  Well, before

12    you signed that affidavit didn't you talk to Frederick about

13    it?

14         THE WITNESS:  Not really, not too much.  He, they kind

15    of, kind of kept us, you know, they wanted to keep us, you

16    know, apart so they transferred.

17         THE COURT:  When you signed this, you and Frederick were

18    at the same institution?

19         THE WITNESS:  Yes.

20         THE COURT:  And you said somebody -- I'm not sure I

21    understood -- made you sign that affidavit?

22         THE WITNESS:  Well, it was kind of a force, you know.

23         THE COURT:  Explain to me how someone forced you to sign

24    it.

25         THE WITNESS:  Well, like, like I said, at the time I was

20

1    in, in the wrong state of mind.

2         THE COURT:  Well, explain to me how someone forced you to

3    sign.

4         THE WITNESS:  Well, like, you going to sign this right

5    here, or you've got to sign this right here, you know what I'm

6    saying.

7         THE COURT:  You got to sign it or what's going to happen

8    to you?

9         THE WITNESS:  Well, he didn't, he didn't, you know, he

10   didn't completely threaten, you know, like, like he was going

11   to kill me if I didn't, you know, if I don't sign, you know.

12   But, you know, before, before, you know, I sign, you know, I

13   signed that, you know, really you know, understand what was,

14   you know, was going on.

15        THE COURT:  What do you mean, didn't understand what was

16   going on?

17        THE WITNESS:  Because I didn't read it.

18        THE COURT:  I see.  So you knew that Frederick was filing

19   some sort of pleadings and you knew this had something to do

20   with that?

21        THE WITNESS:  Well, I knew he told me he was trying to

22   get back in court.

23        THE COURT:  I don't have any other questions.  That raise

24   any other questions?

25        MR. DUGAN:  No, your Honor.

1          THE COURT:  Any questions?

2          MS. ROBINSON:  No, Judge.

3          THE COURT:  Thank you, sir.  You can step down.  Call

4     your next witness.

5          MR. DUGAN:  Judge, that's all the defendant's got.

6          THE COURT:  Yes, ma'am.  Any witnesses?

7          MS. ROBINSON:  I don't -- No, Judge.  I don't think the

8     State, I don't think the defense has met its burden as far as

9     the Strickland case.

10         THE COURT:  Okay.  So you don't have any other, no

11    evidence to present?

12         MS. ROBINSON:  I have, I have the defense attorneys who

13    are going to testify but, I mean, I don't believe at this

14    point --

15         THE COURT:  It's your call, whatever you like.

16         MS. ROBINSON:  The State is not going to call any

17    witnesses, your Honor.

18         THE COURT:  Okay.  All right.  Any argument?

19         MR. DUGAN:  Judge, I would make brief argument that this

20    witness was not properly examined by the defense counsel and

21    could have been presented as a witness.  He has given

22    conflicting statements.  Of course, back at the time I don't

23    know if there would have been conflicting statements.  There

24    would have been just one story.  Either the affidavit was --

25         THE COURT:  Is there some testimony, was there some

22

1    testimony that he wasn't, nobody talked to him about the case?

2    I don't think there was any testimony that -- Was there

3    testimony that Frederick's lawyer did, never spoke to him?

4            MR. DUGAN:   That his lawyer never called him as a

5    witness.

6            THE COURT:   Well, okay.  So the testimony is that he

7    never called him as a witness?

8            MR. DUGAN:  Yes, sir.

9            THE COURT:  Not that he never spoke to him or anything

10   like that?

11           MR. DUGAN:  That's correct.

12           THE COURT:  Okay.

13           MR. DUGAN:  And I believe if he had investigated and

14   called him as a witness he could have been asked --

15           THE COURT:     There's   no   evidence  that   he   didn't

16   investigate it.  The only evidence is that he didn't call him

17   as a witness.

18           MR. DUGAN:  That he didn't call him as a witness.

19           THE COURT:  Okay.  Yes, ma'am.

20           MS. ROBINSON:  Judge, I've gone through the transcripts,

21   the trial transcripts, which are present.  There was more than

22   competent testimony, aside from the fact of what Mr. Johnson

23   has testified to, that is in direct contradiction to exactly

24   what  Mr. Kenneth Johnson has testified to.    There were

25   numerous witnesses the State called.

23

1      THE COURT:   Well, I'm looking at the order that Judge

2      Vocelle signed.    There's only three issues that are here

3      today.   Number one, whether there was ineffective assistance

4      of counsel for failure to call Haitian Mary as a witness;

5      whether there was ineffective assistance of counsel for

6      failure to investigate and depose co-defendant Kenneth Duane

7      Johnson; and whether there was ineffective assistance of

8      counsel for failure to call Nathaniel Brian, James Brothers,

9      and Eugene Carter as alibi witnesses.     Those are the only

10     issues.

11     MS. ROBINSON:   Yes, Judge, and I agree.    And the State's

12     argument is the defense has not met its burden.    There has

13     been no evidence, the defendant hasn't even taken the stand to

14     indicate what they would have testified to.    There's been no

15     prima facie showing at all that this was ineffective

16     assistance of counsel.

17     THE COURT:   Strickland requires, what's the test of

18     Strickland that they --

19     MS. ROBINSON:   First of all there has to be an omission

20     or an error on the part of the defense, and then there has to

21     be a showing that this error, if it was, in fact, error,

22     substantially impacted the outcome of the trial.    And I don't

23     believe there's been any showing whatsoever of that.

24     THE COURT:   Anything else?

25     MS. ROBINSON:   No, Judge.

24

1      THE COURT:  Yes?

2      MR. DUGAN:  Nothing else.

3      THE COURT:  Well, this motion was filed quite some time

4  ago and there was an order entered in July of 1996 that denied

5  -- there were originally nine different grounds.  An order was

6  entered in July that denied relief for all but three of the

7  grounds and there's currently, I guess, an appeal pending on

8  that denial.  The only grounds that were left to be decided

9  today were the grounds of, one, whether there was ineffective

10  assistance of counsel for failure to call Haitian Mary as a

11  witness, whether there was ineffective assistance of counsel

12  for failure to investigate and depose, depose co-defendant

13  Kenneth Duane Johnson, and whether there was ineffective

14  assistance of counsel for failure to call Nathaniel Brian,

15  James Brothers, and Eugene Carter as alibi witnesses.  There's

16  been no evidence presented today as to this witness, Haitian

17  Mary.  Apparently she's not available or can't be found.

18  There's no evidence presented as to what she might say had she

19  even been called.  There's no evidence that defense counsel

20  never spoke to Haitian Mary before the case.  As to the next

21  ground, ineffective assistance of counsel for failure to

22  investigate and depose co-defendant Kenneth Duane Johnson,

23  there's no evidence that defense counsel didn't speak to

24  Kenneth Duane Johnson.  The only evidence is that he wasn't

25  called as a witness.  There's not even any evidence that he

1   wasn't deposed.   Actually, the only testimony is that he

2   wasn't called to testify at the trial.   And the third, the

3   third issue, ineffective assistance of counsel for failure to

4   call Nathaniel Bryant, James Brothers and Eugene Carter as

5   alibi witnesses, there's no testimony presented as to what

6   they would have testified had they been called.   There's no

7   testimony that counsel never, defense counsel never spoke to

8   them.   There's, the burden is on the defendant in this case to

9   present evidence on these issues.   The defendant's failed to

10  present any evidence that there were errors or omissions on

11  behalf of counsel that would render counsel's representation

12  ineffective or the second basis under Strickland.   So the

13  Court would deny the motion for post-conviction relief.   I'll

14  prepare an order myself and get it filed.

15       MS. ROBINSON:   Judge, just for the record, Nathaniel

16  Bryant was one of the witnesses that was called in the first

17  part of this evidentiary hearing.

18       THE COURT:   Yes, ma'am.   Let me just go back and look at

19  that.   I have my notes.   Yes, ma'am.   As to Nathaniel Bryant,

20  he testified previously at the first part of the hearing, he

21  denied any involvement in this case, denied that Mr. Johnson

22  was involved in the case.   When shown the affidavit which Mr.

23  Johnson had submitted as part of his motion for post-

24  conviction relief, this is an affidavit that's supposedly

25  signed by him that says that -- well, he denied even signing

26

1    the affidavit.  He didn't present any testimony that defense

2    counsel didn't talk to him or was ineffective in failing to

3    call him, the defense's failure, failed to meet the burden of

4    Strickland, and the Court would deny the relief and I'll have

5    an order entered by the end of this week.  Okay.  Thank you

6    very much.

7    (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

## C E R T I F I C A T E

I, Patricia J. Edwards, certify that I transcribed the Hearing on Motion for Post-conviction Relief in Case No. 91-83-B, State of Florida v. Frederick D. Johnson, and that the preceding pages, numbered 1 through 26, inclusive, constitute a true and accurate transcription of the proceedings from the videotaped recording, to the best of my ability.

DONE AND SIGNED this 15th day of January, 1998.

*Patricia J. Edwards*
Patricia J. Edwards

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402


FREDERICK D. JOHNSON                CASE NO. 96-02737

  Appellant(s),

vs.

STATE OF FLORIDA                    L.T. CASE NO. 91-83 CFB
                                    INDIAN RIVER

  Appellee(s).


August 28, 1996
_____

BY ORDER OF THE COURT:

        ORDERED that appellant's August 7, 1996 appeal is sua

sponte dismissed as premature.  See <u>Smith v. State</u>, 670 So. 2d

1181 (Fla. 4th DCA 1996); <u>Cooper v. State</u>, 667 So. 2d 932 (Fla.

2d DCA 1996).


    I hereby certify the foregoing is a
    true copy of the original court order.


    MARILYN BEUTTENMULLER
    CLERK

    cc:   Frederick D. Johnson
          Attorney General-W. Palm Beach
          State Attorney 19
          Public Defender 15
          Jeffrey K. Barton, Clerk

          /DM

                                   RECEIVED
                                  OFFICE OF THE
                                 ATTORNEY GENERAL

                                 AUG 2 9 1 76

                                 CRIMINAL OFFICE
                                 WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402


FREDERICK D. JOHNSON                    CASE NO. 97-00308

  Appellant(s),

vs.

STATE OF FLORIDA                        L.T. CASE NO. 91-83
                                        INDIAN RIVER
  Appellee(s).


October 2, 1998

_____

BY ORDER OF THE COURT:

        ORDERED that appellant's motion filed August 19, 1998,

for rehearing/clarification and rehearing en banc is hereby

denied; further,

        ORDERED that appellant's amended motion filed August 28,

1998, for rehearing and to recall mandate is hereby denied.


I hereby certify the foregoing is a
true copy of the original court order.

MARILYN BEUTTENMULLER
CLERK

cc:    Frederick D. Johnson
       Attorney General-W. Palm Beach
       Jeffrey K. Barton, Clerk
       Public Defender 15
       State Attorney 19
       Reginald B. Sessions


       /CH

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

OCT -5, 1998

CRIMINAL DIVISION
WEST PALM BEACH

# R - 5

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

*L97-1-2788*

FOURTH DISTRICT

FREDERICK JOHNSON,

　　　　　Appellant,

v.　　　　　　　　　　　　Case No. 97-00308

STATE OF FLORIDA,

　　　　　Appellee.

_____/

DOCKETED
SEP 15 1997
R.B.
ATTORNEY GENERAL

## MOTION FOR CLARIFICATION OF NEED TO FILE BRIEF

COMES NOW Appellee, the State of Florida, by and through undersigned counsel, and moves this Court for an order setting a briefing schedule in this cause, and as grounds states:

1. The instant case is an appeal from the **summary** denial of Appellant's Rule 3.850 motion for post conviction relief.

2. Rule 9.140(i) <u>Fla. R. App. P.</u> provides that appeals from the denial of Rule 3.850 and Rule 3.800 motions may be disposed of in a summary fashion, and provides that no briefs are to be filed. <u>See also</u> <u>Davis v. State</u>, 660 So. 2d 1161 (Fla. 4th DCA 1995). Without obtaining leave from this Court, Appellant served the office of the undersigned with his initial brief on September 11, 1997. Moreover, Appellee has not yet received a copy of the record

in this cause, nor does it appear that the record has yet been forwarded to any one.

3.    If the provisions of Rule 9.140(i) are not strictly construed, Appellee is concerned that it may be interpreted that the State has an answer brief due for service on October 1, 1997; alternatively, if the provisions of Rule 9.140 are strictly construed, Appellee may not be required to file a brief at all.  In any event, the State would respectfully request that this Court not reverse the trial court's denial of Appellant's Rule 3.850 motion without ordering Appellee to respond to Appellant's allegations.

4.    Undersigned counsel has not contacted FREDERICK DOUGLAS JPOHNSON, pro se, regarding the relief requested in this motion because he is presently incarcerated, thus she cannot represent whether or not he  opposes the relief requested in this motion.

WHEREFORE, Appellee respectfully requests this Court enter an order determining whether Appellee is required to file an answer brief in this cause, and if so, when.

2

Respectfully submitted,

ROBERT A. BUTTERWORTH
Attorney General

SARAH B. MAYER
Assistant Attorney General
Florida Bar No. 367893
1655 Palm Beach Lakes Boulevard
Suite 300
West Palm Beach, FL 33401-2299
(561) 688-7759
Counsel for Appellee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

"Motion for Clarification of Need to File Brief" has been forwarded

by U.S. Mail to: FREDERICK DOUGLAS JOHNSON, DC#582112, South Bay

Correctional Institution, 600 U.S. Highway 27 South, South Bay, FL

33493, this 15th day of September, 1997.

Of Counsel

3

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

FREDERICK D. JOHNSON

  Appellant(s),

vs.

STATE OF FLORIDA

  Appellee(s).

CASE NO. 97-00308

L.T. CASE NO. 91-83
INDIAN RIVER

September 5, 1997

_____

BY ORDER OF THE COURT:

      ORDERED that appellant's August 29, 1997, Motion to

Continue is denied.  Appellant's Notice of Appeal is timely.

I hereby certify the foregoing is a
true copy of the original court order.

MARILYN BEUTTENMULLER
CLERK

cc:   Frederick D. Johnson
      Attorney General-W. Palm Beach
      Jeffrey K. Barton, Clerk
      Public Defender 15
      State Attorney 19
      Reginald B. Sessions

      /CH

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

SEP 08 1997

CRIMINAL OFFICE
WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

FOURTH DISTRICT

| | | |
|---|---|---|
| FREDERICK DOUGLAS JOHNSON ) | | ‹ CASE NO.: 97-00308 |
| Appellant ) | | L.T. NO.: 91-083-CF-B |
| ) | | |
| vs ) | | |
| ) | | |
| STATE OF FLORIDA ) | | |
| Appellee...........) | | |
| ) | | |
| _____/) | | |

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

SEP 15 1397

CRIMINAL OFFICE
WEST PALM BEACH

INITIAL BRIEF OF APPELLANT

On appeal from the Circuit Court of the Nineteenth

Juidicial Circuit, In and For Indian River County,

Florida [Criminal Division].

*State's Pleading
(Brief) Due
October 1, 1997*

FREDERICK DOUGLAS JOHNSON
PRO SE

FREDERICK DOUGLAS JOHNSON
SOUTH BAY CORRECTIONAL FACILITY
600 U.S. HWY 27 SOUTH
SOUTH BAY, FLORIDA 33493
APPELLANT PRO SE

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS........................    i

TABLE OF AUTHORITIES....................iii

PRELIMINARY STATEMENT...................   1

STATEMENT OF THE CASE...................   1

STATEMENT OF THE FACTS..................   2

SUMMARY OF ARGUMENT.....................   9

ARGUMENT................................  11

POINT I

Whether Trial Counsel rendered ineffective assistance of counsel by his failure to object to challenge a Juror for cause or otherwise remove a biased Juror..........11

POINT II

Whether Trial counsel rendered ineffective assistance of counsel for failure to object to the hearsay testimony of Deputy Donald Hart...................................14

POINT III

Whether Trial Counsel rendered ineffective assistance of cpounsel for failure to call any witness on Appellant's behalf when counsel knew of the existance of such witnesses, and the witness were available for trial and would have established an alibi witness for Appellant..................:...17

POINT IV

Whether Trial Counsel rendered ineffective assistance of counsel for failure to request limiting instructions....26

<u>POINT V</u>

Whether trial Counsel rendered ineffective assistance of counsel for failure to request Jury Instructions for Second Degree Felony Murder....................................29

<u>POINT VI</u>

Whether Trial Counsel rendered ineffective assistance of counsel for failure to request William's Rule Instructions in regards to the testimony of Tyrone Hans Johnson and Anthony Wilson...34


CONCLUSION.............................. 39

CERTIFICATE OF SERVICE.................. 39

# TABLE OF AUTHORITIES

CASES                                          PAGE

Adams v State, 341 So.2d. 765, 768............    33
(Fla. 1976)

Armstrong v State, 104 S.Ct. 203.............    17
(Fla. 1983)

Blackburn v State, 447 So.2d. 424............    14
(Fla. 5th DCA 1984)

Brown v State, 206 So.2d. 377................    34
(Fla. 1968)

Cambell v State, 616 So.2d. 995..............    21
(Fla. 2nd DCA 1992)

Cambell v State, 624 So.2d. 842..............    21
(Fla. 1992)

Drake v State, 400 So.2d. 1217...............    26
(Fla. 1981)

Ferguson v State, 417 So.2d. 639.............    14
(Fla. 1982)

Gordon v State, 469 So.2d. 795...............    13
(Fla. 4th DCA 1985)

Green v State, 228 So.2d. 397................    29
(Fla. 2nd DCA 1969)

Jackson v State, 498 So.2d. 906..............    16
(Fla. 1986)

Jenkins v State, 547 So.2d. 1017, 1020.......    16
(Fla. 1st DCA 1989)

Jones v State, 609 So.2d. 69.........................   21

(Fla. 2nd DCA 1993)

Keller v State, 586 So.2d. 1258....................   16

(Fla. 5th DCA 1991)

Lowe v State, 500 So.2d. 578.......................   36

(Fla. 4th DCA 1986)

Mancera v State, 600 So.2d. 550....................   21

(Fla. 2nd DCA 1992)

McElween v State, 415 So.2d. 746...................   16

(Fla. 1st DCA 1982)

Rivers v State, 425 So.2d. 101, 105................   36

(Fla. 1st DCA 1983)

Skipper v State, 420 So.2d. 877....................   35

(Fla. 1982)

State v Dixon, 283 So.2d. 1.........................   32

(Fla. 1973)

State v Gordon, 469 So.2d. 795.....................   14

(Fla. 1985)

State v Terry, 336 So.2d. 65.......................   34

(Fla. 1982)

Townsend v State, 420 So.2d. 615...................   26

(Fla. 4th DCA 1982)

Traylor v State, 498 So.2d. 1297...................   27

(Fla. 1st DCA 1986)

United States v Decoster III, 624 F.2d. 197, 209.....   21

(DC Cir. 1976)

Van Gallon v State, 50 So.2d. 882..................... 16
(Fla. 1951)

Vazquez v State, 405 So.2d. 177....................... 28
(Fla. 1981)

Vazquez v State, 420 So.2d. 946....................... 28
(Fla, 1981)

Williams v State, 110 So.2d. 654..................... 26
(Fla, 1959)

Williams v State, 515 So.2d. 1042................... 17
(Fla. 3rd DCA 1987)

Yoris v State, 609 So.2d. 69......................... 21
(Fla. 2nd DCA 1992)

Young v State, 511 So.2d. 735........................ 21
(Fla. 2nd DCA 1992)

Ziegler v State, 404 So.2d. 861...................... 27

OTHER AUTHORITIES

FLORIDA STATUTES

90.404(2)(A)........................................ 27
90.801(2)(B)........................................ 16
775.082............................................. 33
775.083............................................. 33
775.084............................................. 33

## PRELIMINARY STATEMENT

FREDERICK JOHNSON was the defendant, and will be referred to as Appellant or Johnson in this Initial Brief.

The State of Florida was the prosecuting authority and will be referred to as the State in this Initial Brief.

The pages of the trial transcripts are consecutively numbered. All references to the transcripts will be denoted by the symbol "T", followed by the appropriate page number in parenthesis.

## STSATEMENT OF THE CASE

Appellant was indicted, along with two others not involved in this collateral attack, with first degree murder, armed burglary of an occupied dwelling, and robbbery with a firearm (T. 1151-1152). The co-defendants were charged in a fourth count that did not apply to th Appellant (T. 1152). A jury returned verdicts of guilty as charged on all three counts (T. 1252-1253). The trial court adjudicated Johnson guilty and imposed sentences of Life imprisonment, and two consecutive terms of probation, each term for ten years (T. 1267-1278).

Notice of Appeal was timely filed from the judgements and sentences to the Fourth District Court of Appeal, in Appellate Case Number 91-2379 (T. 1284-1285).

1284-1285).

## STATEMENT OF THE FACTS

Johnson was separately tried from two co-defendants. The State did not seek the death penalty (T 68). The trial court appointed an additional attorney to represent Johnson due to the inexperience and apparent inability of the initially appointed attorney to handle the case (T 65). At the trial it was shown the *appellants* and Kenneth johnson and Tyrone Johnson, *appellants* cousins, got together with Anthony Wilson on the evening of January 29, 1991, with the intent to break into someone's house with the intent to steal. Anthony Wilson established that *appellant* and Tyrone Johnson knocked on the door of Wilson's girlfriend's house to ask Wilson if he wanted to "jack" somebody (T 695-696). Wilson asked them to return later, as Wilson was visiting with his girlfriend (T 695-696). Later Wilson went with defendant and Tyrone (T 696). Tyrone's brother Kenneth joined them, and Tyrone obtained a pair of wire cutters (T 696-697). Wilson dropped away from them when he stopped to telephone his girlfriend, and after finishing the call Wilson went back to his house (T 697-698). Wilson met with *appellant*, Kenneth and Tyrone about 2:00 a.m. when they came to his house and told him that they were going to the Haitian house, where a Haitian lady lived (T 698). Wilson went with

-2-

them (T 698-699). The four of them attempted to break in, but failed when the
lady started screaming, and all four of them ran away (T 699-700). What they
did was cut a wire, that turned out to be the cable tv wire instead of the
telephone wire, and break a window (T 699-700). But her screaming convinced
them to run (T 699-700). Wilson went home after this (T 700). A short time
later he heard two shots, and saw Tyrone and Kenneth, but *appellant* was not
with them at that time (T 718). Wilson asked where they had been, and Tyrone
told Wilson that they had just robbed and old lady, but she had started
screaming and he shot her (T 718). Tyrone and Kenneth were on their way to
buy drugs (R 718). Wilson went down the road and ran into *appellant* pushing a
bicycle (T 720). Wilson asked *appellant* if he had seen his cousins, and
*appellant* told him that he had not (T 720). Wilson asked *appellant* where they
had been, and *appellant* replied that "we did some crazy stuff" and had to
leave, but *appellant* did not tell Wilson what it was (T 720-721). Wilson
quoted *appellant* as having said: "I had to leave them because they were doing
stupid shit." (T 722-723). Wilson also saw *appellant* and Tyrone and Kenneth
at a place known as Brown's Quarters where Tyrone took a gun out of his
jacket and gave it to *appellant* (T 705-707). Kenneth gave some money to
*appellant* for drugs (T 617-618, 705-707). This was the gun that Tyrone had
used to kill the victim, and was a gun that Troy Howard had given to

-3-

*appellant* in mid-December (T 530-531). When Howard heard about the murder on the 30th he found *appellant*, and *appellant* told him he did not know anything about it (T 530-531). Tyrone Johnson testified as a state witness under grant of testimonial immunity (T 794-795). Tyrone was 19 years old, the brother of Kenneth Johnson and the cousin of *appellant* (T 794-795). He was the person who was hiding under the victim's window with his brother Kenneth who shot her after she looked out and said she was going to call the police (T 806-807). Tyrone testified that as she looked out she must have seen Kenneth because that is when Kenneth shot her (T 807). At this time *appellant* was standing in front at the other end of her house (T 807). *appellant* ran away when Kenneth shot the gun through the window (T 807). Then Kenneth shot her again, and each of the brothers, Tyrone and Kenneth, went in through the window and took money and jewelry from the house (T 809). The plan had been for *appellant* to be a look out, but he ran and did not warn them when other people went by (T 905-906). Tyrone testified that *appellant* did not do any of the things at the victim's house (T 106). Tyrone Johnson admitted that it was his idea to burglarize the house (T 885-886). Tyrone hid in some bushes in the back yard of the victim's house after the window was broken, but *appellant* ran across the street and did not return until coaxed back by Tyrone (T 825-827). Then *appellant* only stood briefly at the other end of the

-4-

house. When Kenneth fired the shot, *appellant* ran away before the second shot was fired and before either Tyrone or Kenneth entered the house (T 825-827). Tyrone testified that after leaving the victim's house, he and Kenneth went to a place known as "Cookie's" and smoked crack, then later went to a place known as Brown's Quarters where they met up with the *appellant* again (T 831, 898). They had agreed to meet there (T 831). Both Tyrone and Kenneth gave money to *appellant* for drugs they had bought from him (T 685). Tyrone also testified that when *appellant* ran away prior to the entry he did not return to the scene of the murder and burglary (T 891-892). Tyrone was extremely upset after the murder, and when he was at Brown's Quarters he kept hiding in the closet or under the bed whenever a car would go by (T 601-602, 615-616). Later at his grandmother's house that morning he said that he knew what he had done was wrong and he wished he had not been there (T 816-818). When Tyrone gave his first statements to the police he protected his brother by blaming the killing on *appellant* as Kenneth had told him to do, but he admitted that those statements had been lies (T 817-819, 905-907).

Arthur Cannon, known as T.C., lived at Brown's Quarters (T 596-598). He had gone to sleep at about 9:00 or 10:00 p.m. on January 29 (T 598). He woke to a knock on the door when Tyrone, Kenneth and *appellant* came to his apartment (T 599). This was late at night, but there was no electricity in

-5-

the place and he had no clock so he was unable to tell what time it was (T 599-600, 699). Another witness, Tommy Bertion, who was sleeping at T.C.'s, placed the time after 3:00 a.m. (T 661, 664). *appellant* was selling crack to Tyrone and Kenneth at T.C.'s, but witness Bertion testified that *appellant* was not smoking it (T 685). Kenneth said that he had about $500.00, and that Tyrone had money too (T 687). When Bertion indicated to *appellant* that he noticed how much money Kenneth and Tyrone had, *appellant* stated that they had "jacked a dread." (T 687-689). Arthur Cannon also testified that *appellant* was selling crack to Kenneth and Tyrone, not buying it (T 617).

Carolyn Preston was walking by the victim's house after midnight when she met a younger male walking past her (T 550-552). He asked her what was up, and she said nothing (T 552). As she went on he turned and went toward the victim's house (T 551). She identified *appellant* as this person (T 552, 558). A friend of hers drove by, but before driving off she heard a sound like a tin can being kicked and turned to see the young man she had passed standing by the victim's back porch (T 551-553). She was out looking for crack cocaine, and admitted using cocaine earlier that night (T 557). Objection was sustained to *appellant* questioning her about the use of crack cocaine at times after that night and the time of her trial testimony as that usage might affect her ability to recall and relate facts correctly (T 573, 578).

-6-

Johnny Sneed was watching a late movie on tv when he ran out of cigarettes (T 663-664). He rode his bicycle to a store named Winston's at a time after 1:00 a.m. (T 635). As he went by the victim's house he saw somebody standing in the victim's yard and 2 or 3 more people standing out by the road (T 635-636). He said it was not unusual to see people up and down the street all night (T 635). He did not get a good look at the person because he did not pay particular attention as he rode by (T 637). The next day he heard about the murder and talked to the detective who showed him photographs (T 638-639). He picked a photograph of *appellant*, but in court he testified that he could not swear that appellant is the person he saw (T 638-639, 659).

Daniel Mills was riding his bike on the night of the murder coming back from Mosley's store when he passed the victim's house (T 540-542). He saw three people and was able to identify Tyrone and Kenneth Johnson standing near the carport of the victim's house (T 542, 546). He also saw a third person standing back in an open field (T 543). He was not able to identify that person (T 544). About 10 to 15 minutes later he heard two shots (T 544). He knows *appellant* when he sees him, and did not see this third person talking to the two persons near the victim's house (T 545, 547).

Although Anthony Wilson testified that he went home before the others

-7-

went to the bridge after attempting to break into the Haitian lady's house, a witness, Zachary Horskins, saw Wilson with the others sitting on a bridge at about 1:00 a.m. (T 525-526). Sylvester Berry, another brother of Tyrone and Kenneth, and also Appellant's cousin, testified that when he got home from work on the afternoon after the murder that he went and gathered his brothers and took them down to the police station (T 736-737). Then he went and found Appellant and Anthony Wilson (T 737). Appellant ran when Sylvester wanted to speak to him, but when he caught up with Appellant, Appellant said that he and the other three went over to a woman's house but Appellant would not explain (T 738). Appellant also said, "Man, don't put me in this." (T 737). Appellant also talked to Sylvester several days later, when Appellant was in jail, and he kept saying that he did not do it (T 740-741).

Apparently, the gun used in the murder was the one Appellant gave to Tyrone and which Tyrone left under the mattress in Arthur Cannon's apartment (T 602, 612). When Cannon found the gun he threw it in the weeds behind his apartment (T 612). Detective Fafeita found the gun in a trash container at Brown's Quarters (T 486).

Appellant gave a statement to the police on the night after the murder when Appellant went to the police station at the insistence of his cousin Sylvester Berry (T 459-460). Appellant denied any knowledge of the murder (T

-8-

460). *Appellant* was charged with murder after the second statement Tyrone gave to Detective Fafeita which was admittedly false in its accusation of defendant (T 467, 818-819, 905-906).

The medical examiner testified that autopsy of the victim showed that she suffered two gunshot wounds; one was in the upper chest under the left collar bone, the other was in the back near the spine in the chest area (T 419). She died from the gunshot wound to the chest because it pentrated the lungs and the aorta (T 421). The gunshot wound to the back would not have been expected to be fatal as it was relatively minor (T 428). The bullet wounds were irregular, leading the medical examiner to the conclusion that they likely had been fired through an intermediate target, possibly a window (T 421).

The hand prints of Kenneth Johnson were found on the bathtub in the victim's house (T 342, 352). There were two holes in the screen to the victim's bedroom (T 353). The screen was found in the wooded area nearby (T 355).

The earlier attempted burglary was at a house approximately two blocks away from the victim's house, and at both houses a wire had been cut leading into the house (T 391, 431-432).

## SUMMARY OF THE ARGUMENT

-9-

Appellant argues that counsel rendered ineffective assistance of counsel by his failure to challenge a juror for cause or otherwise remove a biased juror; failure to object to hearsay testimony of Deputy Donald Hart; failure to call any witnesses on Johnson's behalf when counsel knew of the existance of such witnesses, and the witnesses were available for trial and would have established an alibi witness for Johnson. Counsel further failed to request limiting instructions, jury instructions for second degree felony murder, and William's Rule instructions in regards to the testimony on Tyrone Hans Johnson and Anthony Wilson. Counsel's omissions prejudiced the Appellant and deprived him of his Fifth, Sixth and Fourteenth Amendment rights.

## ARGUMENT

ISSUE I: Whether or not the *appellant* received effective assistance of counsel?

After being convicted as charged by the jury, Johnson was sentenced to life imprisonment with a mandatory twenty-five (25) years, and a consecutive sentence of ten years probation. Notice of appeal was timely filed. On November 12, 1992, the Fourth District Court of Appeal affirmed his conviction and sentence (citation unknown; Appellate Case No.: 91-2379).

Initially, the *Appellant* notes much to his chagrin that there does not appear to be a case within Florida jurisprudence where a prosecutor openly challenged the competency and ability of defense counsel (T 50-67). This concern was, remarkably, also shared by the trial judge (T 50-67). The attention focused on defense counsel's ability lead to the appointment of co-counsel. Because of the myriad allegations imminitely approaching, it is neccesary to divide this issue into subclaims, beginning with the first claim of ineffective assistance, which is:

Trial counsel was ineffective, pretrial, for failing to exercise a preemptory challenge to remove juror Anderson or otherwise excuse him for

-11-

cause. Counsel knew or should reasonably have known that this juror was biased against Johnson. From the very begining, juror Anderson demonstrated dubious compatibility with the goals of defense counsel. The *appellant* should note that Anderson has been vicariously identified as UNINDENTIFIED VOICE and MR. ANDERSON, but both are clearly one and the same, as the following demonstrates:

MR. PACETTA: ....We all in agreement on that?

UNIDENTIFIABLE VOICE: I might have a — a feeling on that. My feeling — my gut feeling is that these people are trained professionals. They do this for a living, therefore they would have more ability to logically report events possibly than some lay person. Therefore, I feel that there testimony would be of more value.

*****************************************

MR. PACETTA: You're not — you're not just taking the position then that they should be believed for the simple reason that they wear a uniform. Aren't you the gentleman that was in the military?

MR. ANDERSON: That's correct.

MR. PACETTA: You wore a uniform?

MR. ANDERSON: That's correct.

   (T 246)

Prior to this colloquy, the State had similar results, as is demonstrated by the following:

MS. PARK: Okay. You have some kind of legal experience I guess you got in before they said lawyers had to do it.

MR. ANDERSON: That's right.

MS. PARK: So you acted as trial counsel, is that right?

MR. ANDERSON: And defense counsel.

MS. PARK: And defense counsel. So you [sic] both sides to play at various times.

MR. ANDERSON: That's correct.

(T 207-208)

Counsel clearly did not have Johnson's best interests at heart. Counsel's failure to strike juror Anderson, or excuse him for cause, especially after he stated that the officer's testimony would bear more weight in deciding the case, denied Johnson the right to have a fair and impartial jury, thereby prejudicing the *appellant*. Another reason to support this position is that Mr. Anderson had previously been assaulted by an individual with a chain (T 133). One cannot imagine that juror Anderson will be particularly unbiased against an alleged perpetrator of another assault, one that resulted in death. A similar occurance happened in <u>Gordon v. State</u>, 469 So.2d 795 (Fla.

-13-

4th DCA 1985), rev den. <u>State v. Gordon</u>, 480 So.2d 1296 (Fla. 1985). In <u>Gordon</u>, the 4th DCA agreed with the appellant that it was ineffective assistance of trial counsel for counsel to allow a juror to sit that stated she had heard of that particular case, had discussed it with her friends and was biased. Id at 797. As with <u>Gordon</u>, this cause must be reversed for a new trial.

Trial counsel was further ineffective for failing to object to the hearsay testimony of Deputy Donald Hart (T 275-285). The appellant asserts that he was prejudiced by defense counsel's failure to object to the testimony, because he was denied his Sixth Amendment right of confrontation. This issue could not be raised on the direct appeal because failure to object constitutes a waiver, <u>Ferguson v. State</u>, 417 So.2d 639 (Fla. 1982); since the violations do not rise to the level of fundamental error, <u>Blackburn v. State</u>, 447 So.2d 424 (Fla. 5th DCA 1984).

Deputy Donald Hart testified that he was employed by the Indian River County Sheriff [sic] Department (T 275). On January 30th he responded to a murder scene at Miss Begley's house (T 275-276). He noticed that a wire was cut on the north side of the house, and a broken window on the east side of the house (T 276). After surveying the scene, Detective Sergeant Paul Fafeita advised that there was an attempted burglary approximately two blocks away,

-14-

and Fafieta wanted him to take the report because the [modus operandi] was similar to the murder scene (T 277). At the scene of the alleged attempted burglary Hart found a cut cable tv wire, a cinder block and a broken window (T 277-278). The following colloquy took place:

BY MS. BLAXILL-DEAL:

Q: At the time did somebody tell you once you were at the scene did somebody tell you —

A: Oh — oh, my fault. She said it was about — about twelve o'clock when this incident occurred.

   (T 278-278).

                    *    *    *    *    *

BY MR. KESSLER:

Q: Okay. The other house — do you have any information indicating that the people went into that house?

A: She stated that they did not make access, but they attempted to by breaking the window with the cinder block.

   (T 281)

Hart then testified that items were stolen out of the Begley house (T 281). Nothing was taken from the other house (T 282). These statements were

-15-

irrelevant, as well as hearsay, to try and prove the appellant committed

murder, robbery, and burglary. Neither counsel objected to the deputy's

testimony, and the alleged victim never testified.

> In general, prior consistent statements of a witness are
> inadmissible to corroborate or bolster the witness'
> trial testimony. Van Gallon v. State, 50 So.2d 882 (Fla.
> 1951); Jackson v. State, 498 So.2d 906 (Fla. 1986),
> McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982).
> However, under s. 90.801(2)(b), prior consistent state-
> ments are not hearsay and can be used as substantive
> evidence, if the declarant testifies at trial, is
> subject to cross-examination regarding the prior state-
> ment, and the statement is offered to rebut an express
> or implied charge of improper influence, motive, or
> recent fabrication.
> *  *  *  *  *
> Jenkins v. State, 547 So.2d 1017, 1020 (Fla. 1st DCA
> 1989) (emphasis added) (other cites omitted)

In the case sub judice, the victim never testified, nor was she the subject

of cross-examination, and the statement was not offered to rebut a charge of

bias, corruption, or improper influence. See also Keller v. State, 586 So.2d

1258, 1259 (Fla. 5th DCA 1991). The same can be said of the following

exchange:

BY MS. BLAXILL-DEAL:

Q: Did she state that she called 911 or anything like that?

A: No, the only thing she stated she — she was yelling out, "Mary, call the

police. That's what she was yelling.

(T 284-285).

-16-

The deputy was permitted to offer this hearsay, once again, without objection of either counsel, and the deputy was allowed to continue unimpeded. This omission could not be a matter of trial tactics with the standard of competence expected of attorneys. See Armstrong v. State, 429 So.2d 287, 290 (Fla. 1983), cert. den. 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177. There is of course precedent in support of appellant's assertion that counsel's omission constitutes ineffective assistance of counsel. See Williams v. State, 515 So.2d 1042 (Fla. 3rd DCA 1987). This hearsay testimony was especially damaging because it made the jury infer that if the appellant participated in or was guilty of one alleged burglary, he was necessarily guilty of the second, which resulted in death. The witness was allowed to interject what the victim may or might have said with no corroboration. Because appellants allegations are supported by the record, this court should exercise its authority and remand this cause for a new trial.

The next claim of ineffective assistance involves failure of counsel to call a witnesses. The witness was the victim of the second crime scene where an alleged burglary took place. The victim, known only as Haitian Mary to appellant, refused to testify in trial, and counsel was ineffective for failing to subpoena her to trial to testify. This witness was available to testify in that counsel knew her address, and would have testified that she

-17-

did not see the appellant at the scene of the alleged burglary. The appellant was innocent of any wrong doing; once he realized the intent of his co-defendants, that being burglary, he left the scene. The second witness counsel failed to call was Sylvester Berry, the appellant's cousin, during the hearing on appellant's motion in limine to suppress statements given to the police by the appellant. (T 2-34). Counsel failed to call Berry during this hearing. It was the appellant's position that any statements given by him were given under threats from Berry. The appellant was prejudiced by counsel's omissions because these statements were used against him. The witness was available for trial, and the State had no problem getting him to testify as a State witness. Berry tesified as to the following:

BY MS. BLAXILL-DEAL:

Q: And what did — did you say anything to the defendant at the time?

A: Yeah, I told him, I said — I said, "Doug, man, what's going on?" And then at that time Troy was still talking to him and then he just broke out and started running again. So I ran behind him. And when I ran behind him I tried to grab him by his pants and he went to throwing his elbow and so in order for me to try to stop him from fighting him I had to grab him around back for his back and take him to the ground. When I took him to the ground we fell real hard and I got him like —. I hold him in the back of the head

-18-

and then he went to saying, "Vester, I tell you everything. I tell you everthing." I said, "Well, you tell me right now." I said, "Cause you got my brothers facing a murder charge and I want to know what it is." And so he went to telling me that him and my brothers and Anthony, they had went over to this woman's house and he wouldn't say no more. And I said, "I'm gonna tell you what, I'm gonna take you down there right now and you tell them what you told me." And when I took him down there I don't know what he went behind 'em — behind the door and said. That was the last I heard of it.

(T 738).

This testimony, had it been given, would have changed the outcome of the court proceedings, had it been given during the hearing on the motion to suppress the statements. The statements were not voluntarily given by Johnson, contrary to Detective Gary Farless' testimony (T 6-33). These statements were later used against the appellant (T 762-793), and he was prejudiced by counsel's omission. The taped statements were introduced into evidence and considered by the jury (T 770). This cause should be reversed.

Attorney Pacetta next failed to investigate or depose Kenneth Duane Johnson, appellant's co-defendant. Counsel certainly knew of the existance of this witness. Appellant advised counsel on April 27, May 30, and June 18, 1991 that co-defendant Kenneth Johnson was willing to testify that he left

-19-

the *appellant* at Brown's Quarters after the first alleged burglary and before the alleged murder. As it was, the statements given by Tyrone Johnson to the police against the *appellant* were admittedly lies, uttered with the intent to protect his brother (T 817-819, 905-907). This again prejudiced the *appellant* because the deposition could have been used to impeach the testimony of Tyrone Hans Johnson and witness Carolyn Preston. Tyrone Johnson's testimony was perjurous: deliberate lies given to earn his immunity. This was the only witness that identified the *appellant* as being the third person present at the scene, aside from another witness who claimed the *appellant* spoke to her. Kenneth Johnson did not testify at the trial. Counsel prejudiced the *Appellant* by failing to depose this witness because Kenneth would have testified that the *appellant* was not at the alleged murder and burglary. The witness was available for trial, and would have been willing to rebut Tyrone's testimony that the *appellant* was present after the first alleged burglary.                    Had counsel not made this omission, the results of the court proceedings would have been different.

> As part of the process whereby defense attorney investi-
> gates possible defenses, witnesses who may have informa-
> tion relevant to case should be identified and inter-
> viewed, and, although some failures to investigate may
> be so egregious as to command judicial correction
> without more, claims of ineffectiveness must turn not on
> abstractions as to duty but on appraisal of conse-

-20-

quences, which appraisal should be made in light of
information available to attorney.
United State v. Decoster III, 624 F.2d 197, 209 (DC Cir.
1976). (cites omitted)

Counsel knew of these witnesses. At all opportunities the *Appellant*

beseeched counsel to depose the witnesses, and counsel failed to do so. There

can be no claims of sound trial strategy in the instant case. Counsel's

performance was deficient, and this deficient performance resulted in a

denial of Johnson's rights of due process and the effective assistance of

counsel. See Strickland v. Washington, 104 S.Ct. 2052 (1984). Claims

involving counsel's failure to call witnesses are, of course, cognizable on a

Rule 3.850 motion. Campbell v. State, 616 So.2d 995 (Fla. 2nd DCA 1992),

appeal after remand 624 So.2d 842. This error was especially harmful in that

the evidence against the *Appellant* was not overwhelming. This claim is true

and constitutes ineffective assistance of counsel. If the court cannot refute

the *Appellant's* allegations from the record, it must remand for an eviden-

ciary hearing. See Jones v. State, 627 So.2d 28 (Fla. 2nd DCA 1993), citing

Yoris v. State, 609 So.2d 69 (Fla. 2nd DCA 1992) (failure to use witness

affidavit recanting testimony); Mancera v. State, 600 So.2d 550 (Fla. 2nd DCA

1992) (failure to explore possibility charges were falsified); Young v.

State, 511 So.2d 735 (Fla. 2nd DCA 1987) (failure to investigate possible

alibi witnesses). Counsel next failed to call Nathaniel Bryant as a defense

-21-

witness. Counsel knew of this witness, and the witness would have been willing to testify had he been called. Bryant was available for trial and would have testified that it was Anthony Wilson and not the *appellant* that was the third, unidentified alleged perpetrator of the burglary and murder. The *appellant* was prejudiced by defense counsel's omission, and this allegation will be further clarified below.

In the same vein, counsel failed to call Nathaniel Bryant and James Brothers and Eugene Carter. These witnesses would have corroborated Johnson's alibi defense, and they were available for trial. They expressed their willingness to testify to defense counsel. With a last note to the issue of counsel's failure to call witnesses, Johnson points out that counsel did not call a single witness to testify on his behalf. Johnson could have received death had the State sought it, and at a minimum received a twenty-five years mandatory sentence with twenty years probation. All of the above witnesses would have testified on the *appellant's* behalf that he was not present during the alleged burglary and robbery. The State presented no less than 20 witnesses and no less than 29 exhibits. It was plain professional error for counsel to fail to even introduce a single witness that would have testified for the *appellant*. Counsel clearly knew these witnesses existed because he listed them in the amended notice to rely upon alibi witnesses. These serious

-23-

omissions deprived the *appellant* of his right to a fair trial, and he was clearly denied effective assistance of counsel. This court must reverse.

Arthur Cannon, a/k/a T.C., testified that "whatever time whenever the knock on the door" Tyrone, *appellant* and Peanut (Kenneth Johnson) woke him up (T 599). Cannon did not know what time it was as there was no electricity in the apartment (T 599). He stated that the *appellant* allegedly said "they had just robbed some dreds or something," explaining that a "dred" was a Jamaican (T 600). This revelation was apparently apropos of nothing. The triuvirate was carrying large sums of money (T 600). Cannon stated that he knew Tyrone through his brother Kenneth, and that Kenneth and Tyrone often came to his house (T 600-601). Tyrone was acting funny, and engaged in acrobatic feats such as jumping on the bed and into the closet (T 601, 615). The bed was pulled out from the wall and the cover jerked off (T 602). With the bed in disarray, Cannon discovered a gun under the mattress (T 602). Tyrone was in the room when the gun was found, and Cannon instructed him to remove it (T 603). Tyrone said he would get it when he left (T 603). Cannon didn't see who put the gun there (T 604). Tyrone, Kenneth, and Anthony Wilson was in the room. That night Cannon slept across the street at a friend's house, because he was afraid somebody would shoot up his house as a result of the alleged robbery (T 604). He smoked one rock of cocaine that night (T 604). The next

-24-

morning when he returned to his home, Cannon saw *appellant*, Kenneth, Tyrone, Tommy and James Brothers, and Eugene Carter (T 605). The gun was still under the bed so he took it and threw it away in the trash can (T 606). The gun was identified as a .22-caliber derringer (T 607). Cannon testfied that he also found some jewelry in the dirty clothes basket (T 607). Cannon identified the *Appellant* as being the person who knocked on his door on the morning of January 30 (T 607-608). On cross-examination by Mr. Pacetta, Cannon testified that he didn't open the door when he was awakened, rather Tommy did. (T 608). Cannon was on the sofa and saw all three of them come in (T 609). Cannon then testified that there was a crack party going on after Kenneth arrived with Tyrone (T 613). Bridgette Barti, Cannon's girlfriend, arrived and joined in the party (T 614). The following proffer was elicited from defense counsel:

Q: Did Doug buy any — did Doug buy any crack? Did you see him buy any crack?

A: No, I seen him sell it to him.

Q: Did you see him handling any money?

A: Yeah, I seen him handling drugs to [Kenneth], yeah.

Q: You saw what?

A: He the one selling drugs to him.

Q: Did you see him buying any crack?

A: No, I seen him selling it to him.

-25-

> [S]imilar fact evidence of other crimes is admissible
> when relevant to prove a material fact in issue, such as
> intent. Section 90.404(2)(a), Florida Statutes (1983).
> While there must be more than a general likeness between
> the similar act and the crime charged, Ziegler v. State,
> 404 So.2d 861 (Fla. 1st DCA 1981), absolute factual
> identity is not required. Townsend v. State, [Id.],
> Traylor v. State, 498 So.2d 1297, 1301 (Fla. 1st DCA
> 1986). (other cites omitted) (brackets mine).

Defense counsel had no business repeatedly introducing testimony from the

witness that the *appellant* participated in the crimes that he was not charged

with. Counsel did not object to this testimony, and his actions prejudiced

the *appellants* case by demonstrating propensity to commit a crime. This

deficient performance was not limited solely to Arthur Cannon. When Tommy

Bertion was called, Mr. Pacetta asked the following:

Q: Okay, was Doug smoking [crack]?

A: No.

Q: What was he doing?

A: He was — he was selling it to 'em.

Q: On the couch?

A: He was selling — yeah, he was on the couch — oh, he was sitting on the

couch then, but when they wanted [crack] they went to Doug to get it.

   (T 685).

-27-

> Evidence of any crime committed by the defendant, other
> than the crime for which defendant is on trial, is
> inadmissible in criminal case where its sole relevancy
> is to attack character of defendant or to show defend-
> ant's propensity to commit crime.‹
> Vazquez v. State, 405 So.2d 177 (Fla. 3rd DCA 1981),
> quashed in part on other grounds, approved in part 419
> So.2d 1088, on remand 420 So.2d 946.

Again, counsel failed to request limiting instructions, and failed to object to this testimony. Tommy Bertion testified that he didn't know anything about the alleged Bagley incident, the murder or the robbery (T 687). He had no business testifying about matters that the appellant was not even charged with; had counsel been effective, this testimony would not have been given. Normally it is the State that seeks to elicit such damaging, prejudicial testimony. This whole cause seemingly revolves around the identity of the third alleged perpetrator; it is clearly unsettled as to whether it was the appellant or Anthony Wilson who was present during the alleged offense. This unresolved identity crisis could not be remedied by defense counsel's solicitation of evidence of crimes for which Johnson was not charged. Johnson alleges that both witnesses testimony became a feature, rather than an incident, of the trial.

Admission of evidence relating to prior crime of man-
slaughter committed by defendant a few hours before

-28-

charged crime of assault with intent to murder and
consisting of detailed testimony of two witnesses as to
prior crime and testimony relative thereto, in absence
of limiting instruction, could have resulted in prior
crime becoming, in the jury's mind, a "feature" instead
of an "incident" of case being tried and was reversible
error.
Green v. State, 228 So.2d 397 (Fla. 2nd DCA 1969) (cites
omitted) (emphasis in original)

The jury had no kind of instruction on other crimes Johnson was not on

trial for to keep them from making the wrong decision when determining guilt

or innocence, advising them not to consider this evidence of other crimes.

Counsel again rendered ineffective assistance of counsel and this cause

should be reversed.

Johnson next argues that counsel was ineffective for failing to request

second degree felony murder instuctions. The testimony of the State's key

witness, Tyrone Hans Johnson, clearly indicates that, while the appellant may

have participated in the underlying felony of burglary as an accessory before

the fact, he did not personally engage in the felonies, as the following

testimony OF Tyrone Hans Johnson demonstrates:


BY MR. PACETTA:

Q: Now who decided to go into the Begley house? Whose decision was that?

A: Mine.

Q: Yours. And when did you decide that exactly?

A: Well, when we was passing by the house, I say, "Well, this might be a good

house. This would be a good house."

Q: Passing by the house?

A: Correct.

Q: And did you then say, "Let's go hit that house?"

A: Yes.

Q: So you made that decision. You didn't decide that a half an hour before or

ten minutes before, did you?

A: No.

Q: You decided it right then and there, let's go hit that house?

A: Yes.

   (T 885-886)

                    *   *   *   *   *

Q: Now the lookout is a person who is supposed to warn you if anybody's

passing by, isn't that right? Isn't that what a lookout is?

A: Yes.

                    *   *   *   *   *

Q: During the entire time that you were at the Bagley house did Doug at any

time give you or Peanuts any warning about anybody passing by?

A: No.

                            -30-

Q: Now after the window was broken and you and Peanuts decided that it was safe to go in was it Peanuts idea to go into the house?

A: After the window was broken, yes.

Q: Yeah. You said that you didn't really want to go in, didn't you.

A: No.

Q: However, did you help Peanuts go in?

A: Yes.

Q: Did you give him a boost because the window is pretty high?

A: Yes.

Q: Now after Peanuts got in, he went in head first did he?

A: Yes.

Q: Okay. After he got in did he turn around and help you in the window or did he reach out and hoist you in, help you get in that way?

A: Yes.

Q: So that's how you got in?

A: Yes.

Q: All right. Now you were pretty scared at this point from what I heard or what you said, is that right?

A: Yes.

Q: But you did go into the house with Peanuts, correct?

-31-

A: Yes.

Q: Where's Doug? He's gone isn't he? Doug's gone. He ran.

A: Yes.

Q: Never came back did he?

A: No.

(T 890-893).

The Appellant according to this sworn testimony, only furnished Tyrone the gun hours before the crime occured, but he left prior to the first shot being fired and was not present when the fatal shot was fired. And Appellant was clearly not present during the armed burglary and the armed robbery of the victim. Defense counsel was ineffective for failing to request second degree felony murder instructions.

> In State v. Dixon, 283 So.2d 1 (Fla. 1973), this court noted the difference between first degree and second degree felony murder:
> "The obvious intention of the Legislature in making this change is to resurrect the distinction between principals in the first or second degree on the one hand and accessories before the fact on the other, in determining whether a party to a violent felony resulting in murder is chargeable with murder in the first degree or murder in the second degree...." Id. at 11.
> [2] We pointed out in Dixon, supra, that liability for second degree felony murder occurs when the individual perpetrates the underlying felony as an accessory before

-32-

the fact but does not personally engage in it. This
limited scope of the, second degree felony murder provi-
sion is dictated by the provision, "except as provided
is subsection (1)," which refers to Section 782.04(1),
Florida Statutes (1975).
Adams v. State, 341 So.2d 765, 768 (Fla. 1976), reh.
den. February 14, 1977 (emphasis in original).

Counsel's failure to request second degree felony murder instructions

left the jury with no choice but to find the appellant guilty of first degree

felony murder. The current second degree felony statute provides that a

defendant commits second degree felony murder under Florida Statute s.

782.04(2)(1991), which provides:

> (2) The unlawful killing of a human being, when perpe-
> trated by any act imminently dangerous to another and
> evincing a depraved mind regardless of human life,
> although without any premeditated design to effect the
> death of any particular individual, is murder in the
> second degree and constitutes a felony of the first
> degree, punishable by imprisonment for a term of years
> not exceeding life as provided in s. 775.082, s.
> 775.083, or s. 775.084

Counsel's failure to request these instructions effectively foreclosed

the jury's right to find Johnson guilty of second degree felony murder. The

only instructions requested by counsel related to this offense, and given by

the trial judge, were for first degree felony murder, second degree murder,

and third degree murder (T 1041-1048). Although the trial judge gave first

-33-

degree felony murder instructions, (T 1042-1043), he did not give second degree felony murder instructions, nor did counsel request them. See <u>Brown v. State</u>, 206 So.2d 377 (Fla. 1968) and cases cited therein, and <u>State v. Terry</u>, 336 So.2d 65 (Fla. 1976).

*Appellant* next argues that counsel was ineffective for failing to request <u>Williams'</u> Rule instructions. Testimony was given by Anthony Wilson involving offenses for which the *appellant* was not charged.

Q: Okay. And the what happened?

A: Tyrone gave the gun to Fredrick and he supposed to go in after they throw the window, but supposedly not — he did not but — cause the woman started screaming and we ran off.

\* \* \* \* \*

(T 290)

Q: And who was with you when you went over to the Haitian lady's house?

A: Tyrone, Kenneth and Frederick.

\* \* \* \* \*

(T 699).

Q: Okay. So who — who had the gun to go into the house?

-34-

A: Frederick. So the woman started screaming, so we ran.

Q: Okay. Now what did Kenneth or Peanut do? What did he do with the brick?

A: He throwed it through the window, the bedroom window.

* * * * *

(T 700).

Counsel did not object to this testimony of an alleged robbery or burglary of which the *appellant* was not charged, nor did he request instructions on this testimony.

> Under the strictures laid down by this court, and by the Florida Supreme Court in the cases above cited, we are compelled to hold that the failure to give the "Will-iams' Rule" instruction during the course of the trial, at least as of the point where it was specifically requested, was reversible error. See also Skipper v. State, 420 So.2d 877 (Fla. 1982). In so holding we note that the trial judge did not have the benefit of the more recent decisions to which we have referred. Rivers v. State, 425 So.2d 101, 105 (Fla. 1st DCA 1983) (other cites omitted) (emphasis in original).

Defense counsel had the benefit of this and other case law. Had counsel presented any witnesses on Johnson's behalf they would have rebutted this testimony; yet, as it stands, the *appellant* conviction is founded upon offense that he was not charged with, and the alleged other offenses became a feature, rather than an incident of the trial. Failure of counsel to request these instructions on collateral crimes constitutes ineffective assistance of

-35-

counsel. See also <u>Lowe v. State</u>, 500 So.2d 578 (Fla. 4th DCA 1986). Similar

to Anthony Wilson's testimony was the testimony of Tyrone Hans Johnson, who

testified:

Q: When the four of you were together, what did you all decide to do?

A: Go rob someone's house.

Q: Why were you gonna rob somebody?

A: To get money.

* * * * *

Q: Now when you said you were gonna go rob somebody where did you all go?

A: We went to this lady named Haitian Mary's.

Q: And who all went to Haitian Mary's?

A: Me, Doug, Peanut and Anthony Wilson.

* * * * *

Q: What was the plan?

A: The plan was to go up to the door and use this — Anthony said we'll use

this guy's name she'd open the door, you know, and we was — you know, after

she opened the door we'd go in the house and then Frederick would come in

with the gun.

* * * * *

Q: Who had the gun?

-36-

A: Frederick.

Q: Did you see him with it?

A: Yes.

\*    \*    \*    \*    \*

Q: And what was he supposed to do?

A: Come in the house after we had went in.

Q: What was he supposed to do when he got in there?

A: Just hold the gun.

(T 797-798).

\*    \*    \*    \*    \*

Defense counsel again failed to request the Williams' Rule instruction before the the testimony of the State's key witness Tyrone Hans Johnson. The appellant was not charged with the alleged robbery or burglary of Haitian Mary's house, and Johnson was unable to cross-examine the alleged victim as she refused to testify. Tyrone's testimony cooberated Anthony Wilson's testimony, and it was error for counsel to fail to request these instructions. This court must reverse this cause and remand for a new trial.

-38-

CONCLUSION

Based upon the foregoing asrguments and citations of law, the Appellant, FREDERICK DOUGLAS JOHNSON, prays for a trial de novo.

SO PRAYS THE APPELLANT.

Respectrfully submitted,

/s/ *Frederick D. Johnson*

FREDERICK DOUGLAS JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
600 U.S. HWY 27 SOUTH
SOUTH BAY FLORIDA   33493

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing INITIAL BRIEF has been furnished by U.S. MAIL to MARILYN BEUTTENMULLEN, CLERK, DISTRICT COURT OF APPEAL, FOURTH DISTRICT, P. O. BOX 3315, West Palm Beach, Florida 33401 also furnished to Attorney General, 1655 PALM BEACH LAKES BOULEVARD, Suite #300, West Palm Beach, Florida 33401-2299, also furnished to Reginald B. Sessions, Artrorney at Law, 715 Orange Avenue, Fort Pierce, Florida 34948, this 14th day of Sept. , 1997.

STATE OF FLORIDA)

COUNTY OF PALM BEACH)


SWORN AND SUBSCRIBED TO BEFORE ME THIS _14th_ DAY OF _Sept._ , 1997.

NOTARY PUBLIC (STATE OF FLOROIDA)

ANNIE SMILEY
MY COMMISSION # CC 626511
EXPIRES: March 4, 2001
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

FOURTH DISTRICT

FREDERICK JOHNSON,

      Appellant,

vs.                              CASE NO. 97-00308

STATE OF FLORIDA,

      Appellee(s).

_____/

97-1-9755

*[stamp: DOCKETED SEP 02 1997 R.B. ATTORNEY GENERAL]*

## RESPONSE TO MOTION FOR CONTINUANCE

COMES NOW Appellee, the State of Florida, by and through undersigned counsel, hereby responds in opposition to Appellant's motion for continuance, and as grounds states:

1. This is Appellant's third request for an extension of time in which to comply with this Court's order of February 3, 1997. That order required Appellant to file with this Court some documentation reflecting that he timely gave his notice of appeal to prison authorities for mailing.

2. Appellant has provided this Court with copies of various administrative remedies he has pursued, and now requests an additional 60 days so that he can appeal the denial of those administrative remedies.

3. The undersigned has contacted the Classification Office at

IN THE DISTRICT COURT OF APPEAL, FOURTH DISTRICT

STATE OF FLORIDA

FREDERICK DOUGLAS JOHNSON
Appellant

Case No.: 97-00308

Lt. Case No. 91-083-CF-B
INDIAN RIVER

Vs.

STATE OF FLORIDA,
Appellee

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

AUG 2 9 1997

CRIMINAL OFFICE
WEST PALM BEACH

## MOTION TO CONTINUE

COMES NOW the ~~Defendant~~ Appellant, FREDERICK DOUGLAS JOHNSON, pro'se, and hereby requests a continuance in this cause ~~and~~ to litigate and to consolidate all cases in this matter further, and would state:

1.) This cause has a legal expiration date Set. For August 29, 1997.

2.) Appellant received granted COURT-ORDER on July 31, 1997 which had a rendition date of July 29, 1997 instructing Appellant to provide this COURT with documentation showing the date he turned over to prison personnel For mailing his Notice of Appeal.

1 OF 4

3.) Appellant has filed on July 23, 1997 an Emergency Grievance (log # 97-1397) in accordance with Florida Administrative Code 33-29.006(6) governing Florida Department of Corrections to Superintindent - Gary Farcus, CHARLOTTE CORRECTIONAL INSTITUTION, 33123 OIL WELL ROAD, PUNTA GORDA, FLORIDA 33955 with an attached copy of this Courts ORDER

4.) Appellant received response for Emergency Grievance (log # 97-1397) on August 4, 1997 which was dated and signed by Assistant Supertindent FRANK Youngblood SR at CHARLOTTE CORRECTIONAL INSTITUTION, 33123 Oil Well Road, Punta Gorda, Florida 33955.

5.) Appellant contends that the Response provided by Assistant Supertindent FRANK Youngblood SR on July 30, 1997 regarding Emergency Grievance (log # 97-1397) places an extraordinary burden on him, due to the present assign prison location over a (100) hundred miles from respondant. Appellant was advise of his right to appeal Assistant Supertindent FRANK Youngblood SR. within 15 days. (see exhibit #A).

6.) Appellant filed and appeal to Emergency Grievance (log # 97-1397) a Bearu of Inmate Grievances & Appeals, 2601 BLAIRSTONE Road, Tallahassee Florida 32399-2500 on August 8, 1997, which on August 19, 1997 Florida Department of Corrections, - Secretary Representative Olester Dickens denied my Appeal (log # 97-81946) instructing me to First File it the Institution or Facility I'm presently assigned.

2 OF 4

7.) Appellate received Appeal (log # 97-81946) From Bureau of Inmate Grievances & Appeals, 2601 BLAIRSTONE Road, Tallahassee, Florida 32399-2500, and Signed by Florida Department of Corrections, Secretary-Representative Orlester Dickens on August 27, 1997 at approximately 6:05 P.M. (see exhibit #B)

8.) Appellant requests this Cause to be Continue For a minimum of 60 (sixty) days giving him ampt enough time to re-file with the Superintindent at this Facility and wait and receive response, and if apprioicate immeditely comply with this Courts ORDER, However if not Appellate needs the above mention time Frame to appeal to Central office and once again wait for an reply.

9.) This motion is made in good Faith and not for the purpose of delay.

WHEREFORE, Appellant respectfully requests that this Honorable Court continue this Case

I HEREBY CERTIFY, that a true correct copy of
MOTION TO CONTINUE, has been Furnished by U.S.
1 to MARILYN BEUTENMULLER, Clerk of District Court
Appeal, Fourth District, P.O. Box. 3315, West Palm Beach,
rida 33402, Copy also to OFFICE of the Attorney General,
55 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401,
py also to JEFFREY K BARTON, Clerk of Circuit Court,
O. Box 1028, Vero Beach, Florida 33961, copy also to
tate's Attorney office, Niki Robinson, 2000 16th Avenue,
Vero Beach, Florida 32960, copy also furnished to
Reginald B. Sessions, Attorney at Law, 715 Orange Ave.,
Fort Pierce, Florida 34948. This 28th day of August, 1997.

ANNIE SMILEY
MY COMMISSION # CC 626511
EXPIRES: March 4, 2001
Bonded Thru Notary Public Underwriters



/s/ Frederick D Johnson #58112
FREDERICK D Johnson #58112
SOUTH BAY Correctional Facili
600 U.S. Hwy. 27 South
SOUTH BAY, Florida 3349

SWORN TO AND SUBSCRIBED to
before me, this 28 day of
August, 1997.

Smiley
NOTARY PUBLIC STATE OF FLORIDA

4 OF 4

STATE OF FLORIDA

FREDERICK D. JOHNSON
    Appellant

CASE No.: 97-00308

L.T. CASE NO.: 91-083-CF-B

INDIAN RIVER

VS.

STATE OF FLORIDA
    Appellee. /

## SWORN STATEMENT

COMES NOW, the appellant, FREDERICK D. JOHNSON, after being duly sworn and deposes and says:

I am presently being held in confinement, and is unable to ~~obtain copies to States Attorney Office, 2000 16th Ave, Vero Beach, Florida~~ 32960 of a copy of exhibit # A (which is ~~property grievance log# 97-1349~~) ~~the~~ s the law clerk weekly rounds. Also I am unable to furnished Marilyn Beutenmuller, Clerk of District Court of Appeal, Fourth District, P.O. Box 3315, West Palm Beach, Florida 33402, Attorney General, 1655 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401, Jeffrey K. Barton, Clerk of Circuit Court, P.O. Box 1028, Vero Beach, Florida 33961, State's Attorney Office, 2000 16th Avenue, Vero Beach, Florida 32960 and Reginald B. Sessions, Attorney at Law, 715 Orange Avenue, Fort Pierce, Florida 34948 of a copy of Appeal Grievance (Log# 97-81946) for the reasons stated above and stated in Motion to Continue paragraph #7. I will forward within (10) ten working days the above mention to all parties from this 28th day of August, 1997.

SWORN TO AND SUBSCRIBED to
before me, this 28th day of
August, 1997.

Annie Smiley
Notary Public State of FLORIDA

```
ANNIE SMILEY
MY COMMISSION # CC 526511
EXPIRES: March 4, 2001
Bonded Thru Notary Public Underwriters
```

/s/ Frederick D. Johnson 582112
FREDERICK D. Johnson #582112
SOUTH BAY Correctional Facility
600 U.S. Hwy 27 South
SOUTH BAY, Florida 33493

1 of 1

*EMERGENCY GRIEVANCE*

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

*EMERGENCY GRIEVANCE*

TO: ☒ Superintendent ☐ Assistant Superintendent ☐ Secretary, Florida Department of Corrections

FROM: Johnson Frederick D. 107        582112      South Bay Correctional Facility
　　　Last Name, First, Middle Initial　　　　　　Number　　　　Institution

---

**PART A – INMATE GRIEVANCE** *EMERGENCY GRIEVANCE*

"EMERGENCY GRIEVANCE"

On 7-16-97 at approximately between the hours of 9AM-11AM I signed for legal-mail containing an "COURT ORDER" dated July 14, 1997 instructing me to provide the same Court with documentation of a certified portion of the prison's out-going mail log on the date I submitted my appeal (see attached) I therefore request a copy of this Institution (Charlotte Correctional) out-going mail log on 1-3-97, 1-4-97, 1-5-97, & 1-6-97, and a sworn statement of a prison mailroom employee who knows of his/her knowledge of the date the following adressed legal mail from me to: Jeffrey k. Barton, clerk of circuit Court P.O. Box 1028, Vero Beach, Florida 32961, Attorney General 1655 Palm Beach Lakes Blvd, West Palm Beach Florida 33401, Niki Robinson, State Attorney's office, 2000 16th Avenue, Vero Beach, Florida 32961. Also *for this Court Record the mailing procedure (see continued)

7-23-97                                    Frederick D Johnson - 582112
Date                                       Signature of Grievant and D.C.#

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　#　　　　　Signature

---

**PART B – RESPONSE**

Your Request for Administrative Remedy or Appeal has been received, reviewed and evaluated.

On speaking with Administrative Lieutenant Smitch, he advises that you will be on a call out to report to his office 7-30-97 to discuss the contents of this grievance. This office has furnished Lieutenant Smitch with a copy of the attached order. Your Request for Administrative Remedy is DENIED. As outlined in Chapter 33-29.007, you have the right to appeal this action to CENTRAL OFFICE within FIFTEEN days.

EXHIBIT # "A"

_____          Frank Youngblood, Jr          7-30-97
Signature and Typed or            Signature of Superintendent,   Date
Printed Name                      Assistant Superintendent, or
of Employee Responding            Secretary's Representative

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

Continue:

OF January 3, 1997 (Friday) When I or any inmate at Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida 33955 depoist legal mail /regular mail into their assign Housing Unit mail-box desitinates for out-going mail on the beginning of Weekends -(FRIDAY) When will the mailroom receive it to ~~~~ ~~~~ transport it away from the institution?

7-23-97
DATE

Frederick D. Johnson   582117
Signature of Grievant and DC#

EXHIBIT # "A"

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

FREDERICK D. JOHNSON                    CASE NO. 97-00308

  Appellant(s),

vs.

STATE OF FLORIDA                        L.T. CASE NO. 91-83
                                        INDIAN RIVER

  Appellee(s).

July 29, 1997
_____

BY ORDER OF THE COURT:

      ORDERED that appellant's motion filed July 25, 1997, to

continue is granted, and the time in which to comply with this

court's order of June 20, 1997, is hereby extended thirty (30)

days from the date of this order.

  I hereby certify the foregoing is a
true copy of the original court order.                   *Opponent's response*
                                                         *due August 28, 1997*


MARILYN BEUTTENMULLER
CLERK

  cc:  Frederick D. Johnson
      Attorney General-W. Palm Beach
      Jeffrey K. Barton, Clerk
      Public Defender 15
      State Attorney 19
      Reginald B. Sessions

     /CH

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

JUL 30 1997

CRIMINAL OFFICE
WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL, FOURTH DIST.

STATE OF FLORIDA

G

FREDERICK D. JOHNSON
    Appellant,

vs.

STATE OF FLORIDA,
    Appellee.

CASE NO. 97-00308

L.T. CASE NO. 91-083-CF-t

INDIAN RIVER

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

JUL 25 1997

CRIMINAL OFFICE
WEST PALM BEACH

## MOTION TO CONTINUE

COMES NOW the Defendant, FREDERICK DOUGLAS JOHNSON, pro'se, and hereby requests a continuance in this cause and to consolidate all cases, and would state:

1. This cause has a legal expiration date set for August 3, 1997.

2. Appellant received granted COURT ORDER on July 16, 19 which was dated July 14, 1997 instructing Appellant to provide this Court with documentation showing the date he turn over to prison personnel for mailing his Notice of Appeal.

-1- OF -3-

3. Appellant is no longer incar.     at Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida 33955, where he mail this Notice of Appeal. ( see exhibit # A)

4. Appellant has Filed on July 23, 1997 an Emergency Grievanc in accordance with Florida Administrative Code 33-29.006(6) governing Florida Department of Corrections to Supertindent - Gary Farcus, CHARLOTTE CORRECTIONAL INSTITUTION, 33123 Oil Well Road, Punta Gorda, Florida 33955 with an attached Copy of this Court's ORDER. (see exhibit # B)

5. Appellant requests this case be Continue until a respons is received by Supertindent - Gary Farcus, CHARLOTTE CORRECTIONAL INSTITUTION, 33123 Oil Well Road, Punta Gorda, Florida 33955.

6. This motion is made in good faith and not for the purpose of delay.

WHEREFORE, Appellant respectfully requests that this Honorable Court continue this case.

CONTINUE.

I HEREBY CERTIFY, that a true correct copy of this MOTION TO CONTINUE, has been furnished by U.S. Mail to MARILYN BEUTENMULLER, Clerk of District Court of Appeal, Fourth District, P.O. Box 3315, West Palm Beach, Florida 33402, Copy also to Office of the Attorney General, 1655 Palm Beach Lakes Blud., West Palm Beach, Florida 33401. copy also to JEFFREY K. BARTON, Clerk of Circuit Court, P.O. Box 1028, Vero Beach, Florida 33961, copy also to State's Attorneys Office, Niki Robinson, 2000 16th Avenue, Vero Beach, Florida 32960, Copy also Furnished to REGINALD B. SESSIONS, Attorney at Law, 715 Orange Ave, Fort Pierce, Florida 34948. This 23rd day of July, 1997.

SWORN TO AND SUBSCRIBED to before me, this 23nd day of July, 1997.

_Annie Smiley_
Notary Public State of Florida

Respectfully Submitted,

_Frederick D. Johnson_
FREDERICK D. JOHNSON

EXHIBIT # A

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY,
STATE OF FLORIDA

FREDERICK D. JOHNSON,            CASE NO: 99-83-CF-B

    Defendant,

vs.

STATE OF FLORIDA,

    Plaintiff.
_____/

## AFFIDAVIT

STATE OF FLORIDA
COUNTY OF PALM BEACH

COMES NOW, the affiant, FREDERICK D. JOHNSON, after being duly sworn and deposes and says:

1) Affiant states that he was in the custody of Department of Corrections at Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida, 33955 on January 3, 1997.

2) Affiant states that on January 3, 1997 at approximately 11:00 A.M. he placed a Notice of Appeal, Directions to the Clerk, Designation of Record to Jeffrey K. Barton, Clerk of Circuit Court, P.O. Box 1028, Vero Beach Florida 32961, also a copy to Attorney General, 1655 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401, also a copy to NIKI ROBINSON, State Attorneys Office, 2000 16th Avenue, Vero Beach, Florida 32961, inside his assign housing unit mail box destinated for out-going mail.

3) Affiant further states that he has not been promised anything for this Affidavit and that he is doing this freely

without threats or promises from anyone.

Accord, the foregoing instrument, Affidavit, was acknowledged before me this 23rd day of July , 1997 by FREDERICK D. JOHNSON who produce State of Florida I.D. as Identification and who did take an oath.


_Annie Smiley_

NOTARY PUBLIC - STATE OF FLORIDA

```
ANNIE SMILEY
MY COMMISSION # CC 626511
EXPIRES: March 4, 2001
Bonded Thru Notary Public Underwriters
```

MY COMMISSION EXPIRES:


_Frederick D. Johnson_ 582112

FREDERICK D. JOHNSON    #582112
South Bay Correctional Facility
600 U.S. Hwy 27th South
South Bay, Florida 33498


## CERTIFICATE OF SERVICE


STATE OF FLORIDA

COUNTY OF PALM BEACH


Before me, the undersigned authority, this day personally appeared FREDERICK D. JOHNSON, who after being duly sworn, says that she has read the heretofore AFFIDAVIT, and that she is the AFFIANT in the above styled cause and has personal knowledge of the facts and matters therein set forth and alleged; and that each and all these facts and matters are true and correct.

Continue:

OF January 3, 1997 (Friday) When I or any inmate at Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida 33955 depoist legal mail /regular mail into their assign Housing Unit mail-box desitfinated for out-going mail on the beginning of weekends -(FRIDAY) when will the mailroom receive it to transport it away from the institution?

1-23-97
DATE

Frederick D Johnson 582112
Signature of Grievant and DC#

*EMERGENCY*
*GRIEVANCE*

*EMERGENCY*
*GRIEVANCE*

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☒ Superintendent   ☐ Assistant Superintendent   ☐ Secretary, Florida Department of Correcti

FROM: Johnson Frederick D.          582112   South Bay Correctional Facili
_____Last Name, First, Middle Initial_____   _Number_   _Institution_

**PART A – INMATE ~~GRIEVANCE~~ EMERGENCY GRIEVANCE**

"*EMERGENCY GRIEVANCE*"

On 7-16-97 at approximately between the hours of 9AM-11AM I signed for legal-mail conta
an "COURT ORDER" dated July 14,1997 instructing me to provide the same Court with documenta
of a certified portion of the prison's out-going mail log on the date I submitte.
my appeal. (see attached) I therefore request a copy of this Institution (Charlotte
Correctional) out-going mail by on 1-3-97, 1-4-97, 1-5-97, & 1-6-97, and a sworn
statement of a prison mailroom employee who knows of his/her knowledge of the
date the following adressed legal mail from me to: Jeffrey K. Barton, clerk of circu
Court, P.O. Box 1028, Vero Beach, Florida 32961, Attorney General 1655 Palm Beach Lakes Blvd.,
West Palm Beach, Florida 33401, Niki Robinson, State Attorneys office, 2000 16th Avenue, Ver
Beach, Florida 32961. Also for this Court Record the mailing procedure (see continua

7-23-97
_Date_

*Frederick D. Johner* 582112
_Signature of Grievant and D.C.#_

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____1_____
                                                                        #        Signature

**PART B – RESPONSE**

IN THE DISTRICT COURT OF APPEAL, FOURTH DISTRICT
STATE OF FLORIDA

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

FREDERICK D. JOHNSON,

     Appellant,

vs.

STATE OF FLORIDA,

     Appellee.
_____/

CASE NO. 97-00308    JUL 07 1997

L.T. CASE NO. 96-83 CRIMINAL OFFICE
INDIAN RIVER          WEST PALM BEACH

STIPULATED MOTION FOR EXTENSION

COMES NOW the Defendant, FREDERICK DOUGLAS JOHNSON, pro se, and hereby requests a continuance in this cause, and would state:

1). The appellant has until July 10, 1997 to provide this Court with documentation showing the date he turn over to prison personnel for mailing his Notice of Appeal.

2). The appellant received order of the Court that was issued on June 20, 1997 on June 26, 1997.

3). The appellant is in progress of obtaining Attorney Reginald B. Sessions, 715 Orange Avenue, Fort Pierce, Florida 34948 to properly litigate this matter.

4) The appellant Needs additional time for depositions to be set and secure private investigator for obtaining copy of out-going mail log.

5) . The appellant and the above-mention attorney have discussed this and decided to request this extension.

6) This motion is made in good faith and not for the purpose od delay.

I HEREBY CERTIFY, that a true correct copy of this STIPULATED MOTION FOR EXTENSION, has been furnished by U.S. Mail to MARILYN BEUTTENMULLER, Clerk of District Court of Appeal, Fourth District, P.O. Box 3315, West Palm Beach, Florida 33402, copy also to Office of the Attorney General, 1655 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401, copy also to JEFFREY K. BARTON, Clerk of Circuit Court, P.O. Box 1028, Vero Beach, Florida 33961, copy also to State's Attorneys Office, NIKI ROBINSON, 2000 16th Avenue, Vero Beach, Florida 32960, copy also furnished to REGINALD B. SESSIONS, Attorney at Law, 715 Orange Avenue, Fort Pierce, Florida 34948. This _2nd_ day of _July_, 1997.

SWORN TO AND SUBSCRIBED to before me, this _2nd_ day of _July_, 1997.

_____
Notary Public State of Florida

ANNIE SMILEY
MY COMMISSION # CC 626511
EXPIRES: March 4, 2001
Bonded Thru Notary Public Underwriters

Respectfully submitted,

_____
FREDERICK D. JOHNSON

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

FREDERICK D. JOHNSON                    CASE NO. 97-00308

  Appellant(s),

vs.

STATE OF FLORIDA                        L.T. CASE NO. 91-83
                                        INDIAN RIVER
  Appellee(s).

RECEIVED
OFFICE OF THE
ATTORNEY GENERAL

JUN 23 1997

CRIMINAL OFFICE
WEST PALM BEACH

June 20, 1997

_____

BY ORDER OF THE COURT:

    On February 3, 1997, this court issued an order indicating

it had received the notice of appeal in the above-styled case

and found, from the face of the notice, that the appeal appeared

to be untimely filed, in that the notice was filed on January 8,

1997, while the order being appealed reflects December 6, 1996

as the date of rendition; therefore, this court ordered

appellant to file with this court within twenty (20) days

documentation showing the date on which he turned over to prison

personnel for mailing his notice of appeal in this matter, see

Haag v. State, 591 So. 2d 614 (Fla. 1992), providing that this

documentation may take the form of (but need not be limited to)

a certified copy of a portion of the prison's outgoing mail log,

or a sworn statement of a prison employee who knows of his or

her own knowledge the date of the aforementioned event.

    Having received no response to the order but having received

a notice of inquiry from appellant stating he mailed the notice

of appeal on January 3, within the thirty-day period, and also
noting that in the interim, appellant filed notice of change of
address, this court once again orders that appellant shall file
with this court within twenty (20) days of the date of this
order documentation showing the date on which he turned over to
prison personnel for mailing his notice of appeal in this
matter.  This documentation may take the form of (but need not
be limited to) a certified copy of a portion of the prison's
outgoing mail log, or a sworn statement of a prison employee who
knows of his or her own knowledge the date of the aforementioned
event.  Appellant's failure to timely comply with this order
will result in the dismissal of this appeal.

I hereby certify the foregoing is a
true copy of the original court order.

MARILYN BEUTTENMULLER
CLERK

cc:   Frederick D. Johnson
      Attorney General-W. Palm Beach
      Jeffrey K. Barton, Clerk
      Public Defender 15
      State Attorney 19


      /DP

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

FREDERICK D. JOHNSON                    CASE NO. 97-00308

  Appellant(s),

vs.

STATE OF FLORIDA                    RECEIVED L.T. CASE NO. 91-83
                                    OFFICE OF THE INDIAN RIVER
  Appellee(s).                   ATTORNEY GENERAL

                                    FEB 04 1997

February 3, 1997                    CRIMINAL OFFICE
_____ WEST PALM BEACH

BY ORDER OF THE COURT:

     This court has received the notice of appeal in the
above-styled case and finds, from the face of the notice, that
the appeal appears to be untimely filed.  The notice was filed
on January 8, 1997, and the notice reflects December 6, 1996 as
the date of rendition; further,

     ORDERED that appellant shall file with this court within
twenty (20) days of the date of this order documentation showing
the date on which he turned over to prison personnel for mailing
his notice of appeal in this matter.  See Haag v. State, 591
So. 2d 614 (Fla. 1992).  This documentation may take the form of
(but need not be limited to) a certified copy of a portion of
the prison's outgoing mail log, or a sworn statement of a prison
employee who knows of his or her own knowledge the date of the
aforementioned event.  Appellant's failure to timely comply with
this order will result in the dismissal of this appeal.

I hereby certify the foregoing is a
true copy of the original court order.

MARILYN BEUTTENMULLER
CLERK

cc:     Frederick D. Johnson
        Attorney General-W. Palm Beach
        Jeffrey K. Barton, Clerk
        Public Defender 15
        State Attorney 19


        /DM

IN THE CIRCUIT COURT OF THE **NINETEENTH** JUDICIAL
CIRCUIT IN AND FOR <u>INDIAN RIVER</u> COUNTY, FLORIDA

STATE OF FLORIDA,

     Plaintiff/Appellee

**RECEIVED**
OFFICE OF THE
ATTORNEY GENERAL

**JAN 0 8 1997**

vs.

CASE NO. <u>91-083</u>   CRIMINAL OFFICE
WEST PALM BEACH

FREDERICK D. JOHNSON

     Defendant/Appellant.

_____/

## NOTICE OF APPEAL

     NOTICE IS HEREBY GIVEN by Defendant <u>FREDERICK D. JOHNSON</u>

<u>Pro Se,</u>, that he takes and enters this appeal to the

District Court of Appeal, <u>FOURTH</u> District, from the final

order denying his <u>3.850 - Post Conviction Relief Motion</u>,

pursuant to Rule <u>9.140(g)</u>, Fla.R.Crim.P., entered on the <u>6th</u>

day of <u>DECEMBER</u>, 1996<u></u>, by the Honorable <u>PAUL B. KANAREK</u>

<u>Circuit Court</u>, Judge.

     this appeal is taken pursuant to Rule 9.110, Fla.R.App.P.

and all parties take notice.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the

foregoing has been furnished by prepaid U.S. Mail to: <u>Nikki Robinson</u>

<u>Assistant State Attorney 2000 16th Avenue Vero Beach, FLA.</u>,

THIS <u>3rd</u> day of <u>January</u>, 1997<u></u>.

Respectfully submitted,

*Frederick D. Johnson*

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, FLORIDA


FREDERICK D. JOHNSON
        Appellant,


vs.                              CASE NO. 91-083


STATE OF FLORIDA
        Appellee.
_____/


## DIRECTION TO THE CLERK

Appellant, FREDERICK D. JOHNSON, directs the Clerk to

include the following items in the original record as

described in Rule 9.200(a) (1).


| | ITEMS | Date |
|---|---|---|
| 1. | Motion For Post-Conviction Relief | Nov. 7th, 1994 |
| 2. | Order To Show Cause | Nov. 17th, 1994 |
| 3. | State's Response To Show Cause Order | June 7th, 1995 |
| 4. | Order Denying Post-Conviction Relief Petition | Dec. 6th, 1996 |
| 5. | Transcribe Deposition of Defense Witness - James Brothers, Deposition taken on July 10, 1991 by Micheal J. Kessler - Attorney. | July 10th, 1991 |


Dated: _January 3, 1997_        /S/ _Frederick D. Johnson_
                                    Frederick D. Johnson

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, FLORIDA


STATE OF FLORIDA,

v.                                      CASE NO.  91-083


FREDERICK D. JOHNSON,
          Defendant.
_____/


## DESIGNATION OF RECORD

Defendant/Appellant FREDERICK D. JOHNSON designates the
following portions of the proceedings for inclusion in the
record on appeal, pursuant to F.R.App.P. 9.200(b), all listed
proceedings to be transcribed for appeal.

1.)  Motion for Post Conviction Relief.

2.)  Order to Show Cause.

3.)  State's Response to Show Cause Order.

4.)  Order Denying Post-Conviction Relief Motion.

5.)  Transcribe Deposition of Defense Witness –
     James "Blue" Brothers, Deposition taken on
     July 10, 1991, by Micheal J. Kessler – Attorney

I HEREBY CERTIFY, that a true correct copy of this
DESIGNATION OF RECORD, has been furnished by U.S. Mail to
the Office of the Attorney Genenral, 1655 Palm Beach Lakes Blvd.
West Palm Beach, Florida.  33401., Copy also furnished to
the States' Attorneys Office, Nicki Robinson. 2000 16th ave.
Florida. 32960.  This 3rd day of January 1997.


SWORN TO AND SUBSCRIBED TO            RESPECTFULLY SUBMITTED
BEFORE ME THIS____ DAY OF
_____1997.                    _____
                                      FREDERICK D. JOHNSON


NOTARY PUBLIC STATE OF FLORIDA

# M A N D A T E *Closed*

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

### FOURTH DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable Barry J. Stone, Chief Judge of the District Court of Appeal of the State of Florida, Fourth District, and seal of the said Court at West Palm Beach, Florida on this day.

DATE:               August 14, 1998

CASE NO.:           97-0308

COUNTY OF ORIGIN:   Indian River

T.C. CASE NO.:      91-083

STYLE:              Frederick D. Johnson v. State



_Marilyn_

Marilyn Beuttenmuller, Clerk
District Court of Appeal
Fourth District

ORIGINAL TO:   Hon. Jeffrey K. Barton, Clerk

cc:  Frederick D. Johnson
     Attorney General - W. Palm Beach

     /CR

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

AUG 18 1998

CRIMINAL DIVISION
WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT                          JULY TERM 1998

*Closed*

**FREDERICK D. JOHNSON,**

Appellant,

v.

**STATE OF FLORIDA,**

Appellee.

———————————

CASE NO. 97-0308

———————————

Decision filed  July 29, 1998

  Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Paul B. Kanarek, Judge; L.T. Case No. 91-083.

  Frederick D. Johnson, South Bay, pro se.

  No brief filed for appellee.

PER CURIAM.

  AFFIRMED.

DELL, GUNTHER and KLEIN, JJ., concur.

**NOT FINAL UNTIL THE DISPOSITION OF ANY TIMELY FILED MOTION FOR REHEARING.**

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JUL 29 1998
CRIMINAL DIVISION
WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402


FREDERICK D. JOHNSON                    CASE NO. 97-00308

  Appellant(s),

vs.                                     97-1-2788

STATE OF FLORIDA                        L.T. CASE NO. 91-83
                                        INDIAN RIVER
  Appellee(s).


September 22, 1997
_____

BY ORDER OF THE COURT:

        ORDERED that upon consideration of appellee's motion for

clarification of need to file brief, the State is directed to

not to file a brief.


I hereby certify the foregoing is a
true copy of the original court order.

MARILYN BEUTTENMULLER
CLERK

cc:   Frederick D. Johnson
      Attorney General-W. Palm Beach


      /CH                                      RECEIVED
                                          OFFICE OF THE
                                          ATTORNEY GENERAL

                                          SEP 23 1997

                                          CRIMINAL OFFICE
                                          WEST PALM BEACH

# R - 6

# M A N D A T E

from

# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

This cause having been brought to the Court by appeal, and after due consideration the Court having issued its opinion;

YOU ARE HEREBY COMMANDED that such further proceedings be had in said cause as may be in accordance with the opinion of this Court, and with the rules of procedure and laws of the State of Florida.

WITNESS the Honorable MARTHA C. WARNER, Chief Judge of the District Court of Appeal of the State of Florida, Fourth District, and seal of the said Court at West Palm Beach, Florida on this day.

**DATE:**            October 1, 1999

**CASE NO.:**        99-1974

**COUNTY OF ORIGIN:**    Indian River

**T.C. CASE NO.:**    91-83 CFB

**STYLE:**           FREDERICK D. JOHNSON    v.   STATE OF FLORIDA



*Marilyn Beuttenmuller*
**MARILYN BEUTTENMULLER, Clerk**
**Fourth District Court of Appeal**

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JAN 0 4 2000
CRIMINAL DIVISION
WEST PALM BEACH

**ORIGINAL TO:**      Jeffrey K. Barton, Clerk
cc:
Frederick D. Johnson      Attorney General-W.P.B.

al

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT                                    JULY TERM 1999


FREDERICK D. JOHNSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

CASE NO. 99-1974

_____

Decision filed   July 14, 1999

Appeal of order denying rule 3.850 motion from
the Circuit Court for the Nineteenth Judicial
Circuit, Indian River County; Robert A. Hawley,
Judge; L.T. Case No. 91-83 CFB.

Frederick D. Johnson, South Bay, pro se.

No appearance required for appellee.

PER CURIAM.

AFFIRMED.

DELL, GUNTHER and KLEIN, JJ., concur.

NOT FINAL UNTIL THE DISPOSITION OF
ANY TIMELY FILED MOTION FOR
REHEARING.

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JAN 0 4 2000
CRIMINAL DIVISION
WEST PALM BEACH

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
# FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

September 10, 1999

**CASE NO.: 99-1974**
L.T. No. : 91-83 CFB

Frederick D. Johnson            v.      State Of Florida

---

Appellant / Petitioner(s),                          Appellee / Respondent(s).

## BY ORDER OF THE COURT:

ORDERED that appellant's motion filed July 26, 1999, for rehearing is hereby denied.

I HEREBY CERTIFY that the foregoing is a true copy of the original court order.

*Marilyn Beuttenmuller*
MARILYN BEUTTENMULLER, Clerk
**Fourth District Court of Appeal**

Served:

Frederick D. Johnson          Attorney General-W.P.B.

pb

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JAN 0 4 2000
CRIMINAL DIVISION
WEST PALM BEACH

# IN THE DISTRICT COURT OF APPEAL
# FOUTH DISTRICT, STATE OF FLORIDA

FREDRICK D. JOHNSON,     )
        Appellant,    )
                     )
-vs-                 )     Case No.: <u>99-1974</u>
                     )
THE STATE OF FLORIDA,    )
        Appellee(s).   )
_____ )

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JUL 26 1999
CRIMINAL DIVISION
WEST PALM BEACH

# APPELLANT'S MOTION FOR REHEARING

**Comes Now** the appellant, **Frederick D. Johnson**, <u>pro</u> <u>se</u>, and respectfully request this **Honorable Court**, pursuant to Florida Rule(s) of Appellate Procedure 9.040; 9.140; 9.300; and 9.330, to enter the appropriate Order/Order(s) granting rehearing of this Court's Per Curiam Affirmed Decision filed on the 14th day of July, 1999. Because it is readily apparent this Court has apparently overlooked and/or misapprehended points of law and facts as applied to the issue at bar. **Accord,** this appellant will show the following sworn factual claims and applicable controlling authorities in support hereof:

## I.
## JURISDICTION

**De** **jure** jurisdiction of this **Honorable Court** is vested to entertain this rehearing under the rationale set-forth in

1

PADOVANO, FLORIDA APPELLATE PRACTICE, Section(s) 15.1 thru 15.7 (1988); Article V. Section 4 (b) (1), of the Constitution of Florida.

De facto jurisdiction of this Honorable Court to entertain rehearing of occasional error of the court, overlooking and/or misapprehension of points of law or facts, and issue a revised ruling is recognized under the ratio legis established in ELLIOTT V. ELLIOTT, 648 So.2d 135 (Fla. 4th DCA 1994) at fn#2; and LETO V. STATE, 658 So.2d 1108 (Fla. 4th DCA 1995).


## II.

### APPELLANT'S STATEMENT OF PARTICULARITY AS TO POINTS OF LAW AND/OR FACTS THIS COURT HAS OVERLOOKED AND/OR MISAPPREHENDED


This appellant avers the *PER CURIAM AFFIRMED DECISION* of this Honorable Court is improvident to equality through process due to access to the courts. Article I, Section(s) 2, 9, 21, of the Constitution of The State Of Florida. In that: "A final judgment of the trial court becomes the judgment of the District Court of Appeal upon the entry of a PCA Affirmance". See, PADOVANO, FLORIDA APPELLATE PRACTICE, Section 14.2 at pg. 231, citing SHUPNICK V. PERSHING AUTO LEASING INC., 383 So.2d 1164, 1165 (Fla. 1980).

The trial court's holding was:

> The Defendant claims newly discovered evidence in an attempt to circumvent the time requirement of rule 3.850(b), and the fact that this is a successive motion. This Court denied the previous motion after an evidentiary hearing. (A copy of the

2

order is attached as Court's exhibit "A."). The appellate court affirmed the denial without a written opinion, by mandate which issues on August 14, 1998.

The alleged newly discovered evidence is the fact that a witness subpoenaed' to testify at the evidentiary hearing, was discovered dead. This does not qualify as newly discovered evidence which would probably produce acquittal on retrial, *See Jones V. State,* 591 So.2d 911 (Fla. 1991).

Furthermore, the Defendant's allegations are conclusory.

The Defendant's motion is successive and an abuse of process. The motion is denied. The defendant has 30 days from date of this order, in which to seek appellate review.

*Accord,* this holding is the law of the case upon this Court's PCA Decision. Confirming this Court failed to reach the merits of this defendant's sworn factual claims buttressed by applicable controlling authorities. **DEPT. OF LEGAL AFFAIRS V. DIST. Ct. of Appeal**, 434 So.2d 310 (Fla. 1983).

Having established that the holding of the trial court has become the law of the case, and this court did not reach the merits of the newly discovered exculpatory witness affidavit as to a dying declaration supporting exoneration of this appellant, to Fred D. Johnson by James Brothers before his death that deprived him of testifying at the previous evidentiary hearing. This appellant avers this **Honorable Court** has apparently overlooked and/or misapprehended points of law and facts that confirm a successive motion may be entertained and not be an abuse of the process under numerous exceptions advanced hereinafter. *See*, Rule

3

3.850 (f), Fla.R.Crim.P. (1999), in pertinent part:

> "A second and successive motion may be dismissed if
> the judge finds that it fails to alledge new or
> different grounds for relief and the prior
> determination was on the mefits or, if new and
> different grounds are alleged, the judge finds that
> the failure of the movant or the attorney to assert
> those grounds in the prior motion constitutes an
> abuse of the procedure governed by these rules."

Applied *sub judice*, the trial court erred in it's
determination on newly discovered evidence exception as applied
to a second and successive motion. And this Court overlooked the
facts advanced by this appellant and the points of law that
establish an exception to the two-year limitation for filing
motion to vacate sentence does not preclude enlargement of issues
raised in a timely-filed first motion for postconviction. **BROWN V.
STATE**, 596 So.2d 1026 (Fla. 1992), at 1027, "the two-year
limitation does not preclude the enlargement of issues raised in a
timely-filed first motion for postconviction relief."

The attachment (exhibit "A'), annexed to the trial court's
denial is a copy of the ante denial of the first postconviction
motion, after an evidentiary hearing, where this appellant
advanced an affidavit stating he was not present at the time of
the killing. That Kenneth Duane Johnson one of the perpetrators
testified was correct. Confirming the merits of the issue was
heard and ruled thereupon in this ante 'Motion', ergo, the
exception to enlarge such based on newly discovered evidence
exists in this instance .

Thereby, as to this exception, this Court has apparently

4

overlooked and/or misapprehended points of law as applies to this appellant's claims in the first timely-filed postconviction motion. That allows him to enlarge the issues raised based on newly discovered evidence that supports exoneration. **BROWN**, Id..

Here, this appellant advanced statements of James Brothers via a sworn affidavit as to a dying declaration made to Fred D. Johnson, directed to this appellant's innocence. Simply, enlargement of Kenneth Duane Johnson's previous testimony at the evidentiary hearing that this appellant was not present at the killing and had no knowledge previous to the incident. Via a sworn affidavit of Fred D. Johnson that supports this appellant's previous affidavit, and testimony that negates the State's case. Sworn statements that would exonerate this appellant, via a sworn affidavit of Fred D. Johnson who heard the dying declaration of James Brothers that supported this appellant's theory of defense, and innocence. A sworn affidavit of Fred D. Johnson that is admissible as a statement of the declarant's then existing mental, emotional or physical condition under section 90.803(3), Florida Statutes, or, as declarations against interest under 90.804(2)(c), Florida Statutes. Section (3), of the Florida Statutes provides in pertinent part:

> [T]he following are not inadmissible as evidence even though the declarant is available as a witness:
>
> (a) A statement of the declarant's then existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain or bodily health, when such is offered to:
>
> 1. Prove the declarant's state of mind, emotion or physical sensation at that time or at any other time when such statement is at issue in the action ---.

Applied *sub judice*, the affidavit of Fred D. Johnson was and is admissible as newly discovered evidence to establish James Brothers state of mind at the time he gave the previous deposition plan or motive accordingly, and then at the time of the dying declaration. See also, Section 90.804(2)(c), Florida Statutes in pertinent part:

> **Hearsay exception.** - The following are not excluded under s. 90.802, provided that the declarant is unavailable as a witness:
>
> (c) Statement against interest. - A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the truthworthiness of the statement ---.

Confirming, the affidavit advanced was admissible as newly discovered evidence, supporting this appellant's claims that this court has overlooked and/or misapprehended the postconviction relief motion at bar was not successive, and/or an attempt to circumvent rule 3.850(b), Fla.R.Crim.P..

In further support of this appellant's claim that this **Court** overlooked points of law as applied to the facts advanced in the postconviction motion at bar. See e.g., **PRESTON V. STATE**, 528 So.2d 896 (Fla. 1988), the Florida Supreme Court held in pertinent part:

6

"appellant raises a myriad of issues, some of which
are predicted upon the motions which were filed
after an evidentiary hearing and which sought to
inject new issues into the case. Under the
circumstances, the judge properly declined to rule
on these issues, ---. To the extent, if any, that
the content of such motions reflects newly
discovered evidence tending to exonerate appellant,
this may be presented through the filing of a motion
for writ of error coram nobis."

Applied *sub judice*, to the extent that the contents of the
motion at bar advances newly discovered evidence tending to
exonerate this appellant. This appellant cannot present such via
a motion for writ of error coram nobis. See, **RICHARDSON V. STATE**,
546 So.2d 1037, 1039 (Fla. 1989), where the Florida Supreme Court
held in pertinent part:

For these reasons, we hold that all newly
discovered evidence claims must be brought in a
motion pursuant to Florida Rule of Criminal
procedure 3.850, and will not be cognizable in an
application for a writ of error coram nobis unless
the defendant is not in custody. We recede from
**HALLMAN** and its progency ....

Applied *sub judice*, this appellant sought his relief under
Rule 3.850 as newly discovered evidence. **RICHARDSON**, Id.. And
this Court has overlooked points of law as applied to the sworn
factual claims advanced under **JONES V. STATE**, 591 So.2d 911 (Fla.
1992). That established a more liberal standard for evaluating
newly discovered evidence, and under the more liberal standard the
claims must be evaluated by the weigh of both the newly discovered

7

evidence and the evidence which was previously introduced at trial. This Court overlooked the facts set-forth in the 'Motion' where this appellant advanced a sufficient evaluation of both the newly discovered evidence the sworn affidavit of Fred D. Johnson as to a dying declaration of James Brothers and the previously introduced evidence, that merited postconviction relief under the foregoing newly discovered evidence standard. All of which set-forth sworn factual claims buttressed by sworn factual affidavit, and applicable controlling authorities to support exoneration of this appellant via the judgment and sentence being set-aside and/or vacated. Because the sworn factual claims buttressed by a sworn factual affidavit if the jury had of heard is more indicative than not would more than probably produce an acquittal on retrial. And/or is sufficient at this point to deserve nothing short of an Order for an evidentiary hearing for the determination of the scope of the *EXCULPATORY NEWLY DISCOVERED EVIDENCE*, the exculpatory dying declaration of James Brothers, *i.e.*, a sworn affidavit of a dying declaration of a witness who died just hours before he could testify at the evidentiary hearing. A fortiori, see, **SEVIER V. STATE**, 596 So.2d 771 (Fla. 2nd DCA 1992), citing **JONES V. STATE**, supra. And as applied *sub judice*, SPAZIANO V. STATE, 20 Fla. L. Weekly (S) 461 (Fla. 1995); **SPAZIANO V. STATE**, 20 Fla. L. Weekly (S)464 (Fla. 1995). Ad majus reasoning supporting this defendant's claims that this Court has overlooked and/or misapprehended the importance of the sworn affidavit in this case that supports this appellant's claim of *NEWLY DISCOVERED EVIDENCE*. See e.g., **BRUCE V. CARSON**, 489 So.2d 1234 (Fla. 1st DCA

8

1986); **CAMMARANO V. STATE**, 602 So.2d 1369 (Fla. 5th DCA 1992); and **SCOTT V. STATE**, 629 So.2d 888 (Fla. 4th DCA 1993).

In sum, this appellant avers based on the foregoing this is one of those instances where this court has made one of those occasional errors and should issue a revised opinion accordingly. Because this Court has erroneously affirmed a law of the case by the trial court that is contrary to the heretofore due process exception(s) to the time-periods of rule 3.850, advanced herein and within the Motion For Postconviction Relief.

Simply, the trial court misrepresented that the newly discovered evidence is in fact a witness subpoenaed to testify at the evidentiary hearing that was discovered dead. And held this does not qualify as newly discovered evidence which would have produced acquittal at trial. This is not the case *sub judice*, the newly discovered evidence is not what the State claims, it was and is a sworn affidavit from a person who was told, Fred D. Johnson, via a dying declaration by James Brothers that appellant did not have knowledge of any plans to kill anyone nor did he commit the crime charged, that if presented before the jury in all probability would produce an acquittal on retrial. Thereby, based on the evaluation of the evidence previously advanced, to the contents of the sworn affidavit that supports exoneration. This court should recognize this appellant made a *prima facie* case of newly discovered evidence that would probably have produced an acquittal via retrial, and thereof should issue a revised decision by vacating and/or set-aside the erroneous law of the case entered by the trial court, based on newly discovered

9

evidence a dying declaration of James Brothers that supports
exoneration of this appellant. And/or remand this case back to
the trial court for nothing short of an evidentiary hearing for a
determination of the newly discovered evidence, an exculpatory
sworn affidavit of Fred D. Johnson concerning a dying declaration
of James Brothers, as to it's value if presented to the jury in
all probability would exonerate this appellant.

Respectfully Submitted,

*Fredrick D. Johnson #582112*

Fredrick D. Johnson, #582112

# CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the
foregoing **APPELLANT'S MOTION FOR REHEARING** has been furnished via
Facility and U.S. Mail to: The Office Of The Attorney General,
1655 Palm Beach Lakes Blvd. West Palm Beach, Florida 33401, on
this 21st day of July, 1999, by the undersigned.

*Fredrick D. Johnson #582112*

Fredrick D. Johnson, #582112

# DECLARATION

I Declare Under The Penalty of Perjury that I, **Fredrick D.
Johnson**, have the foregoing **APPELLANT'S MOTION FOR REHEARING** and
**CERTIFICATE OF SERVICE**, that I am the Appellant in the above-
styled causes, and I have personal knowledge of the facts and

10

matters therein set forth and alleged, and that the facts and matters therein set forth and alleged are true.

*Accord:* Section 92.525, Florida Statutes

*Executed* this 21st day of July, 1999, by the undersigned.

*Fredrick D. Johnson* #582112

Fredrick D. Johnson, #582112
South Bay Corr. Facility
Post Office Box 7171
South Bay, Florida 33493

11

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT, P.O. BOX 3315, WEST PALM BEACH, FL 33402

July 21, 1999

**CASE NO.: 99-1974**
L.T. No. : 91-83 CFB

Frederick D. Johnson               v.        State Of Florida

---

Appellant / Petitioner(s),                    Appellee / Respondent(s).

## BY ORDER OF THE COURT:

ORDERED that appellee's motion filed July 16, 1999, for clarification of need to file brief is hereby determined to be moot.

I HEREBY CERTIFY that the foregoing is (a true copy of) the original court order.

*Marilyn Beuttenmuller*
**MARILYN BEUTTENMULLER, Clerk**
**Fourth District Court of Appeal**

Served:

Frederick D. Johnson          Attorney General-W.P.B.

ch

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

JUL 21 1999

CRIMINAL DIVISION
WEST PALM BEACH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

FOURTH DISTRICT

FREDERICK D. JOHNSON,

      Appellant,

v.                       Case No. 99-01974



STATE OF FLORIDA,

      Appellee.

_____/

## MOTION FOR CLARIFICATION OF NEED TO FILE BRIEF

COMES NOW Appellee, the State of Florida, by and through undersigned counsel, and moves this Court for an order setting a briefing schedule in this cause, and as grounds states:

1. The instant case is an appeal from the **summary** denial of Appellant's Rule 3.850 motion for post conviction relief.

2. Rule 9.140(i) <u>Fla. R. App. P.</u> provides that appeals from the denial of Rule 3.850 and Rule 3.800 motions may be disposed of in a summary fashion, and provides that no briefs are required, but if the appellant does file a brief, he must do so within 15 days of the date of the notice of appeal. <u>See also</u> <u>Davis v. State</u>, 660 So. 2d 1161 (Fla. 4th DCA 1995). Without obtaining leave from this Court, Appellant served the office of the undersigned with his initial brief on July 8, 1999, although he represents his notice of appeal was filed on June 1, 1999.

3.    If the provisions of Rule 9.140(i) are not strictly construed, Appellee is concerned that it may be interpreted that the State has an answer brief due for service on July 28, 1999; alternatively, if the provisions of Rule 9.140 are strictly construed, Appellee may not be required to file a brief at all.  In any event, the State would respectfully request that this Court not reverse the trial court's denial of Appellant's Rule 3.850 motion without ordering Appellee to respond to Appellant's allegations.

4.    Undersigned counsel has not contacted Frederick D. Johnson, pro se, regarding the relief requested in this motion because he is currently incarcerated, thus she cannot represent whether he objects to the relief requested in this motion.

WHEREFORE, Appellee respectfully requests this Court enter an order determining whether Appellee is required to file an answer brief in this cause, and if so, when.

Respectfully submitted,

ROBERT A. BUTTERWORTH
Attorney General

ETTIE FEISTMANN
Assistant Attorney General
Florida Bar No.0892830
1655 Palm Beach Lakes Boulevard
Suite 300
West Palm Beach, FL 33401-2299
(561) 688-7759

2

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing "Motion for Clarification of Need to File Brief" has been forwarded by U.S. Mail to: FREDERICK D. JOHNSON, DC# 582112, South Bay Correctional Institution, P.O. Box 7171, South Bay, FL 33493, this 16<u>th</u> day of July, 1999.

_____
Of Counsel

3

IN THE DISTRICT COURT OF APPEAL
FOURTH DISTRICT


FREDERICK D. JOHNSON,
            Appellant,

                                    4TH DCA CASE NO.: 99-01974

    VS.

                                    L. T. CASE NO.: 91-083-CF-B
STATE OF FLORIDA.                   INDIAN RIVER COUNTY, FLORIDA
            Appellee,
_____/


RECEIVED
OFFICE OF THE ATTORNEY GENERAL

JUL 1 4 1999

CRIMINAL DIVISION
WEST PALM BEACH


INITAL BRIEF OF APPELLANT


On Appeal from the Circuit Court of the Nineteenth
Judicial Circuit In and For Indian River County, Florida
[Criminal Division]
[As supplemented in Typed Version] 3.850


FREDERICK D. JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA   33493
APPELLANT in Pro' se
TABLE OF CONTENTS

TABLE OF CONTENTS.................................................   i

TABLE OF AUTHORITIES...........................................   ii

PRELIMINARY STATEMENT.........................................   1

STATEMENT OF THE CASE.........................................   1

STATEMENT OF THE FACTS........................................   3

ARGUMENT

POINT ONE

WHETHER THE TRIAL COURT PREJUDICIALLY ERRED
IN THE DENIAL OF APPELLANT'S RIGHT TO AN
EVIDENTIARY HEARING UNDER FLORIDA RULE OF
CRIMINAL PROCEDURE 3.850 WITHOUT ATTACHING
PORTIONS OF THE FILES AND RECORDS THAT
CONCLUSIVELY SHOWS THAT APPELLANT IS ENTITLED
TO NO RELIEF?...................................................   10

POINT TWO

WHETHER TRIAL COURT DENIAL WITHOUT AN
EVIDENTIARY HEARING PREJUDICAILLY FORECLOSED
APPELLANT OF DUE PROCESS OF LAW RIGHTS AN
THIS REFUSAL TO CONSIDER MERITS OF HIS
CONSITUTIONAL CLAIM WILL WORK MISCARRIAGE OF
JUSTICE?........................................................   21

CONCLUSION......................................................   26

CERTIFICATE OF SERVICE..........................................   26

i

TABLE OF AUTHORITIES

PAGE

CASES

CHAMBER V. STATE 530 So.2d. 452 (1st DCA 1988)...........   13

DEAN V. BARBER 951 F.2d. 1210 (11th Cir. 1992)...........   13

DEPARTMENT OF LAW ENFORCEMNT V. REAL PROPERTY
          588 So. 957 (Fla. 1991).........................   24

GOLDEN V. STATE 509 So.2d. 1151 (Fla. 1st DCA 1987)......   14

HAAG V. STATE, 591 So.2d. 614 (Fla. 1992)................   14

HANDLEY V. STATE 170 So.2d. 748 (Fla. 1948)..............   19

HOLLAND V. STATE 502 So.2d. 1250 (Fla. 1987).......   12

HUGHES V. STATE 565 So.2d. 356 (Fla. 1st DCA 1990).......   14

JARAMILLO V. STATE, 417 So.2d. 2457 (Fla. 1982).........   20

JOHNSON V. STATE, 609 So.2d. 253 (Fla. 4th DCA 1992)....   24

JONES V. STATE, 591 So.2d. 911 (Fla. 1991)..............   18

LOCKETT V. STATE, 262 So.2d. 253 (Fla. 4th DCA 1972)....   20

NOA V. U.S., 118 S.Ct. 1328 (Fla. 1997)..................   19

RODRIGUEZ V.  STATE, 571 So.2d. 1356 (Fla. 2nd DCA 1991)   23

WALSH V. UNITED STATES, 404 F.2d. 414 (5th Cir. 1968)...   20

WASHINGTON V. TEXAS, 388 U.S. 14, 87 S.Ct. 1920.........   20

U. S. V. CALDERON, 127 F.3d. 1314 (Fla. 1997.............   19

## PRELIMINARY STATEMENT

Frederick Douglas Johnson was the defendant, and will be referred to as Appellant or Johnson in this Memorandum of Law.

The State of Florida was the prosecuting authority and will be referred to as State in this Memorandum of Law.

The pages of the trial transcripts are consecutively numbered. All references to the transcripts will be denoted by the symbol "T", followed by the appropriate page number in parenthesis.

## STATEMENT OF THE CASE

Appellant was indicted, along with two others not involved in this collateral attack, with First degree murder, Armed Burglary of an occupied dwelling, and Robbery with a Firearm (T-1151-1152). A jury returned verdicts of guilty as charged on all three counts (T.1252-1253). The trial court adjudicated Appellant guilty and imposed sentences of life imprisonment, and two consecutive terms of probation, each term for ten years. (T-1267-1278).

Notice of Appeal was timely filed from the Judgments and sentences to the Fourth District Court of Appeal, in appellate case number 91-2379 (T-1284-1285). On November 12, 1992, the

1

Fourth District Court of Appeal issued a Per curiam Affirm of Appellant's direct appeal case 609 So.2d. 46 (Fla. 4th DCA 1992). On November 7, 1994, Appellant's 3.850 Post Conviction Relief Motion was timely filed. On January 3, 1997 Appellant filed his Notice of Appeal for the denial of his 3.850 post conviction relief motion to the Fourth District Court of Appeal, in appellate case number #97-00308. On July 29, 1998, the Fourth District Court of Appeal per curiam Affirm Appellant's post-conviction motion. On August 13, 1994 the Fourth District Court of Appeal denied Appellant's Motion for Rehearing/Rehearing En Banc and Amended Motion for Rehearing/to recall Mandate. On or about the 3rd day of December 1998 appellant filed an 3.850 post conviction Relief Motion for Newly Discovered Evidence. On Febuary 17, 1999 trial court denied Appellant's 3.850 post-conviction Relief motion for Newly Discovered Evidence. On March 3, 1999 Appellant filed a Motion for rehearing in the trial court regarding Appellant's Newly Discovered Evidence. The trial court denied Appellant's Motion for rehearing an Amended Motion for Rehearing on May 24, 1999.

On June 1, 1999, Appellant timely filed his Notice of Appeal, Directions to the Clerk, and Destination of Record to the appropriate parties.

STATEMENT OF THE FACTS

Appellant was separately tried from two co-defendants. The State did not seek the death penalty (T-68). The trial court appointed an additional attorney to represent Appellant less than (30) thirty days before trial due to the inexperience and apparent inability of the initially appointed attorney to handle the case. (T-65). At the trial it was shown the appellant, Tyrone Hans Johnson and Kenneth Duane Johnson Appellant's cousins, got together with Anthony Wilson on the evening of January 29, 1991, with the intent to steal. Anthony Wilson established that Appellant and Tyrone Hans Johnson knocked on the door of Wilson's girlfriend house to ask Wilson if he wanted to "Jock" somebody (T-695-696). Wilson asked them to return later, as Wilson was visiting with this girlfriend (T-695-696). Later Wilson went appellant and Tyrone Hans Johnson (T-696). Tyrone's brother Kenneth joined them, and Tyrone obtained a pair of wire cutters (T-696-697). Wilson dropped away from them when he stopped to telephone his girlfriend, and after finishing the call Wilson went back to his house (T-697-698). Wilson met with Appellant, Kenneth and Tyrone about 2:00 a.m. when they came to his house and told him that they were going to the Haitian house, where a Haitian lady lived (T.-698). Wilson went with them (T-698-699). The four of them attempted to break in, but failed when the lady started screaming, and all four of them ran away (T-699-700). What they did was cut a wire, and break a window (T-699-700). But her screaming convinced them to run (T-699-700). Wilson went home

3

Tyrone and Kenneth, but Appellant was not with them (T-718). Wilson asked them where had they been, and Tyrone told Wilson that they had just robbed an old lady, but she started screaming and he shot her (T-718). Tyrone and Kenneth were on their way to purchase drugs (T-720). Wilson went down the road and ran into Appellant pushing a bicycle (T-720). Wilson asked appellant has he seen his cousins, and appellant told him that no he had not (T-720). Wilson asked appellant where they had been, and appellant replied that we "we did some crazy stuff" and had to leave, but appellant did not tell Wilson what it was (T-720-721). Wilson quoted appellant as having said: "I had to leave them because they were doing stupid shit." (T-722-723). Wilson also saw appellant and Tyrone and Kenneth at a place known as Roy Brown's Quaters where Tyrone took a gun out of his jacket and gave it to appellant (T-705-707). Kenneth gave some money to appellant for drugs (T-617-618, 705-707). This was the gun that Kenneth used to kill the victim, and was the gun that Troy Howard had given to appellant in mid-December (T-530-531). When Howard heard about the murder on the 30th of January 1991 he found Appellant and Appellant told him he did not know anything about it (T-530-531). Tyrone Johnson testified as a state witness under grant of testimonial immunity (T-794-795). Tyrone Johnson was 19 years old, the brother of Kenneth Johnson and the cousin of Appellant (T-794-795). He was the person who was hiding under the victim's window with his brother Kenneth who shot her after she looked out and said she was going to call the police (T-806-807). Tyrone testified that as

4

she looked out she must have seen Kenneth because that when Kenneth shot her (T-807). At this time, Appellant was standing in front at the other end of her house (T-807). Appellant ran away when Kenneth shot thru the window (T-807). Then Kenneth shot her again, and each of the brothers Tyrone and Kenneth, went in through the window and took money and jewelry from the house (T-809).

The plan had been for appellant to act as an lookout, but he ran did not warn them when other people went by (T-905-906). Tyrone testified that appellant did not do anything at the victim's house (T-106). Tyrone Hans Johnson admitted that it was his idea to burglarize the house (T-885-886). Tyrone hid in some bushes in the back yard of the victim's house after the window was broken, but appellant ran across the street and did not return until called back by Tyrone (T-825-827). Then appellant only walked briefly around the other end of the house where he stood momentarily. When Kenneth fired the shot, Appellant ran away before the second shot was fired and before either Tyrone or Kenneth entered the house (T-825-827). Tyrone testified that after leaving the victim's house, he and Kenneth went to a place known as "Cookies" and smoked crack, then later went to a place known as Brown's Quaters where they met up with appellant again (T-831, 898). They had agreed to meet there (t-831). Both Tyrone and Kenneth gave money to appellant for drugs they had brought from him (T-685). Tyrone also testified that when appellant ran away prior to the second shot and entry he did not return to the scene of the murder and burglary (T-891-892_ Tyrone was extremely

5

upset after the murd .., and when he was at Brown's Quaters he kept hiding in the closet or under the bed whenever a car would go by (T-601-602, 615, 616). Later at his grandmother's house that moring he said that he knew what he had done was wrong and wished he had not been there (T-816-818). When Tyrone gave his First statements to police he protected his brother by blaming the killing on appellant as Kenneth had told him to do, but he admitted that those statements had been lies (T-817-819, 905-907).

Arthur Cannon, known as T. C., lived at Brown's Quaters (T-596-598). He had gone to sleep at about 9:00 or 10:00 p.m. on January 29, 1991 (T-598). He awoke to a knock on the door when Tyrone, Kenneth and Appellant came to his apartment (T-599). This was late at night, but there was no electricity in the place and he had no clock to tell what time it was (t-599-600, 699). Another witness, Tommy Bertion, who was sleeping at T. C.'s, place the time after 3:00 a.m. (T-661, 664). Appellant was selling crack to Tyrone and Kenneth that Appellant was not smoking it (t-685). Kenneth said that he had about $500.00, and that Tyrone had money too (T-687). When Bertion indicated to Appellant that he notice how much money Kenneth and Tyrone had, Appellant stated that they had "jacked a dread" (T-687-689). Arthur Cannon also testified that Appellant was selling crack to Kenneth and Tyrone, but not buying it (T.617).

Carolyn Preston was walking by the victim's house after midnight when she met a younger male walking past her (T-550-552).

6

he asked her what was up, and she said nothing (T-552). As she went on he turned and went toward the victim's house (T-551_. She identified Appellant as this person (T-552; 558). A friend of hers drove by, but before driving off she heard a sound like a tin can being kicked and turned to see the young man she pass standing by the victim's back porch (T551-553). She was out looking for crack-cocaine, and admitting using cocaine earlier that night (T-557). Objection was sustain to Appellant questioning her about the use of crack-cocaine at times after that night and the time of her trial testimony as what that usage might affect her ability to recall and relate facts correctly (T-573, 578).

Johnny Sneed was watching a late movie on T.V. when he run out of cigarettes (T-663-664). He rode his bicycle to a store named Winston's at a time after 1:00 A.M. (T-635). As he went by the victim's house he saw somebody standing in the victim's yard and 2 or 3 more people standing out by the road (T-635-636). He said it was not unusual to see people up and down the street all night (T-635). He did not get a good look at the person because he did not pay particular attention as he rode by (T-637). The next day he heard about the murder and talked to the detective who showed him photographs (T-638-639). He picked a photograph of Appellant, but in open court he testified that he could not swear that appellant is the person he saw (T-638-639, 659).

Daniel Miles was riding his bike on the night of the murder

7

coming back from Mobley's store when he passed the victim's house (T-540-542). He saw three people and was able to identify Tyrone and Kenneth Johnson standing near the car port of the victim's house (T-542, 4546). He also saw a third person standing back in an open field (T-543). He was not able to identify that person (T-544). About 10 to 15 minutes later he heard two gun shots (T-544). He knows the Appellant when he sees him, and did not see this third person talking to the two persons near the victim's house (T-545, 547).

Although Anthony Wilson testified that he went home before the others went to the bridge after attempting to breaking into the Haitian lady's house, a witness Zachary Haskins, saw Wilson with the others sitting on a bridge about 1:00 A.M. (T-525-526). Sylvester Berry, another brother of Tyrone and Kenneth, and also Appellant's cousin, testified that when he got home from work on the afternoon after the murder that he went and gathered his brothers and took them down to the police station (T-736-737). Then he went and found Appellant and Anthony Wilson (T-737). Appellant ran when Slyvester wanted to speak to him, but when he caught up with appellant, appellant said that he and the other three went to a woman's house but appellant would not explain (T-738). Appellant also said, "Man don't put me in this." (T-737). Appellant also talked to Slyvester several days later, when Appellant was in jail, and he kept saying he did not do it. (T-740-741).

8

Apparently, the gun used in the murder was the one appellant gave Tyrone at the Haitian lady's house and which Tyrone kept under the mattress in Arthur Cannon's apartment (T-602, 612). When Cannon found the gun he threw it in the weeds behind his aprtment (T-612). Detective Fafeita found the fun in a trash container at Brown's Quaters (T-486).

Appellant gave a statement to the police on the night after the murder when appellant went to the police station at the insistence of his cousin Slyvester Berry (T-459-460). Appellant denied any knowledge of the murder (T-460). Appellant was charged with murder after the second statement Tyrone gave to detective Fafeita which was admittedly false in its accusation of Appellant (T-467, 818-819, 905-906).

The medical examiner testified that autopsy of the victim showed that she suffered two gunshot wounds, one was in the upper chest under the left collar bone, the other was in the back near the spine in the chest area (T-419). She died from the gunshot wound to the chest because it penetrated the lungs and the aorta (T-421). The gunshot wound to the back would not have expected to be fatal as it was relatively minor (T-428). The bullet wounds were irregular, leading the medical examiner to the conclusion that they had been fired through an intermediate target, possibly a window (T-421).

The hand prints of Kenneth Duane Johnson were found on the

9

bathtub in the tim's house (T-342, 352). There were two holes in the screen to the victim's bedroom (T-353). The screen was found in the wooden area nearby (T-355).

The earlier attempted burglary was at a house approximately two blocks away from the victim's house, and at both houses a sire had been cut leading into the house (T-391, 431-432).

### ARGUMENT

### POINT ONE

WHETHER THE TRIAL COURT PREJUDICIALLY ERRED IN THE DENIAL OF APPELLANT'S RIGHT TO AN EVIDENTIARY HEARING UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 WITHOUT ATTACHING PORTIONS OF THE FILES AND RECORDS THAT CONCLUSIVELY SHOWS THAT APPELLANT IS ENTITLED TO NO RELIEF?

On December 7, 1998, appellant post conviction relief was filed in accordance with Florida Rule of Criminal procedure 3.850(F) which appellant raised the following issue involving Newly Discovered Evidence were appellant simply stated:

> On December 3, 1996 an Evidentiary hearing was conducted for defendant. Defense witness James Brothers was issued a subpoena and scheduled to testify on behalf of the defendant. James Brothers was found deceased on December 3, 1996 by Defense private investigator Mark Gibbons. Defendant discovered from the record on Appeal that was stamped January 28, 1998 which indicated it was received by the Public Defenders office,

10

Appellate Division, Palm Beach, Florida, that
in trial counsel's motion for payment of
reasonable Attorney Fees had took an
deposition of James Brothers concerning his
knowledge and expected testimony of defendant
on the date of the crime. Which defendant was
convicted of 1st Degree Murder, Armed Burglary
of an Occupied Dwelling, an Robbery with an
Firearm.

On February 17, 1999 the trial court denied appellant's 3.850
post conviction relief motion with a copy of the court's prior
order denying appellant's 3.850 post-conviction relief motion from
the result of an Evidentiary Hearing conducted in December 1996.
According to Florida Rules of Criminal procedure 3.850(c)(4) which
requires a petitioner to state the "reason or reasons the claim or
claims in the present motion were not raised in the former motion
or motions." Why for Appellant to have a facially sufficient
post-conviction motion requires a petitioner to include the
identity of the prospective witnesses, the substance of their
testimony and an explanation how the defense was prejudice, and
this prejudice probably affected the outcome of the trial.

Appellant executed to the trial court pursuant to Florida
Rule(s) of Criminal procedure 3.020 and 3.850 (1991) restated in
padovano, Florida Appellant Practice, section(s) 15.1 thru 15.7,
for an Order granting rehearing of the trial court's order denying
Appellant's motion for post-conviction relief dated the 17th day
of February 1999. Appellant avers on the 3rd day of March 1999
VIA institutional mail, filed a legally sufficient motion Motion
for Rehearing.

11

The trial court erroneous denied appellant his right to an evidentiary hearing under Florida Rule of Criminal procedure 3.850 where it states in pertinent part:

> "If the motion and the files and records in the case conclusively show that the prisoner is entitled to no relief, the motion shall be denied without a hearing. In those instances when such denial is not predicated upon legal insufficiency of the motion on its face, a copy of that portion of the files and records which conclusively shows that the prisoner is entitled to no relief shall be attached to the Order."

As the proceedings in the instant case are contrary to this Rule whereas the trial court entered an ordered denying Amended Motion for Rehearing simply stated: "The court has reviewed the motion, the record, and the order denying the motion for post-conviction relief. The defendants motion is denied."

The trial court erroneous overlooked and/or misapprehended Florida Rule of Criminal procedure 3.850, and subsequent rule thereon, Florida Rule of Appellate procedure 9.140(g). In that, it is only when the record conclusively shows that the defendant is entitled to no relief that the motion can be summarily dismissed without an evidentiary hearing. Here, no files or records were attached to CONCLUSIVELY show appellant was entitled to no relief, ergo, nothing legally sufficient to CONTRADICT appellant's sworn allegations contain within his motion, confirming a prima facie showing for postconviction relief existed and a hearing should have been granted. See Holland v. State, 502

12

So.2d. 1250 (Fla. '97); CHAMBER V. STATE 530( ).2d. 452 (1st DCA

1988). Accord, a misapprehension by the trial court's decision,

worthy of reconsideration, warranting an REVERSE and REMAND by

this honorable appellate court allowing appellant his due process

safeguards of the heretofore advocated rules, continuing on the

trial court held nothing in Appellant's motion why "The Newly

Discovered Evidence" was not available at trial, particularly

since the appellant did not go to trial for nearly seven (7)

months.

In this direction appellant asserts the trial court has

apparently overlooked and/or misapprehended appellant is a pro se

indigent incarcerated inmate, with no training in juris. Thereof,

may have filed a somewhat deficient motion. Ergo, will bring to

this courts attention the following: see DEAN V. BARBER, 951

F.2d. 1210 (11th Cir. 1992), in pertinent part:

> We not before addressing the merits of Deans
> appeal that Dean proceeded as a pro se
> complaint in the district court. This circuit
> and the supreme court have stated that pro se
> complaints are given more leeway than lawyers.
> See, e.g. Haines v. Kerner, 404 U.S. 519, 92
> S.Ct. 594 (1992), ("[W]e hold [pro se
> complaints] to less stringent standards than
> formal pleading drafted by lawyers" Harmon v.
> Berry, 728 F.2d. 1407 (11th Cir. 1984) (pro se
> prisoners complaint governed by less stringent
> standards than formal pleadings). Deans
> pleading, therefore, will be looked at with
> special care.

Applying these principles sub judice, to avail appellant with

simple and direct means of judicial review administered in favor

13

of justice. Florr- Rule of Criminal procec- e 3.020; Haag v.
State, 591 So.2d. 614 (Fla. 1992). It would been more economic
use of judicial resources to address [corrected deficiencies] at
the trial court level than at this juncture [Appeal court] rather
forcing other judicial review to obtain [just] results. See
Hughes v. State, 565 So.2d. 356 (Fla. 1st DCA 1990). ergo,
Appellant should have been allowed to have satisfied the
deficiences viol Johnson's Motion for Rehearing, and supply the
missing information noted by the court. See GOLDEN V. STATE 509
So.2d. 1151 (Fla. 1st DCA 1987), in pertinent part:

> "although appellant's original motion was
> somewhat deficient, his motion for rehearing
> supplied the two missing items----."

Looking at the above ratio legis of sound jurist of reasons,
it is readily apparent Appellant is a pro se litigant, and to
avail him with due process safeguards, i.e., procedural,
statutory, and constitutional simple and direct means to access to
the courts administered in the interests of justice.

Applying the heretofore Factual claims and applicable
controlling principles sub judice. Appellant avers he will now
supply, what he believed he did within his Motion, the information
necessary to merit post-conviction relief, and the information
necessary to confirm the almost (7) seven months before trial,
what the trial court relied upon, has no weight on the claim of
Newly Discovered Evidence.

14

in this Fla. Jeopardy, appellant avers the exculpatory evidence presented to this court in the form of affidavit(s) did not come to life until after appellant was placed into the custody of the Florida Department of Correction.

<div style="text-align: center;">

PETITIONER'S FAILURE TO DISCOVER THIS
EVIDENCE PRIOR TO TRIAL WAS NOT DUE TO
LACK OF DUE DILIGENCE

</div>

(1)   Appellant's trial was conducted on July 15, 1991 and was concluded on July 18, 1991.

(2)   Appellant was solely and entirely dependent on trial counsel to call James Brothers, along with other witnesses in Appellant's behalf for testimony.

(3)   Appellant was not aware at the time of trial that counsel did not have his best interests at heart, when counsel knew appellant would have testified in his own behalf if counsel would have called at least one witness in Appellant's behalf.

(4)   On November 7, 1994, Appellant filed his 3.850 post-conviction Relief motion.

(5)   Appellant was granted an Evidentiary Hearing scheduled for December 3, 1996.

<div style="text-align: center;">

15

</div>

(6)  Appellant defendant counsel subpoened witness James
     Brothers, who gave statements (knowing death was near)
     to "FRED D. JOHNSON" between the later end of November
     to December, 1996 of what he would have testified about
     concerning his knowledge of Appellant's case and the
     events he personally witnessed.

(7)  Appellant received a non-contact visit from "FRED D.
     JOHNSON" in the earlier part of November, 1996 at the
     Indian River County Jail, where "FRED D. JOHNSON"
     attempted to verbally resolve a situation that had ended
     in resentment, and termination of a relationship.  The
     original incident arouse from a situation that occurred
     in the State of Georgia where "FRED D. JOHNSON" was
     charged and sentenced for allegedly making some kind of
     assault upon Ms. Angela Johnson, Appellant's sister.
     Appellant again indicated to "FRED D. JOHNSON" to stay
     out of his life.  (See Exhibit "A").

(8)  After "FRED D. JOHNSON" left the Appellant from this
     visit in the Indian River County Jail, Appellant had no
     contact with "FRED D. JOHNSON" in any manner until
     December of 1998 where "FRED D. JOHNSON" once again
     contacted the appellant and once again asking
     forgiveness.  Appellant, by that time having become more
     mature, and having become more spiritually oriented, did
     likewise and asked for forgiveness for his prior conduct

16

toward "FRED D. JOHNSON".

(9)  On or about the 12th day of December, 1998, Appellant
was advised by "FRED D. JOHNSON" that he had talked with
James Brothers about the case, several days before his
death.

(10) Defense witness James Brothers was found deceased on
December 3, 1996.

(11) Appellant's evidentiary hearing was conducted on
December 3, 1996, absent James Brothers' testimony.

(12) Defense witness James Brothers deposition taken in 1991
(was unknown to Appellant as to any deposition being
taken) is/are incomplete of the statements made by James
brothers given in 1996 to "FRED D. JOHNSON".

(13) Defense witness James Brothers deposition taken in 1991,
and his previous statements made in 1996, could not have
been discovered in full by trial counsel prior to
Appellant's trial, because James Brothers did not reveal
all the information to appellant's trial counsel at the
time of deposition in 1991.

This newly discovered evidence of James Brothers previous
statements made to "FRED D. JOHNSON" not only is in contradiction

17

with some of the state's alleged evidence.  It totally refutes the state's "ELEMENT" that Appellant's motive for the crime charged as "MONEY" and was the reason for appellant's "PRESENCE" at the scene of the crime or in the general area.  The newly discovered evidence clearly shows and demonstrated that Appellant asked for the gun because of his independent decision of not to participate in "ANY" further criminal activities with Tyrone and Kenneth Johnson and lawfully defines the "SUSPICIOUS" presence of the Appellant at the crime scene; not for the purposes of "MONEY", but instead to keep a close watch on the gun with hopes of retrieving it back from Tyrone Johnson, which appellant needed to do to insure his safety at Roy Brown's Quaters, with the intentions of immediately terminating his presence from the company of Tyrone and Kenneth Johnson before they did something "STUPID".

Also, this Newly Discovered Evidence is in total refutation of the state's element of proving the Appellant's intent to participate in the commission of the crime charged, which was circumstantial and is inconsistent with and consistent with any/all reasonable hypothesis of innocence of the Appellant and the state's element of participation and intent that would make the appellant liable as an Aider or Abettor to the crimes charged. See, Jones v. State, 591 So.2d. 911 (Fla. 1991) wherein the court stated:

> "However, if the newly discovered evidence did not refute an element of the state's case but rather only contradicted evidence that had been introduced at trial, the petition must be

18

denied."

Also, the courts stated similar rulings in recent case.  See
U. S. V. CALDERON, 127 F.3d. 1314, certiorari denied, Noa v. U.S.,
118 S.Ct. 1328 (Fla. 1997) where the following was stated:

> "Defendants moving for new trial on grounds of
> newly discovered evidence have burden of
> establishing in their motions that evidence
> was in fact newly discovered and that failure
> to discover it prior to verdict was not due to
> lack of diligence, if defendant can not make
> such showing, their motions should be denied.
> Fed. Rules Crim. Pro. Rule 33, 18 U.S.C.A."

It should also be noted a typographical error stating 1993 of
the Sworn Affidavit of FREED D. JOHNSON should be 1994 correct
date incident.

Defense witness statements to "FRED D. JOHNSON" several days
before he was declared deceased are relevant. Adequate
descriptions of the events that occurred on the night of the
murder were expressed by the defense witness James Brothers in
belief of his obviously health conditions before he gave his
statements to "FRED D. JOHNSON" (See Exhibit "B") about
appellant's case. These statements are admissible.  See: Handley
v. State, 170 So.2d. 748 which states the following:

> "Admissibility of statements, ad dying
> declarations does not depend on the length of
> interval of time between declaration and
> death, but state of declarant's mind and his
> belief that he is in a dying condition."

if the testimony of the previous statement made by defense witness James Brothers shortly before he died (and was unable to present this testimony at appellant's evidentiary hearing due to his death) to "FRED D JOHNSON" in 1996, is not allowed to be presented before a jury, which would probably reach the verdict of acquittal on retrial, then the state will have been allowed to be alleviated of its obligated duty of proving each essential element beyond a reasonable doubt and/or excuse every reasonable hypothesis of innocence in this case against Appellant. See Jaramillo v. State, 417 So.2d. 2457 (Fla. 1982) and Lockett v. State, 262 So.2d. 253 (Fla. 4th DCA 1972). It should be also noted that Appellant wanted to take the stand and testify in his behalf if Appellant's trial counsel had called at least one of Appellant's witnesses (See Exhibit "C").

## CONCLUSION TO POINT ONE

Appellant is guaranteed by the Sixth Amendment to subpoena witnesses and the denial of the right of an accused in a Fundamental element of due process. See Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 1923, 18 L.Ed.2d. 1019 (1967). This Honorable Appellate Court should reverse and remand this cause back to the trial court with directions to issue a subpoena for witness FRED D. JOHNSON, and the deposition of defense witness James Brothers. Unless the state shows this request is frivolous, it must be granted. See, Walsh v. United States, 404 F.2d. 414 (5th Cir. 1968).

20

WHETHER TRIAL COURT DENIAL WITHOUT AN
EVIDENTIARY HEARING PREJUDICIALLY FORECLOSED
APPELLANT OF DUE PROCESS OF LAW RIGHTS AN
THIS REFUSAL TO CONSIDER MERITS OF HIS
CONSTITUTIONAL CLAIM WILL WORK MISCARRIAGE OF
JUSTICE?

The trial court prejudicially foreclosed appellant of due process of law rights in its denial of Johnson's Motion for rehearing concerning his post-conviction relief motion. Despite the express requirement of the rule, the trial court neither denied the motion on the basis of legal insufficiency, nor gave the Appellant an Evidentiary hearing, nor attached portions of the record which could conclusively demonstrate that Appellant was entitled to no relief. Implicit in the harmless error test is the concession that a right under either the Federal and/or State constitutions or under State of Federal rules or statutes has been violated. The determination of whether that error was prejudicial or harmless must begin by assessing, under specifically defined guidelines, the impact of the error on the result.

The objective factor, external to the defense, that thwarted (or at lest substantively obstructed) the efforts of Appellant and Appellant's trial counsel to obey the state's procedural rule.

CAUSE

In 1991 Appellant trial counsel too, an deposition of witness

21

James Brothers concerning his knowledge of the crimes Appellant on the night the murder occurred. During this tape deposition James Brothers did not reveal everything that he knew concerning Appellant and Tyrone an Kenneth Johnson, obviously because of his belief that he trusted such information to be heard before a Jury, instead on a cassette tape. In any event James Brothers withheld this information from trial counsel.

## CAUSED

(1) Trial counsel exercising strategic decisions did not call James Brothers because trial counsel was preparing an Defense based on the independent Act which was the theory of Appellant's Trial counsel defense.

(2) Appellant didn't take the stand an testify in his own behalf because trial counsel didn't call any witness in behalf of the Defense. Therefore Appellant conceded to trial counsel's advice an didn't testify in his own behalf being the only witness for the and the accused versus the state having no less than 20 witnesses and 29 exhibits.

## PREJUDICE

During the charge conference of Appellant's trial counsel requested a jury instruction on independent Act as the theory of Defense in Appellant's case, but trial court acceded to the

22

state's objection during the charge conference and refused to so instruct (T-963)   The proposed instruction was also requested in writting (T-1232).

The theory of defense was that appellant had agreed to participate in a burglary and theft from the victim, but that the act of Kenneth Johnson in shooting the victim prior to the commission of the burglary was independent of the joint plan and that appellant, by running off when Kenneth departed from their plan, showed that Kenneth's action was independent of the joint scheme.   This scenario was supported by the Facts, and the determination of whether the defense was sufficiently established was a question that should have been decided by the jury and not precluded by the trial court's refusal to instruct on the law pertaining to this defense.

In Rodriguez v. State, 571 So.2d. 1356 (Fla. 2nd DCA 1991), the court ruled that the instruction was required in a case where the murder occurred in close proximity to, but slightly later than the attempted robbery.   The present case reflects the converse where the murder occurred immediately prior to the burglary and theft, but also as in Rodriguez, apart from the jointly agreed upon felony.

As is absence of this Newly Discovered Evidence to support the independent Act instructions the trial court found the theory was not supported by the Facts (T-963, 1232).   Also Appellant was found guilty of First Degree murder and Armed Burglary of an Occupied Dwelling and Robbery with a Firearm.   Appellant received

23

25 years mandatory with life in prison and no less than 20 years
probation as a result of this missing Newly Discovered Evidence
which had been presented in a trial. Also this Honorable Court
would not have upheld the trail court decision to instruct on
these instructions, see Johnson v. State, 609 So.2d. 253 (Fla. 4th
DCA 1992), would probably produce an acquittal on retrial. Also
this Newly Discovered Evidence would have supported Appellant
's trial counsel efforts obtaining the Independent Act Jury
Instructions during the trial.

## MISCARRIAGE OF JUSTICE

The trial court violated Appellant's Fifth and Fourteenth
Amendment rights of the United States Constitution. Appellant's
record, properly viewed is in light most favorable to the Defense
when disputed and neutrally when undisputed.

In a case such as the instant case where the district court
of Appeal has to determined that the right to an Evidentiary
hearing had been erroneously denied, the impact of the error in
precluding the presentation of evidence can never be harmless for
the self-evident reason that a reviewing court does not know what
the evidence would be.

It is axiomatic and almost unnecessary to note that those
statutes and rules which require hearing prior to judgment derive
from the most basic of all rights under our legal system, the
right to due process of law. See Department Of Law Enforcement v.

Real Property, 588 So. 957 (Fla. 1991). The need for an evidentiary hearing presupposes that there are issues of fact which cannot be conclusively resolved by the record. When a determination has been made that a defendant/petitioner is entitled to such an evidentiary hearing, denial of that right would constitute denial of all due process and could never be deemed harmless.

## CONCLUSION TO POINT II

This court should read the record it its entirety and review the issues with careful scrutiny, and thus remand and reverse this cause to the trial court for a new trial with instruction as to this Honorable Court's findings.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "INITIAL BRIEF", "Supplemented in Typed Version" has been furnished by U. S. mail to and (3) copies to Marilyn Beutenmuller, Clerk of Court, Fourth District Court of Appeal, P. O. Box 3315, West Palm Beach, Florida 33401, copy also furnished to Attorney General Office, 1655 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401 on this 8th day of July 1999.

Respectfully submitted,

25

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 8th DAY

JULY, 1999.

Frederick D. Dodd
South Bay Correctional
P. O. Box 7171
South Bay, Florida  33493

NOTARY PUBLIC- STATE OF FLORIDA

Loretta K. Taylor

MY COMMISSION EXPIRES:

LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL
FOURTH DISTRICT

FREDERICK D. JOHNSON,
         Appellant,

                                    4TH DCA CASE NO.: 99-01974

    VS.
                                    L. T. CASE NO.: 91-083-CF-B
STATE OF FLORIDA.                   INDIAN RIVER COUNTY, FLORIDA
INDIAN RIVER COUNTY, FLORIDA
         Appellee,
_____/

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JUL 14 1999
CRIMINAL DIVISION
WEST PALM BEACH

\ APPELLANT'S TABLE OF EXHIBITS /
_____/
   [Supplemented in Typed Version]

FREDERICK D. JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA 33493
APPELLANT in Pro' se

## CONTENTS                              EXHIBIT

ORDER OF STATE OF GEORGIA                    A

AFFIDAVIT OF FRED D. JOHNSON                 B

AFFIDAVIT OF FREDERICK D. JOHNSON            C

# EXHIBIT "A"

GLYNN

STATE OF GEORGIA

**VS**

CRIMINAL ACTION NO. 9400620

OFFENSE(S) Simple Assault

FRED DOUGLAS JOHNSON

March _____ **TERM, 19** 94

☒ **PLEA:**

☒ NEGOTIATED
☒ GUILTY ON COUNT(S) _____
☐ NOLO CONTENDERE ON
COUNT(S) _____
☐ TO LESSER INCLUDED
OFFENSE(S) _____

ON COUNT(S) _____

☐ JURY
☒ NON-JURY

☐ **VERDICT:**
☐ GUILTY ON
COUNT(S) _____
☐ NOT GUILTY ON
COUNT(S) _____
☐ GUILTY OF INCLUDED
OFFENSE(S) OF _____
ON COUNT(S) _____

☐ **OTHER DISPOSITION**
☐ NOLLE PROSEQUI ORDER ON
COUNT(S) _____
☐ DEAD DOCKET ORDER ON
COUNT(S) _____
(SEE SEPARATE ORDER)

☐ DEFENDANT WAS ADVISED OF HIS/HER RIGHT TO HAVE THIS SENTENCE REVIEWED BY THE SUPERIOR COURT'S SENTENCE REVIEW PANEL.

☐ **FELONY SENTENCE**      ☒ **MISDEMEANOR SENTENCE**

WHEREAS, the above-named defendant has been found guilty of the above-stated offense, WHEREUPON, it is ordered and adjudged by the Court that: The said defendant is hereby sentenced to confinement for a period of __twelve (12) months__

in the State Penal System or such other institution as the Commissioner of the Georgia Department of Corrections may direct, to be computed as provided by law. HOWEVER, it is further ordered by the Court:

☒ 1) THAT the above sentence may be served on probation

☐ 2) THAT upon service of _____ of the above sentence, the remainder of _____ may be served
on probation PROVIDED that the said defendant complies with the following general and other conditions herein imposed by the Court as a part of this sentence.

☒ **GENERAL CONDITIONS OF PROBATION**

The defendant, having been granted the privilege of serving all or part of the above-stated sentence on probation, hereby is sentenced to the following general conditions of probation:
☒ 1) Do not violate the criminal laws of any governmental unit
☒ 2) Avoid injurious and vicious habits — especially alcoholic intoxication and narcotics and other dangerous drugs unless prescribed lawfully.
☒ 3) Avoid persons or places of disreputable or harmful character.
☒ 4) Report to the Probation Officer as directed and permit such Officer to visit him (her) at home or elsewhere.
☒ 5) Work faithfully at suitable employment insofar as may be possible.
☒ 6) Do not change his (her) present place of abode, move outside the jurisdiction of the Court, or leave the State for any period of time without prior permission of the Probation Supervisor
☒ 7) Support his (her) legal dependants to the best of his (her) ability

x 8. Defendant shall submit to random drug/alcohol screens as directed by the probation office.

☒ **OTHER CONDITIONS OF PROBATION**

IT IS FURTHER ORDERED that the defendant pay a fine in the amount of __-0-__ plus $50 or 10%, whichever is less pursuant to O.C.G.A. § 15-21-70, and pay restitution in the amount of __-0-__; Probation Fee __$20.00/mo.__ Court Costs __-0-__ Attorney's Fees __-0-__

xxxxxxxxx Supervisory fee to begin 9/1/94 to the supervising judicial circuit.
SPECIAL CONDITIONS: Defendant shall remain outside the Brunswick Judicial Circuit during the serving of this sentence. Defendant is to have no contact with Angela Johnson Community service is waived.

IT IS THE FURTHER ORDER of the Court, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and/or discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation

The defendant was represented by the Honorable __C. Klofanda__ Attorney at Law, __Glynn__ County, by (Employment) (Appointment).

By the Court __August 5__, 19 94

So ordered this __5th__ day of __August__, 19 94

_Amanda F. Williams_
Amanda F. Williams, Judge, Glynn Superior Court
Brunswick Judicial Circuit

**Certificate of Service** — This is to certify and acknowledge that a true and correct copy of this Final Disposition has been delivered in person and the defendant has been duly instructed regarding the conditions as set forth.

This _____ day of _____, 19 94

_Jim Morse_
Probation Officer

_Fred D. Johnson_
Defendant

# EXHIBIT "B"

IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
      Plaintiff,

-vs-                          CASE NO. 91-083-CF-B

FREDERICK D. JOHNSON,
      Defendant,
_____/

SWORN AFFIDAVIT

COMES NOW the affiant, FRED D. JOHNSON, after being duly sworn, and deposes states:

1).      Affiant states that he was living in Vero Beach, Florida 32960 on December 3, 1996.

2).      Affiant states that he personally knows James Brothers, a/k/a/ "BLUE" whose family has been a long time resident of 4705 34th Ave., Gifford, Florida 32960.

3).      Affiant states that between November 29, 1996 and December 1, 1996, Approximately between the hours of 10 p.m. til around about 2 a.m., James Brothers stated to him "Man, my health condition is getting worser and worser, I don't think, I'm going to make it too much longer. Oh yeah, you know I have been subpoenaed to testify in court for "DOUG"? I have already talked with "DOUG'S" lawyer before when the murder happen but I didn't tell him everything".

4).      Affiant states that he asked James Brothers what did he know about the case?

5).      Affiant further states that James Brothers, replied, "I know "DOUG" didn't have anything to do with the murder of Ms. Bagley because Tyrone, his cousin, told me that "DOUG" asked Peanut for the gun when they was walking down Guy Colley's Road because he (Doug) wanted to go back to Roy Brown Quarter's, but Peanut told Doug he better go ahead on, cause he ain't getting the gun back until they get through with it, and that was the only reason Doug was at the house."

(6) Affiant states that from the end of November, 1996 until December 1998, he had not been in contact with FREDERICK D. JOHNSON.

(7) Affiant states that during the this period he hadn't revealed this information to noone, except for FREDERICK D. JOHNSON in December of 1998. Also, had he been contacted regarding any information that he might have known about the case, he would not have been willing to disclose it unless he was summoned by a Court Order.

(8) Affiant states that the reason he disassociated himself and discontinued all ties with FREDERICK D. JOHNSON is because of a legal action taken against him in Georgia for an allegedly assault-type issue involving FREDERICK'S sister, Angela Johnson in "1993".

(9) Affiant further states that when he visited FREDERICK D. JOHNSON at INDIAN RIVER COUNTY JAIL in 1996 in an attempt to explained what actually occurred and make amends, FREDERICK D. JOHNSON was unforgiving.

(10) Affiant further states that he has not been promised anything for this Affidavit and is doing this freely from any threats.

UNDER PENALTIES OF PERJURY, pursuant to Florida Statutes 92.525(2), I have read the foregoing Affidavit, and that the facts stated in it are true.

Date: Jan 23 1992

_____
Affiant's Signature

_____
Affiant's Name (Printed)
FRED D. Johnson

# EXHIBIT "C"

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT IN AND FOR
INDIAN RIVER COUNTY,
STATE OF FLORIDA

FREDERICK DOUGLAS JOHNSON,

    Defendant,

vs.                       CASE NO: 91-083-CF-B

STATE OF FLORIDA,

    Plaintiff.

_____ _____/


## AFFIDAVIT

STATE OF FLORIDA

COUNTY OF PALM BEACH

    Comes Now, the affiant FREDERICK DOUGLAS JOHNSON, after being duly sworn and deposes and says:

    1)  Affiant states that on the evening of January 29, 1991, him and Tyrone Hans Johnson went to Anthony Wilson's girlfriend house and asked him if he wanted to rob somebody. Anthony Wilson agreed but told him and Tyrone Hans Johnson to return later because he was at his girlfriend house.

    2)  Affiant states him along with Tyrone Hans Johnson returned later to Anthony Wilson. At this time Anthony Wilson informed him and Tyrone Hans Johnson that he know a Haitian lady that deal in kilo of cocaine and have thousands of dollars at her house. Anthony Wilson told also him and Tyrone Hans Johnson once we get there he know a "name" we can use and she will open the door.

3) Affiant further states after this agreement him, Tyrone Hans Johnson, and Anthony Wilson walked over to Tyrone's grandmother house which is affiant's grandmother also. Once we arrive at Tyrone grandmother's house Tyrone Hans Johnson obtained a pair of wire cutters. As me, Anthony Wilson, and Tyrone Hans Johnson was leaving our grandmothers house, we came across Kenneth Duane Johnson A.K.A. Peanut who after being told our plan agreed to participate.

4) Affiant states that him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson walked to the residence (house) where Anthony Wilson instructed us the Haitian lady lived. I (affiant) had the gun in my possession. The plan was when she open the door for me to rush in with the gun and wait till Tyrone Johnson, Kenneth Duane Johnson, and Anthony Wilson searched the house for the cocaine and money.

5) Affiant states that she did not open the door when it was knocked upon. Tyrone Hans Johnson cut ~~the~~ same wires on side of the house. Next Kenneth Duane Johnson throw a cider block thru the window. At this time Tyrone Hans Johnson told me to give him the gun he is gonna go thru the broken window. I gave him the gun. The Haitian lady starting screaming so the four of us ran.

6) Affiant states him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson ran through a very large wooded area immediately after leaving the Haitian lady residence.

7) Affiant further states that him, Anthony Wilson, Tyrone Hans Johnson and Kenneth Duane Johnson walked to a placed called "The Bridge." After brief conversation Anthony Wilson indicated

that he was going to stay a little longer. Tyrone Hans Johnson and Kenneth Duane Johnson started to walk away I proceeded behind them. As we begin to approach the end of a road known as "Guy Colley Road" (which also is a little path that leads to Roy Brown Quaters located in this area) I stated to Tyrone Hans Johnson "Tye let me get the gun, I'm fixing to go back over here to the quaters. I'm tired."

8) Affiant states Kenneth Duane Johnson (A.K.A. Peanut) immediately turned around and stated "Doug, you might as well go ahead on, you ain't getting this gun back until we're through with it."

9) Affiant states my intentions was on going back to Ray Brown Quaters to get some sleep and finish selling the rest of my crack-cocaine, but I wanted to have the gun with me cause I previously had been rob in Ray Brown Quaters and it was later a night. However, when my cousin Kenneth Duane Johnson (A.K.A. Peanut) made that statement to me, I was then determine to follow them to make sure they don't sell the gun for crack-cocaine to smoke.

10) Affiant further states him, Tyrone Hans Johnson, and Kenneth Duane Johnson walked down the street without discussing any plans, of any type. As we was walking Tyrone Hans Johnson stopped in front of this house. Tyrone Hans Johnson turned to his brother (Kenneth Duane Johnson) and told him "this is the house" or something like that.

11) Affiant states Tyrone Hans Johnson then turned to me and stated "Doug you look-out for us and tell us if anybody come pass

the house or near the house."

12) Affiant states I then walked across the street into an open field mad at my cousin (Tyrone & Kenneth Johnson) for not giving me the gun when I asked for it. Not only was I mad I had no intentions of warning them if somebody come by or near the or even toward the house and I didn't. I seen several people come by the house but I did not warn them. I in no way planned or had intentions on assisting them in this crime.

13) Affiant states I observed a female standing by the corner up under the streetlight. So I then walked down the street toward her I asked her "What's up?" She stated "Nothing." I could tell according to her tone she wasn't interested in me. So now being sexual arouse and frustrated at my cousins (Tyrone & Kenneth Johnson) cause they got the gun and want give it back, and is the reason why I'm out here in this chilly nite air I immediately walked back to the victim's residence.

14) Affiant states as I walked back down the street from my encounter with Carlyon Preston as I approach the victim's yard I didn't see Tyrone Hans Johnson or Kenneth Duane Johnson his brother nowhere in sight. I immediately entertained the thought they done have run off with the gun to sell for crack-cocaine to smoke so I decided to check around the back of the house before I give up my search for them.

15) Affiant states as I walked around the side of the house I seen a tin object on the ground and I kicked it out of frustration I felt toward my cousins Tyrone Hans Johnson and Kenneth Duane Johnson. As soon as I stepped around the corner of

the house I voluntarily froze in momentairly shock.

16) Affiant states this what I observed while standing briefly in shock "My cousin Tyrone Hans Johnson was standing on the opposite side of his brother Kenneth Duane Johnson with both hands on his shoulder while Kenneth Duane Johnson holding the gun pointing toward a window.

17) Affiant states Kenneth Duane Johnson fire one shot from the gun which broke the state of shock, and I immediately turn and ran when I arrive back the corner where I had just previously spoke to Carolyn Preston she was gone. So I then went and pick-up my bicycle from my ex-girlfriend house.

18) Affiant states I pushed my mountain crusier (bicycle) down the street I saw Anthony Wilson. He (Anthony Wilson) asked me have I seen my cousins? I told him "no I haven't." Anthony Wilson then stated "Where have y'all been?" I then stated to to him" Man I had to leave them cause they're doing stupid shit."

19) Affiant states I then went back to Roy Brown Quaters where later I seen my cousins Kenneth Duane Johnson and Tyrone Hans Johnson. I went back inside housing Unit #15 and fell asleep, Tyrone Hans Johnson awoke me and gave me the gun back. I took it and went back to sleep which again Tyrone Hans Johnson awoke me and this time demanded the gun back. I gave it to him and told him to keep it.

20) Affiant states I then notice for them that there was a party going on, a crack party to be exact. So I of course begin selling Kenneth and Tyrone Johnson crack-cocaine also to a few other individuals in the vincity.

(21)  Affiant states I asked Tyrone Hans Johnson where they get all that money from?  Tyrone Hans Johnson stated, "Shuh Shuh with a finger to his lips, and said we rob a dred so don't say no more about it."

(22)  Affiant states a guy named Tommy Bertion ask me where Tyrone and Kenneth Johnson get all the money?  I stated, "They had jacked a dread."  Which is exactly what Tyrone Hans Johnson had told me earlier when I ask where they got the money from.

(23)  Affiant states, "These are the true and correct description of the events that first occurred on the evening of January 29, 1991 to the late-early hours of January 30, 1991."

(24)  Affiant states that the only reason he didn't testify at trial to the above events is because his trial counsel failed to call any defense witnesses in his behalf.  Also I was, and still am, embarrassed to be caught in a highly suspicious situation around two stupid individuals addicted to crack-cocaine who committed a criminal act with intentions on blaming me for their actions.  I do not have felony record except for the present charges.

(25)  Affiant further states that he has no been promised anything for this affidavit and that he is doing this freely without promises from anyone.


CERTIFICATE OF SERVICE


STATE OF FLORIDA)
COUNTY OF PALM BEACH)


Before me, the undersigned authority, this day personally

appeared FREDERICK DOUGLAS JOHNSON, who after being duly sworn,

says that he has read the heretofore AFFIDAVIT, and that he is the

AFFIANT in the above styled cause and has personal knowledge of

the facts and matters therein set forth and alleged; and that each

and all these facts and matters are true and correct.

Accord, the foregoing instrument, Affidavit, was acknowledged

before me this 2nd day of March , 1999 1997 by FREDERICK

DOUGLAS JOHNSON, who produced Department of Corrections I.D. ad

identification and who did take an oath.



Notary Public - State of
Florida
Loretta K. Taylor
4-26-02
My commission expires

FREDERICK DOUGLAS JOHNSON #58712
South Bay Correctional Facility
600 U.S Hwy 27th South
South Bay, Florida 33493

LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing APPELLANT'S TABLE OF EXHIBITS" "Supplemented In Typed Version", has been furnished by U. S. Mail to and (3) copies to Marilyn Beutenmuller, Clerk of Court, Fourth District Court of Appeal, P. O. Box 3315, West Palm Beach, Florida 33401, copy also furnished to Attorney General Office, 1655 Palm Beach Lakes Blvd., West Palm Beach, Florida 33401 on this 8th day of July, 1999.

Respectfully submitted,

Frederick D. Johnson
South Bay Correctional
P. O. BOx 7171
South Bay, Florida 33493

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 8th DAY
July, 1999.



NOTARY PUBLIC STATE OF FLORIDA
Loretta K. Taylor

MY COMMISSION EXPIRES:

LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES April 26. 2002
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL
FOURTH DISTRICT

FREDERICK D. JOHNSON,
        Appellant,

        vs.

STATE OF FLORIDA.
        Appellee,

_____/

4TH DCA CASE NO.: 99- 0 1 9 7 4
L. T. CASE NO.: 91-083-CF-B

INDIAN RIVER COUNTY, FLORIDA

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

JUL 0 8 1999

CRIMINAL DIVISION
WEST PALM BEACH

NOTICE OF SUPPLEMENTING RECORD

COMES NOW, FREDERICK D. JOHNSON, the Appellant, in pro' se, in accordance with Florida Rules of Appellant Procedure 9.200(F) (1998) and 9.210 (1998), and requests this honorable Court to accept this Notice of Supplementing Record and would state the following in support thereof:

1). On June 1, 1999, Appellant filed his notice of Appeal, Designation of Record, Directions to the Clerk to all prospective parties.

2). On June 15, 1999, Appellant timely filed his Initial Brief, along with exhibits supporting his grounds of Newly Discovered Evidence.

3). Appellant was unable to have access to the prison typewrites, therefore, Appellant hand wrote his Initial Brief, in order to avoid any unnecessary delay in pursuit of justice.

4). To the present filing of this motion, no decisions have been rendered in this case.

5). Appellant will have filed 10 days form the date of this notice, an identical typed version of the Initial Brief and Exhibits with (1) copy of the original and (3) additional copies to the Clerk of this

Court, also one true copy to the Attorney General's Office.

6).    This Notice is made in Good Faith and not for the purpose of delay.

I HEREBY CERTIFY that a true and correct copy of the foregoing "NOTICE OF
SUPPLEMENTING RECORD" has been furnished by U. S. Mail along with (3) copies to Marilyn
Beutenmuller, Clerk, Fourth District Court of Appeal, Post Office Box 3315, West Palm Beach, Florida
33401, copy also furnished to Attorney General's Office, 1655 Palm Lakes blvd., West Palm Beach,
Florida 33401 on this 6 day of July , 1999.

Respectfully submitted,

/s/ Frederick D. John 582112
Frederick D. Johnson, DC# 582112
South Bay Correctional Facility
P. O. Box 7171
South Bay, Florida 33493

NOTARY PUBLIC - STATE OF FLORIDA

> DONNA POLING
> MY COMMISSION # CC 737569
> EXPIRES: April 26, 2002
> Bonded Thru Notary Public Underwriters

MY COMMISSION EXPIRES:

# IN THE DISTRICT COURT OF APPEAL STATE OF FLORIDA

## FOURTH DISTRICT

FREDERICK D. JOHNSON,
                Appellant,

VS.

STATE OF FLORIDA,
                Appellee.

4th DCA CASE No.: _____
                (To be assigned)

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

JUN 17 1999

CRIMINAL DIVISION
WEST PALM BEACH

Lt. CASE No: 91-083-CF-B
Indian River County, Florida

## INITIAL BRIEF OF APPELLANT

On appeal From the Circuit Court of the nineteenth Judicial Circuit In and For Indian River, Florida [Criminal Division].

FREDERICK D. JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA 33493
Appellant in pro'se

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ................................................... i

TABLE OF AUTHORITIES ................................................ ii

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF THE CASE ............................................... 1

STATEMENT OF THE FACTS .............................................. 3

ARGUMENT

## POINT I

WHETHER THE TRIAL COURT PREJUDICIALLY ERRED IN THE DENIAL OF APPELLANT'S RIGHT TO AN EVIDENTIARY HEARING UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 WITHOUT ATTACHING PORTIONS OF THE FILES AND RECORDS THAT CONCLUSIVELY SHOWS THAT APPELLANT IS ENTITLED TO NO RELIEF?

## POINT II

WHETHER TRIAL COURT DENIAL WITHOUT AN EVIDENTIARY HEARING PREJUDICALLY FORECLOSED APPELLANT OF DUE PROCESS OF LAW RIGHTS AN THIS REFUSAL TO CONSIDER MERITS OF HIS CONSTITUTIONAL CLAIM WILL WORK MISCARRIAGE OF JUSTICE? .......... 28

CONCLUSION ........................................................ 32

CERTIFICATE OF SERVICE ............................................ 32

# TABLE OF AUTHORITIES

CASES                                                                PAGE

CHAMBERS V. STATE 530 So.2d 452 (1st DCA 1988) . . . .     17

DEAN V. BARBER 951 F.2d 1210 (11th Cir. 1992) . . . . . . .     18

DEPARTMENT OF LAW ENFORCEMENT V. REAL PROPERTY 588 So. 957

(Fla. 1991) . . . . . . . . . . . . . . . . . . . . . .     30

GOLDEN V. STATE 509 So.2d 1151 (Fla. 1st DCA 1987) . . 19

HAAG V. STATE 591 So.2d 614 (Fla. 1992) . . . . . . .     19

HANDLEY V. STATE 170 So.2d 748 (Fla. 1948) . . . . . .     26

HOLLAND V. STATE 503 So.2d 1250 (Fla. 1987) . . . . . .     17

HUGHES V. STATE 565 So.2d 356 (Fla. 1st DCA 1990) . .     19

JARAMILLO V. STATE 417 So.2d 2457 (Fla. 1982) . . . . .     27

JOHNSON V. STATE 609 So.2d 46 (4th DCA 1992) . . . . .     30

JONES V. STATE 591 So.2d 911 (Fla. 1991) . . . . . . .     25

LOCKETT V. STATE 262 So.2d 253 (Fla. 4th DCA 1972) . . .     27

NOA V. U.S. 118 S.Ct. 1328 (Fla. 1997) . . . . . .     25

RODRIQUEZ V. STATE 571 So.2d 1356 (Fla. 2nd DCA 1991). 30

WALSH V. UNITED STATES 404 F.2d 414 (5th Cir. 1968) . . 27

WASHINGTON V. TEXAS 388 U.S. 14, 87 S.Ct. 1920 . . . 27

U.S. V. CALDERON 127 F.3d 1314 (Fla. 1991 . . . . . 25

# PRELIMINARY STATEMENT

Frederick Douglas Johnson was the defendant, and will be referred to as Appellant or Johnson in this Memorandum of Law.

The State of Florida was the prosecuting authority and will be referred to as State in this Memorandum of Law.

The pages of the trial transcripts are consecutively numbered. All references to the transcripts will be denoted by the symbol "T", followed by the appropriate page number in parenthesis.

# STATEMENT OF THE CASE

Appellant was indicted, along with two others not involved in this collateral attack, with First degree murder, Armed Burglary of an Occupied Dwelling, and Robbery with a Firearm (T-1151-1152). A jury returned verdicts of guilty as charged on all three counts (T-1252-1253). The trial court adjudicated Appellant guilty and imposed sentences of life imprisonment, and two consecutive terms of Probation, each term for ten years. (T-1267-1278).

Notice of Appeal was timely Filed From the Judgments and sentences to the Fourth District court of Appeal, in appellellate case number 91-2379 (T-1284-1285). On November 12, 1992, the Fourth District Court of Appeal issued a Per Curiam Affirm of Appellant's direct appeal case 609 So.2d 46 (Fld. 4th DCA 1992). On November 7, 1994, Appellant's 3.850 Post Conviction Relief Motion was timely Filed. On January 3, 1997 Appellant Filed his Notice of Appeal For the denial of his 3.850 post Conviction Relief Motion to the Fourth District court of Appeal, in appellate case number #97-00308. On July 29, 1998 the Fourth District Court of Appeal per Curiam Affirm Appellant's post-conviction Motion. On August 13, 1999 The Fourth District Court of Appeal denied Appellant's Motion For Rehearing/Rehearing En Banc and Amended Motion For Rehearing/To recall Mandate.

On or about the 3rd day Of December 1998 appellant Filed an 3.850 post conviction Relief Motion For Newly Discoveed Evidence. On Febudry 17, 1999 trial court denied Appellant's 3.850 post conviction Relief Motion For Newly Discovered Evidence. On March 3, 1999 Appellant Filed a Motion For rehearing in the trial court regarding Appellant's Newly Discovered Evidence. The trial court denied Appellant's Motion For rehearing an Amended Motion For Rehearing On May 24, 1999.

On June 1, 1999 Appellant timely Filed his Notice of Appeal, Directions to the Clerk, and Destination of Record to the appropriate parties.

# STATEMENT OF THE FACTS

Appellant was separately tried From two co-defendants. The State did not seek the death penalty (CT-68). The trial court appointed an additional attorney to represent Appellant less than (30) thirty days before trial due to the inexperience and apparent inability of the initially appointed attorney to handle the case. (CT-65). At the trial it was shown the appellant, Tyrone Hans Johnson and kenneth Duane Johnson Appellant's cousins, got together with Anthony Wilson on the evening of January 29, 1996, with the intent to break into someone's house, with the intent to steal. Anthony Wilson established that Appellant and Tyrone Hans Johnson knocked on the door of Wilson's girl-Friend house to ask Wilson if he wanted to "Jack" Somebody (T-695-696). Wilson ask them to return later, as Wilson was visting with his girlfriend (T-695-696). Later Wilson went appellant and

Tyrone Hans Johnson. (T-696). Tyrone's brother Kenneth joined them, and Tyrone obtained a pair of wire cutters (T-696-697). Wilson dropped away from them when he stopped to telephone his girlfriend, and after finishing the call Wilson went back to his house (T-697-698). Wilson met with Appellant, Kenneth and Tyrone about 2:00 a.m. when they came to his house and told him that they were going to the Haitian house, where a haitian lady lived (T-698). Wilson went with them (T-698-699). The four of them attempted to break in, but failed when the lady started screaming, and all four of them ran away (T-699-700). What they did was cut a wire, and break a window (T-699-700). But her screaming convinced them to run (T-699-700). Wilson went home after this (T-700). A short time later he heard shots, and saw Tyrone and Kenneth, but Appellant was not with them (T-718). Wilson asked them where had they been, and Tyrone told Wilson that they had just robbed and old lady, but she started screaming and he shot her. (T-718). Tyrone and Kenneth were on their way to purchase drugs (T-720). Wilson went down the road and ran into Appellant pushing a bicycle (T-720). Wilson asked Appellant has he seen his cousins, and Appellant told him that No he had Not (T-720).

Wilson asked appellant where they had been, and appellant replied that "we did some crazy stuff" and had to leave, but appellant did not tell Wilson what it was (T-720-721). Wilson quoted appellant as having said: "I had to leave them because they were doing stupid shit." (T-722-723). Wilson also saw appellant and Tyrone and kenneth at a place known as Roy Brown's Quaters where Tyrone took a gun out of his jacket and gave it to appellant (T-705-707). Kenneth gave some ~~money~~ money to APPELLANT for drugs (T-617-618, 705-707). This was the gun that Kenneth had used to kill the victim, and was the gun that Troy Howard had given to appellant in Mid-December (T-530-531).

When Howard heard about the murder on the 30th of January 1991 he found ~~appellant~~ Appellant, and ~~appellant~~ Appellant told him he did not know any-thing about it (T-530-531). Tyrone Johnson ~~testified~~ as a state witness under grant of testimonal immunity (T-794-795). Tyrone Johnson Was 19 years old, the brother of kenneth Johnson and the cousin of Appellant (T-794-795).

He was the person who was hiding under the victim's window with his brother Kenneth who shot her after she looked out and said she was going to call the police (T-806-807). Tyrone testified that as she looked out she must have seen Kenneth because that when Kenneth shot her (T-801). At this time, Appellant was standing in front at the other end of her house (T-807). Appellant ran away when Kenneth shot thru the window (T-807). Then Kenneth shot her again, and each of the brothers Tyrone and Kenneth, went in through the window and took money and jewelry from the house (T-809).

The plan had been for appellant to act as an look out, but he ran and did not ~~warn~~ them when other people went by (T-905-906). Tyrone testified that appellant did not do anything at the victim's house (T-106). Tyrone Hans Johnson admitted that it was his idea to burglarize the house (T-885-886). Tyrone hid in some bushes in the back yard of the victim's house after the window was broken, but appellant ran across the street and did not return until called back by Tyrone (T-825-827). Then appellant only walked briefly around the other end of the house where he stood momentialy. When ~~appellant~~ Kenneth fired the shot, Appellant ran away before the second shot was fired

and before either Tyrone or Kenneth entered the house (T-825-827). Tyrone testified that after leaving the victim's house, he and Kenneth went to a place known as "Cookie's" and smoked crack, then later went to a place known as Brown's Quaters where they met up with appellant again (T-831, 898). They had agreed to meet there (T-831). Both Tyrone and Kenneth gave money to appellant for drugs they had brought from him (T-685). Tyrone also testified that when appellant ran away prior to the second shot and entry he did not return to the scene of the murder and burglary (T-891-892). Tyrone was extremely upset after the murder, and when he was at Brown's Quater's he kept hiding in the closet or under the bed whenever a car would go by (T-601-602, 615-616). Later at his grandmother's house that moring he said that he knew what he had done was wrong and wished he had not been there (T-816-818). When Tyrone gave his first statements to police he protected his-brother by blaming the killing on appellant as Kenneth had told him to do, but he admitted that those statements had been lies (T-817-819, 405-907).

Arthur Cannon, known as T.C., lived at Brown's Quaters (T-596-598). He had gone to sleep at about 9:00 or 10:00 P.M. on January 29, 1991 (T-598).

He awoke to a knock on the door when Tyrone, Kenneth and ~~Appellant~~ came to his apartment (T-599). This was late at night, but there was no electricity in the place and he had no clock to tell what time it was (T-599-600, 699). Another witness, Tommy Bertion, who was sleeping at T.C.'s, placed the time after 3:00 a.m. (T-661, 664). Appellant was selling crack to Tyrone and Kenneth at T.C.'s, but witness Bertion testified that Appellant was not smoking it (T-685). Kenneth said that he had about $500.00, and that Tyrone had money too (T-687). When Bertion indicated to Appellant that he notice how much money Kenneth and Tyrone had, Appellant stated that they had "jacked a dread." (T-687-689). Arthur Cannon also testified that Appellant was selling crack to Kenneth and Tyrone, but not buying it. (T-617).

Carolyn Preston was walking by the victim's house after midnight when she met a younger male walking past her (T-550-552). He asked her what was up, and she said nothing (T-552). As she went on he turned and went toward the victim's house (T-551). She identified Appellant as this person (T-552; 558). A friend of hers drove by, but before driving off she heard a sound like a tin can being kicked and turned to see the

Young man she pass standing by the victim's back porch (T-551-553). She was out looking for crack-cocaine, and admitting using cocaine earlier that night (T-557). Objection was sustain to Appellant questioning her about the use of crack-cocaine at times after that night and the time of her trial testimony as what that usage might affect her ability to recall and relate facts collectly (T-573, 578).

Johnny Sneed was watching a late movie on T.V. when he run out of cigarettes (T-663-664). He rode his bicycle to a store named Winston's at a time after 1:00 A.M. (T-635). As he went by the victim's house he saw somebody standing in the victim's yard and 2 or 3 more people standing out by the road (T-635-636). He said it was not unusal to see people up and down the street all night (T-635). He did not get a good look at the person because he did not pay particular attention as he rode by (T-637). The next day he heard about the murder and talked to the detective who showed him photographs (T-638-639). He picked a photograph of Appellant, but in open court he testified that he could not swear that Appellant is the person he saw (T-638-639, 659).

Daniel Miles was riding his bike on the night of the murder coming back from Mosley's store when he passed the victim's house. (T-540-542). He saw three people and was able to identify Tyrone and Kenneth Johnson standing near the car port of the victim's house (T-542, 546). He also saw a third person standing back in an open field (T-543). He was not able to identify that person (T-544). About 10 to 15 minutes later he heard two gun shots (T-544). He knows the Appellant when he sees him, and did not see this third person talking to the two persons near the victims house (T-545, 547).

Although Anthony Wilson testified that he went home before the others went to the bridge after attempting to breaking into the Haitians lady's house, a witness Zachary Horskins, saw Wilson with the others sitting on a bridge at about 1:00 A.M. (T-525-526). Sylvester Berry, another brother of Tyrone and Kenneth, and also ~~Appellant's~~ cousin, testified that when he got home from work on the afternoon after the murder that ~~~~ he went and ~~~~ gathered his brothers and ~~took~~ them down to the police station (T-736-737). Then he went

and Found Appellant and Anthony Wilson (T-737). Appellant ran when slyvester wanted to speak to him, but when he caught up with appellant, appellant said that he and the other three went to a woman's house but appellant would not explain (T-738). Appellant also said, "Man don't put me in this." (T-737). Appellant also talked to slyvester serveral days later, when Appellant was in jail, and he kept saying he did not do it. (T-740-741).

Apparently, the gun used in the murder was the one appellant gave Tyrone at the haitian lady's house and which Tyrone kept under the mattress in Arthur Cannon's statement apartment (T-602, 612). When Cannon Found the gun he threw it in the weeds behind his apartment (T-612). Detective FaFeita Found the gun in a trash container at Brown's Quaters (T-486).

Appellant gave a statement to the police on the night after the murder when appellant went to the Police station at the insistence of his Cousin slyvester Berry (T-459-460). Appellant denied any knowledge of the murder (T-460). Appellant was

Charged with murder after the second statement Tyrone gave to detective Fafeita which was admittedly False in its accusation of Appellant (T-467, 818-819, 905-906).

The medical examiner testified that autospy of the victim showed that she suffered two gunshot wounds; one was in the upper chest under the left collar bone, the other was in the back near the spine in the chest area (T-419). She died from the gunshot wound to the chest because it penetrated the lungs and the aorta (T-421). The gunshot wound to the back would not have been expected to be Fatal as it was relatively minor (T-428). The bullet wounds were irregular, leading the medical examiner to the conclusion that they had been Fired through an intermediate target, possibly a window (T-421).

The hand prints of Kenneth Duane Johnson were found on the bathtub in the victim's house (T-342, 352). There were two holes

12

in the screen to the victim's bedroom (T-353).
The screen was found in the wooden area nearby
(T-355).

The earlier attempted burglary was at a
house approximately two blocks away from
the victim's house, and at both houses a
wire had been cut leading into the house
(T-391, 431-432).


# ARGUMENT

## POINT I

WHETHER THE TRIAL COURT
PREJUDICIALLY ERRED IN THE
DENIAL OF APPELLANT'S RIGHT
TO AN EVIDENTIARY HEARING
UNDER FLORIDA RULE OF CRIMINAL
PROCEDURE 3.850 WITHOUT ATTACHING
PORTIONS OF THE FILES AND RECORDS
THAT CONCLUSIVELY SHOWS THAT APPELLANT
IS ENTITLED TO NO RELIEF?

On December 7, 1998 appellant post conviction Releif was filed in accordance with Florida Rule of Criminal Procedure 3.850(F) which appellant raised the Following issue involving Newly Discovered Evidence were appellant Simpley stated:

On December 3, 1996 an Evidentiary hearing was conducted for defendant. Defense Witness James Brothers was issued a Subponea and scheduled to testify on behalf of defendant. James Brothers was found deceased on December 3, 1996 by Defense private investigator Mark Gibbons. Defendant discovered from the record on Appeal that was stamped January 28, 1998 which idicated it was received by the public Defenders office, Appellate Division, Palm Beach, Florida, that in trial counsel's Motion For Payment of Reasonable Attorney Fees had took an deposition of James Brothers concerning his knowledge and expected testimony of defendant on the date of the crime. Which defendant was convicted OF 1st Degree Murder, Armed Burglary of an Occuppied Dwelling, an Robbery With an Firearm.

On Febuary 17, 1999 the trial court denied

appellant's 3.850 post conviction Relief Motion with a copy of the court's prior order denying appellant's 3.850 Post-conviction Relief Motion from the result of an Evidentiary Hearing conducted in December 1996. According to Florida Rules of Criminal procedure 3.850 (c)(4) which requires a petitioner to state the "reason or reasons the claim or claims in the present motion were not raised in the former motion or motions." Why for Appellant to have a Facially Sufficient Post-conviction motion requires a Petitioner to include the identity of the prospective Witnesses, the substance of their testimony and an explanation how the defense was prejudice, and this Prejudice probably affected the outcome of the trial.

Appellant executed to the trial court pursuant to Florida Rule(s) of Criminal procedure 3.020 and 3.850 (1991) restated in Padovano, Florida Appellate practice, Section(s) 15.1 thru 15.7. For an Order granting rehearing of the trial court's order denying Appellant's Motion for Post-conviction releif dated the 17th day of Febuary 1999. Appellant avers on the 3rd day of March 1999 VIA institutional mail, Filed a legally Sufficient Motion For Rehearing.

15

The trial court erroneous denied appellant his right to an evidentiary hearing under Florida Rule of Criminal procedure 3.850 where it states in pertinent part:

> "If the Motion and the Files and records in the case conclusively show that the prisoner is entitled to no relief, the motion shall be denied without a hearing. In those instances when such denial is not predicated upon legal insufficiency of the Motion on its face, a copy of that portion of the Files and records which conclusively shows that the prisoner is entitled to no relief shall be attached to the Order."

As the proceedings in the instant case are contrary to this Rule whereas the trial court entered an ordered denying Amended Motion For Rehearing simply stated: "The court has reviewed the Motion, the record, and the order denying the motion for post-conviction relief. The defendants motion is denied".

The trial court erroneous overlooked and/or mis-apprehended Florida Rule of Criminal procedure 3.850, and subsequent rule thereon, Florida Rule of Appellate

16

Procedure 9.140(g). In that, it is only when the record conclusively shows that the defendant is entitled to no relief that the motion can be summarily dismissed without an evidentiary hearing. Here, no files or records were attached to CONCLUSIVELY show appellant was entitled to no relief, ergo, nothing legally sufficient to CONTRADICT appellant's sworn allegations contain within his motion, confirming a Prima Facie showing for postconviction relief existed and a hearing should have been granted. See Holland v. State, 503 So.2d 1250 (Fla. 1987); Chamber v. State, 530 So.2d 452 (Fla. 1st DCA 1988). Accord, a misapprehension by the trial court's decision, worthy of reconsideration, warranting an REVERSE and REMAND by this honorable appellate court allowing appellant his due process safeguards of the heretofore advocated rules. Continuing on the trial court held nothing in Appellant's motion why "The Newly Discovered Evidence" was not available at trial, particulary since the appellant did not go to trial for nearly seven (7) months.

In this direction appellant asserts the trial

Court has apparently overlooked and/or misapp-
rehended appellant is a pro se indigent incarce-
rated inmate, with no training in juris. Thereof,
may have Filed a somewhat deficient motion. Ergo,
will bring to this Courts attention the following:
See DEAN V. BARBER, 951 F.2d 1210 (11th Cir. 1992),
in pertinent part:

> We not before addressing the merits of
> Deans appeal that Dean proceeded as a
> Pro se complaint in the district court.
> This circuit and the supreme court have
> Stated that Pro se complaints are given
> more leeway than lawyers. See, e.g.
> Haines v. kerner, 404 U.S. 519, 92 S.Ct.
> 594 (1992), ("[W]e hold [pro se complaints]
> to less strigent standards than Formal
> Pleadings drafted by lawyers") Harman
> v. Berry, 728 F.2d 1407 (11th Cir. 1984)
> (pro se prisoners complaint governed
> by less strigent standards than
> Formal pleadings). Deans pleading, therefore,
> will be looked at with special care.
>                  [Emphasis Added]

18

Applying these principles Sub judice, to avail app-ellant with simple and direct means of judicial review administered in favor of justice. Florida Rule of Criminal procedure 3.020; Haag V. State, 591 So.2d 614 (Fla.1992). It would been more economic use of the judicial resou-rces to address [corrected deficiencies] at the trial court level than at this juncture [Appeal-Court] rather forcing other judicial review to obtain [just] results. See Hughes V. State, 565 So.2d at 356 (Fla. 1st DCA 1990). Ergo, Appellant should have been allowed to have satified the deficiences Uial Johnson's Motion for Rehearing, and supply the missing information noted by the court. See Golden V. State, 509 So.2d at 1151 (Fla. 1st DCA 1987), in pertinent part:

"although appellant's original motion was somewhat deficient, his motion for rehearing supplied the two missing items----."

Looking at the above ratio legis of sound jurist of reasons, it is readily apparent Appellant is a pro se litigant, and to avail him with due process safeguards, i.e., procedural, statutory, and constitutional simple and direct means to access to the courts, administred in the interest of justice.

19



Applying the heretofore Factual claims and applicable controlling principles sub judice. Appellant avers he will now supply, what he beleived he did within his Motion, the information necessary to merit post-conviction relief; and the information necessary to confirm the almost (7) seven ~~months~~ before trial, what the trial Court relied upon, has no weight on the claim of Newly Discovered Evidence.

In this direction, ~~Appellant~~ avers the exculpatory evidence presented to this court in the form of affidavit(s) did not come to life until after appellant was placed into the custody of the Florida Department of Corrections.

## PETITIONER'S FAILURE TO DISCOVER THIS EVIDENCE PRIOR TO TRIAL WAS NOT DUE TO LACK OF DUE DILIGENCE

(1) Appellant's trial was conducted on July 15, 1991 and was concluded on July 18, 1991.

70

(2) Appellant was solely and entirely dependent on trial counsel to call James Brothers, along with other witnesses in Appellant's behalf for testimony.

(3) Appellant was not aware at the time of trial that counsel did not have his best interests at heart, when counsel knew appellant would have testified in his own behalf if counsel would have called at least one witness in Appellant's behalf. ▬▬▬▬▬▬

(4) On November 7, 1994, Appellant filed his 3.850 Post-conviction Relief motion.

(5) Appellant was granted an Evidentiary Hearing scheduled for December 3, 1996.

(6) Appellant defense counsel subpoenaed witness James Brothers, who gave statements (knowing death was near) to "FRED D. JOHNSON" between the later end of November to December, 1996 of what he would have testified about concerning his knowledge of Appellant's case and the events he personally witnessed.

21

(7) Appellant received a non-contact visit from "FRED D. JOHNSON" in the earlier part of November, 1996 at the Indian River County Jail, where "FRED D. JOHNSON" attempted to verbally resolve a situation that had ended in resentment, and termination of a relationship. The original incident arouse from a situation that occurred in the State of Georgia where "FRED D. JOHNSON" was charged and sentenced for allegedly making some kind of assault upon Ms. Angela Johnson, Appellant's sister. Appellant again indicated to "FRED D. JOHNSON" to stay out of his life. (See exhibit "A")

(8) After "FRED D. JOHNSON" left the Appellant from this visit in the Indian River County Jail, Appellant had no contact with "FRED D. JOHNSON" in any manner until December of 1998 where "FRED D. JOHNSON" once again contacted the appellant and once again asking for forgiveness. Appellant, by that time having become- more mature, and having become more spiritually oriented, did likewise and asked for forgiveness for his prior conduct towards "FRED D. JOHNSON."

(9) On or about the 12th day of December, 1998, Appellant was advised by "FRED D. JOHNSON" that he had talked with James Brothers about the case, serveral days before his death.

(10) Defense witness James Brothers was found deceased on December 3, 1996.

(11) Appellant's evidentiary hearing was conducted on December 3, 1996, absent James Brothers Testimony.

(12) Defense Witness James Brothers deposition taken in 1991 (was unknown to Appellant as to any deposition being taken) is/are incomplete of the statements made by James Brothers given in 1996 to "FRED D. JOHNSON."

(13) Defense Witness James Brothers deposition taken in 1991, and his previous statements made in 1996, could not have been discovered in full by trial counsel prior to Appellant's trial, because James Brothers did not reveal all the information to appellant's trial counsel at the time of deposition in 1991.

This newly discovered evidence OF James Brothers previous statements made to "FRED D. JOHNSON" not only is in contradiction with some of the state's alleged evidence. It totally refutes the state's "ELEMENT" that Appellant's motive for the crime charged was "MONEY" and was the reason for appellant's "PRESENCE" at the scene of the crime or in the general area. The newly discovered evidence clearly shows and demonstrated that Appellant asked for the gun because of his independent decision of not to participate in "ANY" further criminal activities with Tyrone and kenneth Johnson and lawfully defines the "SUSPICIOUS" presence of the Appellant at the crime scene; not for the purposes of "MONEY", but instead to keep a close watch on the gun with hopes of retreiving it back from Tyrone Johnson, which appellant needed to do to insure his safety at Roy Brown Quaters, with the intentions of immediately terminating his presence from the company of Tyrone and kenneth Johnson before they did something "STUPID".

Also, this Newly Discovered Evidence is in total refutation of the state's element of proving the Appellant's intent to participate in the commission of the crime charged, which was circumstantial and is inconsistent with and consistant with any/all

24

reasonable hypothesis of innocence of the Appellant and the State's element of participation and intent that would make the appellant liable as an <u>Aider</u> or <u>Abettor</u> to the crimes charged. See, <u>Jones v. State</u>, 591 So. 2d 911 (1991) wherein the Court stated:

> "However, if the newly discovered evidence did not refute an element of the State's case but rather only contradicted evidence that had been introduced at trial, the petition must be denied."

Also, the Courts stated similar rulings in recent case. See <u>U.S. v. Calderon</u>, 127 F.3d 1314, certiorari denied, <u>Noa v. U.S.</u>, 118 S.Ct. 1328 (Fla. 1997) where the Following was stated:

> "Defendants moving for New trial on grounds of Newly discovered evidence have burden of establishing in their motions that evidence was in Fact newly discovered and that Failure to discover it prior to verdict was not due to lack of due diligence; if defendant can not make such showing, their motions should be denied. Fed. Rules Crim. Pro: Rule 33, 18 U.S.C.A."

25

*typographical error stating 1993 of the sworn Affidavit of FRED. D. JOHNSON should be 1994 correct date incident. It should also be noted*

Defense witness statements to "FRED D. JOHNSON" several days before he was declared deceased are relevant. Adequate descriptions of the events that occured on the night of the murder were expressed by the defense witness James Brothers in belief that he would not be around too much longer because of his obviously health conditions before he gave his statements to "FRED D. JOHNSON" (see Exhibit "B") about appellant's case. These statements are admissible. See: <u>Handley v. State,</u> 170 So.2d 748 which states the following:

> "Admissibility of statements, as dying declarations does not depend on the length of interval of time between declaration and death, but state of declarant's mind and his belief that he is in a dying condition."

IF the testimony of the previous statements made by defense witness James Brothers shortly before he died (and was unable to present this testimony at appellant's evidentiary hearing due to his death) to "FRED D. JOHNSON" in 1996, is not allowed to be presented before a jury, which would probably reach the verdict of acquittal an retrial, then the state will have been allowed to be alleviated of its obligated duty of proving each essential element

5 C

beyond a reasonable doubt and/or exclude every reasonable hypothesis of innocence in this case against Appellant. See: Jaramillo V. State, 417 So. 2d 2457 (Fla. 1982) and Lockett V. State, 262 So. 2d. 253 (Fla. 4th DCA 1972). It should be also noted that Appellant wanted to take the stand and testify in his behalf if Appellant's trial counsel had called at least one of Appellant's witnesses (see exhibit "C").

## CONCLUSION TO POINT ONE

Appellant is guaranteed by the sixth Amendment to subpoena witnesses and the denial of the right of an accused is a fundamental element of due process. See Washington V. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923, 18 L. Ed. 2d. 1019 (1967). This Honorable Appellate Court should reverse and remand this cause back to the trial court with directions to issue a subpoena for witness FRED D. JOHNSON, and the deposition of defense witness James Brothers. Unless the State shows this request is Frivolous, it must be granted. See, Walsh V. United States, 404 F.2d 414, 417 (5th Cir. 1968).

## POINT II

WHETHER TRIAL COURT DENIAL WITHOUT AN EVIDENTIARY HEARING PREJUDICALLY FORECLOSED APPELLANT OF DUE PROCESS OF LAW RIGHTS AN THIS REFUSAL TO CONSIDER MERITS OF HIS CONSTITUTIONAL CLAIM WILL WORK MISCARRIAGE OF JUSTICE?

The trial court prejudically foreclosed appellant of due process of law rights in it's denial of Johnson's Motion for rehearing concerning his post-conviction relief motion. Despite the express requirement of the rule, the trial court neither denied the motion on the basis of legal insufficiency, nor gave the Appellant an Evidentiary hearing, nor attached portions of the record which could conclusively demonstrate that Appellant was entitled to no relief. Implict in the harmless error test is the concession that a right under either the Federal and/or state constitutions or under State or Federal rules or statutes has been violated. The determinate of whether that error was prejudicial or harmless must begin by assessing, under specifically defined guidelines, the impact of the error on the result.

The objective factor, external to the defense, that thwarted (or atleast substantially obstructed) the efforts of Appellant and Appellant's trial counsel to obey the State's procedural rule.

## CAUSE

In 1991 Appellant trial counsel took an deposition of witness James Brothers concerning his knowledge of the crimes Appellant on the night the murder occured. During this tape deposition James Brothers did not reveal everything

28

that he knew concerning Appellant and Tyrone on Kenneth Johnson, obviously because of his belief that he trusted such information to be heard before a Jury, instead On a Cassette Tape. In any event James Brothers withheld this information from trial counsel.

## CAUSED

(1) Trial counsel exercising strategic decisions did not caused James Brothers because trial counsel was preparing an Defense based on the independant Act which was the theory of Appellant's Trial counsel defense.

(2) Appellant did'nt take the Stand an testify in his own behalf because Trial counsel did'nt call any witness in behalf of the Defense. Therefore Appellant Conceded to Trial counsel's advice an did'nt testify in his own behalf being the only witness for the and the accussed versus the state having no less than 20 witnesses and 29 exhibits.

## PREJUDICE

During the charge conference of Appellant's trial counsel requested a jury instruction on Independent Act as the theory of Defense in Appellant's case, but trial court acceded to the state's Objection during the charge conference and refused to so instruct (T-963) The proposed instruction was also requested in writing (T-1232).

29

The theory of defense was that appellant had agreed to participate in a burglary and theft from the victim, but that the act of Kenneth Johnson in shooting the victim prior to the commission of the burglary was independent of the joint plan and that appellant, by running off when Kenneth departed from their plan, showed that Kenneth's action was independent of the joint scheme. This scenario was supported by the facts, and the determination of whether the defense was sufficiently established was a question that should have been decided by the jury and not precluded by the trial court's refusal to instruct on the law pertaining to this defense. ~~and a ~~ ~~a the jury 2 ~~.

In Rodriquez V. State, 571 so.2d 1356 (Fla. 2nd DCA 1991), the court ruled that the instruction was required in a case where the murder occurred in close proximity to, but slightly later than the attempted robbery. The present case reflects the converse where the murder occurred immediately prior to the burglary and theft, but also as in Rodriquez, apart from the jointly agreed upon felony. As in absence ~~a ~~ of this Newly Discovered Evidence which would have provided more than Ample Evidence to support the independant Act instructions the trial court found the theory was not supported by the facts (T-963, 1232). Also Appellant was found guilty of First Degree murder and Armed Burglary of An occupied Dwelling & Robbery with a Firearm. Appellant received 25 Years mandatory with life in prison and No less than 20 Years probation as a result of this Missing Newly Discovered Evidence which had been presented in a trial. Also this Honorable court would not have ~~denied~~ upheld the trial court decision to instruct on these instructions see ...

would probably produce an accuittal on retrial, Also this Newly Discovered Evidence would have supported Appellant's trial counsel Efforts obtaining the Independant Act Jury Instructions during the trial.

## MISCARRIAGE OF JUSTICE

The trial court violated Appellant's Fifth, And Fourteenth Amendment rights of the United States Constitution. Appellants record, properly viewed is in light most favorable to the Defense when disputed and neutrally when undisputed. In a case such as the Instant case where the district Court of Appeal has to determined that the right to an Evidentiary hearing had been erroneously denied, the impact of the error in precluding the presentation of evidence con never be harmless For the self-evident reason that a reviewing court does not know what that evidence would be.

It is axiomatic and almost unnecessary to note that those statutes and rules which require hearings prior to judgment dervive from the most basic of all rights under our legal system, the right to due process of law. See Department of Law Enforcement Vs. Real Property, 588 So. 2d 957 (Fla. 1991). The need For an evidentiary hearing presupposes that there are issues of Fact which cannot be conclusively resolved by the record. When a determination has

51

been made that a defendant/petitioner is entitled to such an evidentiary hearing, denial of that right would constitute denial of all due process and could never be deemed harmless.

## CONCLUSION TO POINT II

This court should read the record in it's entirety and review the issues with careful scrunity, and thus remand and reverse this cause to the trial court for a New trial with instructions as to this Honorable court Findings.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "INITAL BRIEF" has been Furnished by U.S. mail to Marilyn Beutemuller, clerk of court, Fourth District court of Appeal, P.O. Box 3315, West Palm Beach, Florida 33401, copy also Furnish to Attorney General office, 1655 Palm Beach lakes, Blvd., West Palm Beach, Florida 33401 on this 15th day of June, 1999.

SWORN TO AND SUBSCRIBE
BERFORE ME THIS 5th DAY
OF June 1999.

6-15-99

NOTARY PUBLIC STATE OF FLORIDA
Laetta Taylor

MY COMMISSION EXPIRES:

Respectfully submitted
Frederick D. Johnson #Box12
FREDERICK D. Johnson
South Bay Correctional
P.O. Box 7171
South Bay, Florida 33493-



LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL STATE OF FLORIDA

FOURTH DISTRICT

FREDERICK D. JOHNSON,
Appellant,

vs.

STATE OF FLORIDA,
Appellee.

4th DCA CASE No.: _____
(To be assigne

Lt. CASE No: 91-083-CF-B
Indian River County, Florida

RECEIVED
OFFICE OF THE ATTORNEY GENERAL
JUN 17 1999
CRIMINAL DIVISION
WEST PALM BEACH

APPELLANT'S TABLE OF
EXHIBITS

FREDERICK D. JOHNSON # 582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA 33493
Appellant in Pro'se

CONTENT                                    EXHIBIT

▬▬▬▬ OF FRED D. JOHNSON . . . . . . . .  A

SENTENCING

AFFIDAVIT OF FRED D. JOHNSON - - - - - -  B

AFFIDAVIT OF FREDERICK D. JOHNSON - - - -  C

# APPENDIX "A"

# IN THE SUPERIOR COURT OF

GLYNN

# COUNTY, GEORGIA

FINAL DISPOSITION

STATE OF GEORGIA

**VS**

FRED DOUGLAS JOHNSON

CRIMINAL ACTION NO. __9400620__

OFFENSE(S) Simple Assault

__March__ TERM, 19 94

**Deputy Clerk**

## ☒ PLEA:
- ☒ NEGOTIATED
- ☒ GUILTY ON COUNT(S)
- ☐ NOLO CONTENDERE ON COUNT(S)
- ☐ TO LESSER INCLUDED OFFENSE(S) _____
- ☐ ON COUNT(S) _____

- ☐ JURY
- ☒ NON-JURY

## ☐ VERDICT:
- ☐ GUILTY ON COUNT (S)
- ☐ NOT GUILTY ON COUNT (S)
- ☐ GUILTY OF INCLUDED OFFENSE(S) OF ON COUNT(S)

## ☐ OTHER DISPOSITION
- ☐ NOLLE PROSEQUI ORDER ON COUNT(S)
- ☐ DEAD DOCKET ORDER ON COUNT(S)

(SEE SEPARATE ORDER)

☐ DEFENDANT WAS ADVISED OF HIS/HER RIGHT TO HAVE THIS SENTENCE REVIEWED BY THE SUPERIOR COURT'S SENTENCE REVIEW PANEL.

## ☐ FELONY SENTENCE   ☒ MISDEMEANOR SENTENCE

WHEREAS, the above-named defendant has been found guilty of the above-stated offense, WHEREUPON, it is ordered and adjudged by the Court that: The said defendant is hereby sentenced to confinement for a period of __twelve (12) months__

in the State Penal System or such other institution as the Commissioner of the Georgia Department of Corrections may direct, to be computed as provided by law. HOWEVER, it is further ordered by the Court:

- ☒ 1) THAT the above sentence may be served on probation
- ☐ 2) THAT upon service of _____ of the above sentence, the remainder of _____ may be served on probation PROVIDED that the said defendant complies with the following general and other conditions herein imposed by the Court as a part of this sentence.

## ☒ GENERAL CONDITIONS OF PROBATION

The defendant, having been granted the privilege of serving all or part of the above-stated sentence on probation, hereby is sentenced to the following general conditions of probation:
- ☒ 1) Do not violate the criminal laws of any governmental unit.
- ☒ 2) Avoid injurious and vicious habits — especially alcoholic intoxication and narcotics and other dangerous drugs unless prescribed lawfully.
- ☒ 3) Avoid persons or places of disreputable or harmful character.
- ☒ 4) Report to the Probation Officer as directed and permit such Officer to visit him (her) at home or elsewhere.
- ☒ 5) Work faithfully at suitable employment insofar as may be possible.
- ☒ 6) Do not change his (her) present place of abode, move outside the jurisdiction of the Court, or leave the State for any period of time without prior permission of the Probation Supervisor
- ☒ 7) Support his (her) legal dependants to the best of his (her) ability.
- x 8. Defendant shall submit to random drug/alcohol screens as directed by the probation office.

## ☐ OTHER CONDITIONS OF PROBATION

IT IS FURTHER ORDERED that the defendant pay a fine in the amount of __-0-__ plus $50 or 10%, whichever is less pursuant to O.C.G.A. § 15-21-70, and pay restitution in the amount of __-0-__ ; Probation Fee __$20.00/mo.__ Court Costs __-0-__ Attorney's Fees __-0-__

~~Supervisory fee to begin 9/1/94 to the supervising judicial circuit~~

SPECIAL CONDITIONS: Defendant shall remain outside the Brunswick Judicial Circuit during the serving of this sentence. Defendant is to have no contact with Angela Johnson Community service is waived.

IT IS THE FURTHER ORDER of the Court, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and/or discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation

The defendant was represented by the Honorable __C. Klofanda__ Attorney at Law, __Glynn__ County, by (Contract) (Appointment).

By the Court __August 5__, 19 __94__

So ordered this __5th__ day of __August__, 19 __94__

_Amanda F. Williams_

Amanda F. Williams Judge, __Glynn__ Superior Court
Brunswick Judicial Circuit

**Certificate of Service** — This is to certify and acknowledge that a true and correct copy of this Final Disposition has been delivered in person and the defendant has been duly instructed regarding the conditions as set forth.

This _____ day of _____, 19 __94__

_Fred D. Johnson_

# APPENDIX "B"

IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
          Plaintiff,

  -vs-                            CASE NO. 91-083-CF-B

FREDERICK D. JOHNSON,
          Defendant,
_____/

SWORN AFFIDAVIT

COMES NOW the affiant, FRED D. JOHNSON, after being duly sworn, and deposes states:

1).     Affiant states that he was living in Vero Beach, Florida 32960 on December 3, 1996.

2).     Affiant states that he personally knows James Brothers, a/k/a/ "BLUE" whose family has been a long time resident of 4705 34th Ave., Gifford, Florida 32960.

3).     Affiant states that between November 29, 1996 and December 1, 1996, Approximately between the hours of 10 p.m. til around about 2 a.m., James Brothers stated to him "Man, my health condition is getting worser and worser, I don't think, I'm going to make it too much longer. Oh yeah, you know I have been subpoenaed to testify in court for "DOUG"? I have already talked with "DOUG'S" lawyer before when the murder happen but I didn't tell him everything".

4).     Affiant states that he asked James Brothers what did he know about the case?

5).     Affiant further states that James Brothers, replied, "I know "DOUG" didn't have anything to do with the murder of Ms. Bagley because Tyrone, his cousin, told me that "DOUG" asked Peanut for the gun when they was walking down Guy Colley's Road because he (Doug) wanted to go back to Roy Brown Quarter's, but Peanut told Doug he better go ahead on, cause he ain't getting the gun back until they get through with it, and that was the only reason Doug was at the house."

(6)  Affiant states that from the end of November, 1996 until December 1998, he had not been in contact with FREDERICK D. JOHNSON.

(7)  Affiant states that during the this period he hadn't revealed this information to noone, except for FREDERICK D. JOHNSON in December of 1998.  Also, had he been contacted regarding any information that he might have known about the case, he would not have been willing to disclose it unless he was summoned by a Court Order.

(8)  Affiant states that the reason he disassociated himself and discontinued all ties with FREDERICK D. JOHNSON  is because of a legal action taken against him in Georgia for an allegedly assault-type issue involving FREDERICK'S  sister, Angela Johnson in "1993".

(9)  Affiant further states that when he visited FREDERICK D. JOHNSON at INDIAN RIVER COUNTY JAIL in 1996 in an attempt to explained what actually occurred and make amends, FREDERICK D. JOHNSON was unforgiving.

(10)  Affiant further states that he has not been promised anything for this Affidavit and is doing this freely from any threats.


UNDER PENALTIES OF PERJURY, pursuant to Florida Statutes 92.525(2), I have read the foregoing Affidavit, and that the facts stated in it are true.

Date: _Jan 23, 1998_____

_Fred D. Johnson_____
**Affiant's Signature**

_Fred D. Johnson_____
**Affiant's Name (Printed)**

# APPENDIX "C"

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT IN AND FOR
INDIAN RIVER COUNTY,
STATE OF FLORIDA

FREDERICK DOUGLAS JOHNSON,

    Defendant,

vs.                   CASE NO: 91-083-CF-B

STATE OF FLORIDA,

    Plaintiff.

_____/

## AFFIDAVIT

STATE OF FLORIDA

COUNTY OF PALM BEACH

    Comes Now, the affiant FREDERICK DOUGLAS JOHNSON, after being duly sworn and deposes and says:

    1)  Affiant states that on the evening of January 29, 1991, him and Tyrone Hans Johnson went to Anthony Wilson's girlfriend house and asked him if he wanted to rob somebody. Anthony Wilson agreed but told him and Tyrone Hans Johnson to return later because he was at his girlfriend house.

    2)  Affiant states him along with Tyrone Hans Johnson returned later to Anthony Wilson. At this time Anthony Wilson informed him and Tyrone Hans Johnson that he know a Haitian lady that deal in kilo of cocaine and have thousands of dollars at her house. Anthony Wilson told also him and Tyrone Hans Johnson once we get there he know a "name" we can use and she will open the door.

3)   Affiant further states after this agreement him, Tyrone Hans Johnson, and Anthony Wilson walked over to Tyrone's grandmother house which is affiant's grandmother also.   Once we arrive at Tyrone grandmother's house Tyrone Hans Johnson obtained a pair of wire cutters.   As me, Anthony Wilson, and Tyrone Hans Johnson was leaving our grandmothers house, we came across Kenneth Duane Johnson A.K.A. Peanut who after being told our plan agreed to participate.

4)   Affiant states that him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson walked to the residence (house) where Anthony Wilson instructed us the Haitian lady lived.   I (affiant) had the gun in my possession.   The plan was when she open the door for me to rush in with the gun and wait till Tyrone Johnson, Kenneth Duane Johnson, and Anthony Wilson searched the house for the cocaine and money.

5)   Affiant states that she did not open the door when it was knocked upon.   Tyrone Hans Johnson cut same wires on side of the house.   Next Kenneth Duane Johnson throw a cider block thru the window.   At this time Tyrone Hans Johnson told me to give him the gun he is gonna go thru the broken window.   I gave him the gun.   The Haitian lady starting screaming so the four of us ran.

6)   Affiant states him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson ran through a very large wooded area immediately after leaving the Haitian lady residence.

7)   Affiant further states that him, Anthony Wilson, Tyrone Hans Johnson and Kenneth Duane Johnson walked to a placed called "The Bridge."   After brief conversation Anthony Wilson indicated

that he was going to stay a little longer. Tyrone Hans Johnson and Kenneth Duane Johnson started to walk away I proceeded behind them. As we begin to approach the end of a road known as "Guy Colley Road" (which also is a little path that leads to Roy Brown Quaters located in this area) I stated to Tyrone Hans Johnson "Tye let me get the gun, I'm fixing to go back over here to the quaters. I'm tired."

8) Affiant states Kenneth Duane Johnson (A.K.A. Peanut) immediately turned around and stated "Doug, you might as well go ahead on, you ain't getting this gun back until we're through with it."

9) Affiant states my intentions was on going back to Roy Brown Quaters to get some sleep and finish selling the rest of my crack-cocaine, but I wanted to have the gun with me cause I previously had been rob in Roy Brown Quaters and it was later a night. However, when my cousin Kenneth Duane Johnson (A.K.A. Peanut) made that statement to me, I was then determine to follow them to make sure they don't sell the gun for crack-cocaine to smoke.

10) Affiant further states him, Tyrone Hans Johnson, and Kenneth Duane Johnson walked down the street without discussing any plans, of any type. As we was walking Tyrone Hans Johnson stopped in front of this house. Tyrone Hans Johnson turned to his brother (Kenneth Duane Johnson) and told him "this is the house" or something like that.

11) Affiant states Tyrone Hans Johnson then turned to me and stated "Doug you look-out for us and tell us if anybody come pass

the house or near the house."

12) Affiant states I then walked across the street into an open field mad at my cousin (Tyrone & Kenneth Johnson) for not giving me the gun when I asked for it. Not only was I mad I had no intentions of warning them if somebody come by or near the or even toward the house and I didn't. I seen several people come by the house but I did not warn them. I in no way planned or had intentions on assisting them in this crime.

13) Affiant states I observed a female standing by the corner up under the streetlight. So I then walked down the street toward her I asked her "What's up?" She stated "Nothing." I could tell according to her tone she wasn't interested in me. So now being sexual arouse and frustrated at my cousins (Tyrone & Kenneth Johnson) cause they got the gun and want give it back, and is the reason why I'm out here in this chilly nite air I immediately walked back to the victim's residence.

14) Affiant states as I walked back down the street from my encounter with Carlyon Preston as I approach the victim's yard I didn't see Tyrone Hans Johnson or Kenneth Duane Johnson his brother nowhere in sight. I immediately entertained the thought they done have run off with the gun to sell for crack-cocaine to smoke so I decided to check around the back of the house before I give up my search for them.

15) Affiant states as I walked around the side of the house I seen a tin object on the ground and I kicked it out of frustration I felt toward my cousins Tyrone Hans Johnson and Kenneth Duane Johnson. As soon as I stepped around the corner of

the house I voluntarily froze in momentairly shock.

16)    Affiant states this what I observed while standing briefly in shock   "My cousin Tyrone Hans Johnson was standing on the opposite side of his brother Kenneth Duane Johnson with both hands on his shoulder while Kenneth Duane Johnson holding the gun pointing toward a window.

17)    Affiant states Kenneth Duane Johnson fire one shot from the gun which broke the state of shock, and I immediately turn and ran when I arrive back the corner where I had just previously spoke to Carolyn Preston she was gone.   So I then went and pick-up my bicycle from my ex-girlfriend house.

18)    Affiant states I pushed my mountain crusier (bicycle) down the street I saw Anthony Wilson.   He (Anthony Wilson) asked me have I seen my cousins?   I told him   "no I haven't."   Anthony Wilson then stated   "Where have y'all been?"   I then stated to to him"  Man I had to leave them cause they're doing stupid shit."

19)    Affiant states I then went back to Roy Brown Quaters where later I seen my cousins Kenneth Duane Johnson and Tyrone Hans Johnson.    I went back inside housing Unit #15 and fell asleep, Tyrone Hans Johnson awoke me and gave me the gun back.   I took it and went back to sleep which again Tyrone Hans Johnson awoke me and this time demanded the gun back.   I gave it to him and told him to keep it.

20)    Affiant states I then notice for them that there was a party going on, a crack party to be exact.   So I of course begin selling Kenneth and Tyrone Johnson crack-cocaine also to a few other individuals in the vincity.

(21)   Affiant states I asked Tyrone Hans Johnson where they get all that money from?   Tyrone Hans Johnson stated, "Shuh Shuh with a finger to his lips, and said we rob a dred so don't say no more about it."

(22)   Affiant states a guy named Tommy Bertion ask me where Tyrone and Kenneth Johnson get all the money?   I stated, "They had jacked a dread."   Which is exactly what Tyrone Hans Johnson had told me earlier when I ask where they got the money from.

(23)   Affiant states, "These are the true and correct description of the events that first occurred on the evening of January 29, 1991 to the late-early hours of January 30, 1991."

(24)   Affiant states that the only reason he didn't testify at trial to the above events is because his trial counsel failed to call any defense witnesses in his behalf.   Also I was, and still am, embarrassed to be caught in a highly suspicious situation around two stupid individuals addicted to crack-cocaine who committed a criminal act with intentions on blaming me for their actions.   I do not have felony record except for the present charges.

(25)   Affiant further states that he has no been promised anything for this affidavit and that he is doing this freely without promises from anyone.

## CERTIFICATE OF SERVICE

STATE OF FLORIDA)
COUNTY OF PALM BEACH)

     Before me, the undersigned authority, this day personally

appeared FREDERICK DOUGLAS JOHNSON, who after being duly sworn,
says that he has read the heretofore AFFIDAVIT, and that he is the
AFFIANT in the above styled cause and has personal knowledge of
the facts and matters therein set forth and alleged; and that each
and all these facts and matters are true and correct.

Accord, the foregoing instrument, Affidavit, was acknowledged
before me this _2nd_ day of _March_ , ~~1997~~ *1999* by FREDERICK
DOUGLAS JOHNSON, who produced Department of Corrections I.D. ad
identification and who did take an oath.



Notary Public - State of
Florida
Loretta K. Taylor
4-26-02
My commission expires

FREDERICK DOUGLAS JOHNSON #58712
South Bay Correctional Facility
600 U.S Hwy 27th South
South Bay, Florida 33493

LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL STATE OF FLORIDA

FOURTH    DISTRICT


FREDERICK D. JOHNSON,
        Appellant,

        VS.

STATE OF FLORIDA,
        Appellee.

4th DCA CASE No.: _____
        (To be assigned)

Lt. CASE No: 91-083-CF-B
Indian River County, Florida


## INITIAL BRIEF OF APPELLANT

On appeal From the Circuit Court OF the nineteenth Judicial Circuit In and for Indian River, Florida [Criminal Division].


FREDERICK D. JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA 33493
Appellant in pro se

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS .................................... i

TABLE OF AUTHORITIES .................................. ii

PRELIMINARY STATEMENT ................................ 1

STATEMENT OF THE CASE .............................. 1

STATEMENT OF THE FACTS ............................. 3

▬▬▬▬▬▬▬▬▬▬▬▬ ............................

ARGUMENT

### POINT I

WHETHER THE TRIAL COURT PREJUDICIALLY ERRED IN THE DENIAL OF APPELLANT'S RIGHT TO AN EVIDENTIARY HEARING UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 WITHOUT ATTACHING PORTIONS OF THE FILES AND RECORDS THAT CONCLUSIVELY SHOWS THAT APPELLANT IS ENTITLED TO NO RELIEF?

### POINT II

WHETHER TRIAL COURT DENIAL WITHOUT AN EVIDENTIARY HEARING PREJUDICALLY FORECLOSED APPELLANT OF DUE PROCESS OF LAW RIGHTS AN THIS REFUSAL TO CONSIDER MERITS OF HIS CONSTITUTIONAL CLAIM WILL WORK MISCARRIAGE OF JUSTICE? ............... 28

CONCLUSION ......................................... 32

CERTIFICATE OF SERVICE .............................. 32

# TABLE OF AUTHORITIES

CASES                                                                    PAGE

CHAMBERS V. STATE 530 So.2d 452 (1st DCA 1988) . . . .    17
DEAN V. BARBER  951 F.2d 1210 (11th C.s. 1992) - - - - - - ·    18
DEPARTMENT OF LAW ENFORCEMENT V. REAL PROPERTY 588 So. 957
(Fla. 1991) . . . . . . . . . . . . . . . . .    30
GOLDEN V. STATE  509 So.2d 1151 (Fla. 1st DCA 1987) . .    19
HAAG V. STATE  591 So.2d 614 (Fla. 1992) - - - - - - ·    19
HANDLEY V. STATE  170 So.2d 748 (Fla. 1948) - - - - - ·    26
HOLLAND V. STATE  503 So.2d 1250 (Fla. 1987) - - - - - ·    17
HUGHES V. STATE  565 So.2d 356 (Fla. 1st DCA 1990) - ·    19
JARAMILLO V. STATE  417 So.2d 2457 (Fla. 1982) . . . . ·    27
JOHNSON V. STATE  609 So.2d 46 (4th DCA 1992) · · · ·    30
JONES V. STATE  591 So.2d 911 (Fla. 1991) · · - - - · ·    25
LOCKETT V. STATE  262 So.2d 253 (Fla. 4th DCA 1972) · · ·    27
NOA V. U.S.  118 S.Ct. 1328 (Fla. 1997) · · · · · ·    25
RODRIQUEZ V. STATE  571 So.2d 1356 (Fla. 2nd DCA 1991). 30
WALSH V. UNITED STATES  404 F.2d 414 (5th Cir. 1968) · · 27
WASHINGTON V. TEXAS  388 U.S. 14, 87 S.Ct. 1920 · · · 27
U.S. V. CALDERON  127 F.3d 1314 (Fla. 1997. · · · · · 25

## PRELIMINARY STATEMENT

Frederick Douglas Johnson was the defendant, and will be referred to as Appellant or Johnson in this Memorandum of Law.

The State of Florida was the prosecuting authority and will be referred to as State in this Memorandum of Law.

The pages of the trial transcripts are consecutively numbered. All references to the transcripts will be denoted by the symbol "T", followed by the appropriate page number in parenthesis.

## STATEMENT OF THE CASE

Appellant was indicted, along with two others not involved in this collateral attack, with First degree murder, Armed Burglary of an Occupied Dwelling, and Robbery with a Firearm (T-1151-1152). A jury returned verdicts of guilty as charged on all three counts (T-1252-1253). The trial court adjudicated Appellant guilty and imposed sentences of life imprisonment, and two consecutive terms of Probation, each term for ten years. (T-1267-1278).

Notice of Appeal was timely Filed From the Judgments and sentences to the Fourth District Court OF Appeal, in appellelate Case number 91-2379 (T-1284-1285). On November 12, 1992, the Fourth District Court of Appeal issued a Per Curiam Affirm of Appellant's direct appeal case 609 So.2d 46 (Fla. 4th DCA 1992). On November 7, 1994, Appellant's 3.850 Post Conviction Relief Motion was timely Filed. On January 3, 1997 Appellant Filed his Notice of Appeal For the denial of his 3.850 Post Conviction Relief Motion to the Fourth District Court of Appeal, in appellate Case number #97-00308. On July 29, 1998 the Fourth District Court of Appeal Per Curiam Affirm Appellant's Post-conviction Motion. On August 13, 1999 The Fourth District Court of Appeal denied Appellant's Motion For Rehearing/Rehearing En Banc and Amended Motion For Rehearing/To recall Mandate.

On or about the 3rd day Of December 1998 appellant Filed an 3.850 Post Conviction Relief Motion For Newly Discovered Evidence. On Febuary 17, 1999 trial court denied Appellant's 3.850 Post Conviction Relief Motion For Newly Discovered Evidence. On March 3, 1999 Appellant Filed a Motion For Tehearing in the trial Court regarding Appellant's Newly Discovered Evidence. The trial court denied Appellant's Motion For rehearing an Amended Motion For Rehearing On May 24, 1999.

On June 1, 1999 Appellant timely Filed his notice OF Appeal, Directions to the Clerk, and Destination of Record to the appropriate parties.

# STATEMENT OF THE FACTS

Appellant was separately tried From two co-defendants The State did not seek the death penalty (CT-68). The trial court appointed an additional attorney to represent Appellant less than (30) thirty days before trial due to the inexperience and apparent inability of the initially appointed attorney to handle the case. (CT-65). At the trial it was shown the appellant, Tyrone Hans Johnson and kenneth Duane Johnson Appellant's cousins, got together with Anthony Wilson on the evening of January 29, 1991, with the intent to break into someone's house, with the intent to steal. Anthony Wilson established that Appellant and Tyrone Hans Johnson knocked on the door of Wilson's girl-Friend house to ask Wilson if he wanted to "Jack" Somebody (T-695-696). Wilson ask them to return later, as Wilson was visting with his girlfriend (T-695-696). Later Wilson went appellant and

3

Tyrone Hans Johnson. (T-696). Tyrone's brother Kenneth joined them, and Tyrone obtained a pair of wire cutters (T-696-697). Wilson dropped away from them when he stopped to telephone his girlfriend, and after finishing the call Wilson went back to his house (T-697-698). Wilson met with Appellant, Kenneth and Tyrone about 2:00 a.m. when they came to his house and told him that they were going to the Haitian house, where a haitian lady lived (T-698). Wilson went with them (T-698-699). The four of them attempted to break in, but failed when the lady started screaming, and all four of them ran away (T-699-700). What they did was cut a wire, and break a window (T-699-700). But her screaming convinced them to run (T-699-700). Wilson went home after this (T-700). A short time later he heard shots, and saw Tyrone and Kenneth, but Appellant was not with them (T-718). Wilson asked them where had they been, and Tyrone told Wilson that they had just robbed an old lady, but she started screaming and he shot her. (T-718). Tyrone and Kenneth were on their way to purchase drugs (T-720). Wilson went down the road and ran into Appellant pushing a bicycle (T-720). Wilson asked Appellant has he seen his cousins, and Appellant told him that No he had Not (T-720).

Wilson asked Appellant where they had been, and Appellant replied that "we did some crazy stuff" and had to leave, but Appellant did not tell Wilson what it was (T-720-721). Wilson quoted appellant as having said: "I had to leave them because they were doing stupid shit." (T-722-723). Wilson also saw appellant and Tyrone and Kenneth at a place known as Roy Brown's quaters where Tyrone took a gun out of his jacket and gave it to appellant (T-705-707). Kenneth gave some ~~Federal~~ money to Appellant for drugs (T-617-618, 705-707). This was the gun that Kenneth had used to kill the victim, and was the gun that Troy Howard had given to appellant in Mid-December (T-530-531).

When Howard heard about the murder on the 30th of January 1991 he found ~~Appellant~~, and ~~Appellant~~ Appellant told him he did not know anything about it (T-530-531). Tyrone Johnson testified as a state witness under grant of testimonal immunity (T-794-795). Tyrone Johnson was 19 years old, the brother of Kenneth Johnson and the cousin of Appellant (T-794-795).

He was the person who was hiding under the victim's window with his brother Kenneth who shot her after she looked out and said she was going to call the police (T-806-807). Tyrone testified that as she looked out she must have seen Kenneth because that when Kenneth shot her (T-807). At this time, Appellant was standing in front at the other end of her house (T-807). Appellant ran away when Kenneth shot thru the window (T-807). Then Kenneth shot her again, and each of the brothers Tyrone and Kenneth, went in through the window and took money and jewelry from the house (T-809).

The plan had been for appellant to act as an look out, but he ran and did not ~~return~~ them when other people went by (T-905-906). Tyrone testified that appellant did not do any thing at the victim's house (T-106). Tyrone Hans Johnson admitted that it was his idea to burglarize the house (T-885-886). Tyrone hid in some bushes in the back yard of the victim's house after the window was broken, but appellant ran across the street and did not return until called back by Tyrone (T-825-827). Then appellant only walked briefly around the other end of the house where he stood momentialy. When ~~appellant~~ Kenneth fired the shot, Appellant ran away before the second shot was fired

and before either Tyrone or Kenneth entered the house (T-825-827). Tyrone testified that after leaving the victim's house, he and Kenneth went to a place known as "Cookie's" and smoked crack, then later went to a place known as Brown's Quaters where they met up with appellant again (T-831, 898). They had agreed to meet there (T-831). Both Tyrone and Kenneth gave money to appellant for drugs they had brought from him (T-685). Tyrone also testified that when appellant ran away prior to the second shot and entry he did not return to the scene of the murder and burglary (T-891-892). Tyrone was extremely upset after the murder, and when he was at Brown's Quater's he kept hiding in the closet or under the bed whenever a car would go by (T-601-602, 615-616). Later at his grandmother's house that moring he said that he knew what he had done was wrong and wished he had not been there (T-816-818). When Tyrone gave his first statements to police he protected his brother by blaming the killing on appellant as Kenneth had told him to do, but he admitted that those statements had been lies (T-817-819, 905-907).

Arthur Cannon, known as T.C., lived at Brown's Quaters (T-596-598). He had gone to sleep at about 9:00 or 10:00 P.M. on January 29, 1991 (T-598).

He awoke to a knock on the door when Tyrone, Kenneth and ~~Defendant~~ Appellant came to his apartment (T-599). This was late at night, but there was no electricity in the place and he had no clock to tell what time it was (T-599-600, 699). Another witness, Tommy Bertion, who was sleeping at T.C's, placed the time after 3:00 a.m. (T-661, 664). Appellant was selling crack to Tyrone and Kenneth at T.C's, but witness Bertion testified that Appellant was not smoking it (T-685). Kenneth said that he had about $500.00, and that Tyrone had money too (T-687). When Bertion indicated to Appellant that he notice how much money Kenneth and Tyrone had, Appellant stated that they had "jacked a dread." (T-687-689). Arthur Cannon also testified that Appellant was selling crack to Kenneth and Tyrone, but not buying it. (T-617).

Carolyn Preston was walking by the victim's house after midnight when she met a younger male walking past her (T-550-552). He asked her what was up, and she said nothing (T-552). As she went on he turned and went toward the victim's house (T-551). She identified Appellant as this person (T-552; 558). A friend of hers drove by, but before driving off she heard a sound like a tin can being kicked and turned to see the

Young man she pass standing by the victim's back Porch (T-551-553). She was out looking for crack-cocaine, and admitting using cocaine earlier that night (T-557). Objection was sustain to Appellant questioning her about the use of crack-cocaine at times after that night and the time of her trial testimony as what that usage might affect her ability to recall and relate facts collectly (T-573, 578).

Johnny Sneed was watching a late movie on T.V. when he run out of cigarettes (T-663-664). He rode his bicycle to a store named Winston's at a time after 1:00 A.M. (T-635). As he went by the Victim's house he saw somebody standing in the Victim's yard and 2 or 3 more people standing out by the road (T-635-636). He said it was not unusual to see people up and down the street all night (T-635). He did not get a good look at the person because he did not pay particular attention as he rode by (T-637). The next day he heard about the murder and talked to the detective who showed him photographs (T-638-639). He picked a photograph of Appellant, but in open court he testified that he could not swear that Appellant is the person he saw (T-638-639, 659).

Daniel Miles was riding his bike on the night of the murder coming back from Mosley's Store when he passed the victim's house. (T-540-542). He saw three people and was able to identify Tyrone and Kenneth Johnson standing near the car port of the victim's house (T-542, 546). He also saw a third person standing back in an open field (T-543). He was not able to identify that person (T-544). About 10 to 15 minutes later he heard two gun shots (T-544). He knows the Appellant when he sees him, and did not see this third person talking to the two persons near the victim's house (T-545, 547).

Although Anthony Wilson testified that he went home before the others went to the bridge after attempting to breaking into the Haitians lady's house, a witness Zachary Horskins, saw Wilson with the others sitting on a bridge at about 1:00 A.M. (T-525-526). Sylvester Berry, another brother of Tyrone and Kenneth, and also Appellant's cousin, testified that when he got home from work on the afternoon after the murder that he went and gathered his brothers and took them down to the police station (T-736-737). Then he went

and Found Appellant and Anthony Wilson (T-737). Appellant ran when slyvester wanted to speak to him, but when he caught up with appellant, appellant said that he and the other three went to a woman's house but appellant would not explain (T-738). Appellant also said, "Man don't put me in this" (T-737). Appellant also talked to slyvester serveral days later, when Appellant was in jail, and he kept saying he did not do it. (T-740-741).

Apparently, the gun used in the murder was the one appellant gave Tyrone at the haitian lady's house and which Tyrone kept under the mattress in Arthur Cannon's ~~statement~~ apartment (T-602, 612). When Cannon Found the gun he threw it in the weeds behind his apartment (T-612). Detective FaFeita Found the gun in a trash container at Brown's Quaters (T-486).

Appellant gave a statement to the police on the night after the murder when appellant went to the police station at the insistence of his cousin slyester Berry (T-459-460). Appellant denied any knowledge of the murder (T-460). Appellant was

charged with murder after the second statement Tyrone gave to detective Fafeita which was admittedly false in its accusation of Appellant (T-467, 818-819, 905-906).

The medical examiner testified that autospy of the victim showed that she suffered two gun-shot wounds; one was in the upper chest under the left collar bone, the other was in the back near the spine in the chest area (T-419). She died from the gunshot wound to the chest because it penetrated the lungs and the aorta (T-421). The gunshot wound to the back would not have been expected to be fatal as it was relatively minor (T-428). The bullet wounds were irregular, leading the medical examiner to the conclusion that they had been fired through an intermediate target, possibly a window (T-421).

The hand prints of kenneth Duane Johnson were found on the bathtub in the victim's house (T-342, 352). There were two holes

12

in the screen to the victim's bedroom (T-353). The screen was found in the wooden area nearby (T-355).

The earlier attempted burglary was at a house approximately two blocks away from the victim's house, and at both houses a wire had been cut leading into the house (T-391, 431-432).

## ARGUMENT

## POINT I

WHETHER THE TRIAL COURT PREJUDICIALLY ERRED IN THE DENIAL OF APPELLANT'S RIGHT TO AN EVIDENTIARY HEARING UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.850 WITHOUT ATTACHING PORTIONS OF THE FILES AND RECORDS THAT CONCLUSIVELY SHOWS THAT APPELLANT IS ENTITLED TO NO RELIEF?

13

On December 7, 1998 appellant post conviction Releif was filed in accordance with Florida Rule of Criminal Procedure 3.850(F) which appellant raised the Following issue involving Newly Discovered Evidence were appellant Simplely stated:

On December 3, 1996 an Evidentiary hearing was conducted for defendant. Defense Witness James Brothers was issued a Subponea and scheduled to testify on behalf of defendant. James Brothers was found deceased on December 3, 1996 by Defense private investigator Mack Gibbons. Defendant discovered from the record on Appeal that was Stamped January 28, 1998 which idicated it was received by the public Defenders office, Appellate Division, Palm Beach, Florida, that in trial Counsel's motion For Payment of Reasonable Attorney Fees had took an deposition of James Brothers Concerning his knowledge and expected testimony of defendant on the date of the Crime. Which defendant was Convicted of 1st Degree Murder, Armed Burglary of an Occuppied Dwelling, an Robbery with An Firearm.

On Febuary 17, 1999 the trial court denied

111

Appellant's 3.850 post conviction Relief Motion with a copy of the court's prior order denying appellant's 3.850 Post-conviction Relief Motion from the result of an Evidentiary Hearing conducted, in December 1996. According to Florida Rules of Criminal procedure 3.850(c)(4) Which requires a petitioner to state the "reason or reasons the claim or claims in the present motion Were not raised in the former motion or motions." Why for Appellant to have a Facially Sufficient Post-conviction motion requires a Petitioner to include the identity of the prospective witnesses, the substance of their testimony and an explanation how the defense was prejudice, and this prejudice probably affected the outcome of the trial.

Appellant executed to the trial court pursuant to Florida Rule(s) of Criminal procedure 3.020 and 3.850 (1991) restated in padovano, Florida Appellate practice, section(s) 15.1 thru 15.7, For an Order granting rehearing of the trial court's order denying Appellant's Motion for Post-conviction releif dated the 17th day of February 1999. Appellant avers on the 3rd day of March 1999 VIA institutional mail, Filed a legally Sufficient Motion For Rehearing.

15

The trial court erroneous denied appellant his right to an evidentiary hearing under Florida Rule of criminal procedure 3.850 where it states in pertinent part:

> "If the Motion and the Files and records in the case conclusively show that the prisoner is entitled to no relief, the motion shall be denied without a hearing. In those instances when such denial is not predicated upon legal insufficiency of the Motion on its Face, a copy of that portion of the Files and records which conclusively shows that the prisoner is entitled to no relief shall be attached to the order."

As the proceedings in the instant case are contrary to this Rule whereas the trial court entered an ordered denying Amended Motion For Rehearing simply stated: "<u>The court has reviewed the Motion, the record, and the order denying the motion for post-conviction relief. The defendants motion is denied</u>."

The trial court erroneous overlooked and/or misapprehended Florida Rule of criminal procedure 3.850, and subsequent rule thereon, Florida Rule of Appellate

16

procedure 9.140(g). In that, it is only when the record conclusively shows that the defendant is entitled to no relief that the motion can be summarily dismissed without an evidentiary hearing. Here, No files or records were attached to CONCLUSIVELY show appellant was entitled to no relief, ergo, nothing legally sufficient to CONTRADICT appellant's sworn allegations contain within his motion, confirming a Prima Facie showing for postconviction relief existed and a hearing should have been granted. See Holland v. State, 503 So.2d 1250 (Fla. 1987); Chamber v. State, 530 So.2d 452 (Fla. 1st DCA 1988). Accord, a misapprehension by the trial court's decision, worthy of reconsideration, warranting an REVERSE and REMAND by this honorable appellate court allowing appellant his due process safeguards of the heretofore advocated rules. Continuing on the trial court held nothing in Appellant's motion why "The Newly Discovered Evidence" was not available at trial, particulary since the appellant did not go to trial for nearly seven (7) months.

In this direction appellant asserts the trial

court has apparently overlooked and/or misapp-
rended appellant is a _pro se_ indigent incarce-
rated inmate, with no training in _juris_. Thereof,
may have filed a somewhat deficient motion. Ergo,
will bring to this courts attention the following:
See DEAN V. BARBER, 951 F.2d 1210 (11th Cir. 1992),
in pertinent part:

> We not before addressing the merits of
> Deans appeal that Dean proceeded as a
> _pro se_ complaint in the district court.
> This circuit and the supreme court have
> stated that _pro se_ complaints are given
> more leeway than lawyers. See, e.g.
> Haines v. Kerner, 404 U.S. 519, 92 S. Ct.
> 594 (1992), ("[W]e hold [_pro se_ complaints]
> to less strigent standards than Formal
> pleadings drafted by lawyers") Harmon
> V. Berry, 728 F.2d 1407 (11th Cir. 1984)
> (_pro se_ prisoners complaint governed
> by less strigent standards than
> Formal pleadings). Deans pleading, therefore,
> will be looked at with special care.
>              [Emphasis Added]

18

Applying these principles <u>Sub judice</u>, to avail app-ellant with simple and direct means of judicial review administered in favor of justice. Florida Rule of Criminal procedure 3.020; <u>Haag v. State</u>, 591 So.2d 614 (Fla.1992). It would been more economic use of ~~the~~ judicial resou-rces to address [corrected deficiencies] at the ~~just~~ ~~one~~ trial court level than at this juncture [Appeal-court] rather forcing other judicial review to obtain [just] results. See <u>Hughes v. State</u>, 565 So.2d at 356 (Fla. 1st DCA 1990). Ergo, Appellant should have been allowed to have satified the deficiences Vial Johnson's Motion for Rehearing, and supply the missing information noted by the ~~trial~~ court. See <u>Golden v. State</u>, 509 So.2d at 1151 (Fla. 1st DCA 1987), in pertinent part:

> "although appellant's original motion was somewhat deficient, his motion for rehearing supplied the two missing items----."

Looking at the above <u>ratio legis</u> of sound jurist of reasons, it is readily apparent Appellant is a <u>pro se</u> litigant, and to avail him with due process safeguards, i.e., procedural, statutory, and constitutional simple and direct means to access to the Courts, administered in the interest of justice. ~~███~~

19



Applying the heretofore factual claims and applicable controlling principles <u>sub judice</u>. Appellant avers he will now supply, what he beleived he did within his Motion, the information necessary to merit post-conviction relief; and the information necessary to confirm the almost (7) seven ~~months~~ before trial, what the trial court relied upon, has no weight on the claim of Newly Discovered Evidence.

In this direction, ~~Appellant~~ avers the exculpatory evidence presented to this court in the form of affidavit(s) did not come to life until after appellant was placed into the custody of the Florida Department of Corrections.

<u>PETITIONER'S FAILURE TO DISCOVER THIS</u>
<u>EVIDENCE PRIOR TO TRIAL WAS NOT DUE</u>
<u>TO LACK OF DUE DILIGENCE</u>

(1) Appellant's trial was conducted on July 15, 1991 and was concluded on July 18, 1991.

(2) Appellant was solely and entirely dependent on trial counsel to call James Brothers, along with other witnesses in Appellant's behalf for testimony.

(3) Appellant was not aware at the time of trial that counsel did not have his best interests at heart, when counsel knew appellant would have testified in his own behalf if counsel would have called at least one witness in Appellant's behalf ████████████.

(4) On November 7, 1994, Appellant filed his 3.850 Post-conviction Relief motion.

(5) Appellant was granted an Evidentiary Hearing scheduled for December 3, 1996.

(6) Appellant defense counsel subpoenaed witness James Brothers, who gave statements (knowing death was near) to "FRED D. JOHNSON" between the later end of November to December, 1996 of what he would have testified about concerning his knowledge of Appellant's case and the events he personally witnessed.

21

(7) Appellant received a non-contact visit from "FRED D. JOHNSON" in the earler part of November, 1996 at the Indian River County Jail, where "FRED D. JOHNSON" attempted to verbally resolve a situation that had ended in resentment, and termination of a relationship. The original incident arouse from a situation that occurred in the State of Georgia where "FRED D. JOHNSON" was charged and sentenced for allegedly making some kind of assault upon Ms. Angela Johnson, Appellant's sister. Appellant again indicated to "FRED D. JOHNSON" to stay out of his life. (See exhibit "A")

(8) After "FRED D. JOHNSON" left the Appellant from this visit in the Indian River County Jail, Appellant had no contact with "FRED D. JOHNSON" in any manner until December of 1998 where "FRED D. JOHNSON" once again contacted the appellant and once again asking for forgiveness. Appellant, by that time having become more mature, and having become more spirtually oriented, did likewise and asked for forgiveness for his prior conduct towards "FRED D. JOHNSON."

(9) On or about the 12th day of December, 1998, Appellant was advised by "FRED D. JOHNSON" that he had talked with James Brothers about the case, serveral days before his death.

(10) Defense witness James Brothers was found deceosed on December 3, 1996.

(11) Appellant's evidentiary hearing was conducted on December 3, 1996, absent James Brothers Testimony.

(12) Defense Witness James Brothers deposition taken in 1991 (was unknown to Appellant as to any deposition being taken) is/are incomplete of the statements made by James Brothers given in 1996 to "FRED D. JOHNSON."

(13) Defense Witness James Brothers deposition taken in 1991, and his previous statements made in 1996, could not have been discovered in Full by trial counsel prior to Appellant's trial, because James Brothers did not reveal all the information to appellant's trial counsel at the time of deposition in 1991.

This newly discovered evidence of James Brothers previous statements made to "FRED D. JOHNSON" not only is in contradiction with some of the state's alleged evidence. It totally refutes the state's "ELEMENT" that Appellant's motive for the crime charged was "MONEY" and was the reason for appellant's "PRESENCE" at the scene of the crime or in the general area. The newly discovered evidence clearly shows and demonstrated that Appellant asked for the gun because of his independent decision of not to participate in "ANY" further criminal activities with Tyrone and Kenneth Johnson and lawfully defines the "SUSPICIOUS" presence of the Appellant at the crime scene; not for the purposes of "MONEY", but instead to keep a close watch on the gun with hopes of retrieving it back from Tyrone Johnson, which appellant needed to do to insure his safety at Roy Brown Quaters, with the intentions of immediately terminating his presence from the company of Tyrone and Kenneth Johnson before they did something "STUPID".

Also, this Newly Discovered Evidence is in total refutation of the state's element of proving the Appellant's intent to participate in the commission of the crime charged, which was circumstantial and is inconsistent with and consistant with any/all

24

reasonable hypothesis of innocence of the Appellant and the State's element of participation and intent that would make the appellant liable as an _Aider or Abettor_ to the crimes charged. See, <u>Jones v. State</u>, 591 So. 2d 911 (1991) wherein the Court stated:

> "However, if the newly discovered evidence did not refute an element of the State's case but rather only contradicted evidence that had been introduced at trial, the petition must be denied."

Also, the Courts stated similar rulings in recent case. See <u>U.S. v. Calderon</u>, 127 F.3d 1314, certiorari denied, <u>Noa v. U.S.</u>, 118 S.Ct. (Fla. 1997) where the following was stated:
1328

> "Defendants moving for New trial on grounds of Newly discovered evidence have burden of establishing in their motions that evidence was in fact newly discovered and that failure to discover it prior to verdict was not due to lack of due diligence; if defendant can not make such showing, their motions should be denied. Fed. Rules Crim. Pro. Rule 33, 18 U.S.C.A."

25

It should also be noted a *appellant's* -- the sworn affidavit of FRED D. JOHNSON should be 1994 correct date incident.

Defense witness statements to "FRED D. JOHNSON" serveral days before he was declared deceased are relevant. Adequate descriptions of the events that occured on the night of the murder were expressed by the defense witness James Brothers in belief that he would not be around too much longer because of his obviously health conditions before he gave his statements to "FRED D. JOHNSON" (see Exhibit "B") about appellant's case. These statements are admissible. See: <u>Handley v. State</u>, 170 So. 2d 748 which states the following:

> "Admissibility of statements, as dying declarations does not depend on the length of interval of time between declaration and death, but state of declarant's mind and his belief that he is in a dying condition."

IF the testimony of the previous statements made by defense witness James Brothers shortly before he died (and was unable to present this testimony at appellant's evidentiary hearing due to his death) to "FRED D. JOHNSON" in 1996, is not allowed to be presented before a jury, which would probably reach the verdict of acquittal an retrial, then the State will have been allowed to be alleviated of its obligated duty of proving each essential element

→ 6

beyond a reasonable doubt and/or exclude every reasonable hypothesis of innocence in this case against Appellant. See: Jaramillo V. State, 417 So. 2d 2457 (Fla.1982) and Lockett V. State, 262 So. 2d. 253 (Fla. 4th DCA 1972). It should be also noted that Appellant wanted to take the stand and testify in his behalf if Appellant's trial counsel had called at least one of Appellant's witnesses (see exhibit "C").

## CONCLUSION TO POINT ONE

Appellant is guaranteed by the sixth Amendment to subpoena witnesses and the denial of the right of an accused is a Fundamental element of due process. See Washington V. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L. Ed. 2d. 1019 (1967). This Honorable Appellate Court should reverse and remand this cause back to the trial court with directions to issue a subpoena for witness FRED D. JOHNSON, and the deposition of defense witness James Brothers. Unless the State shows this request is Frivolous, it must be granted. See, Walsh V. United States, 404 F.2d 414, 417 (5th Cir. 1968).

77

## POINT II

WHETHER TRIAL COURT DENIAL WITHOUT AN EVIDENTIARY HEARING PREJUDICALLY FORECLOSED APPELLANT OF DUE PROCESS OF LAW RIGHTS AN THIS REFUSAL TO CONSIDER MERITS OF HIS CONSTITUTIONAL CLAIM WILL WORK MISCARRIAGE OF JUSTICE?

The trial court prejudically foreclosed appellant of due process of law rights in it's denial of Johnson's Motion for rehearing concerning his post-conviction relief motion. Despite the express requirement of the rule, the trial court neither denied the motion on the basis of legal insufficiency, nor gave the Appellant an Evidentiary hearing, nor attached portions of the record which could conclusively demonstrate that Appellant was entitled to no relief. Implict in the harmless error test is the concession that a right under either the Federal and/or state constitutions or under State or Federal rules or statutes has been violated. The determination of whether that error was prejudicial or harmless must begin by assessing, under specifically defined guidelines, the impact of the error on the result.

The objective Factor, external to the defense, that thwarted (or atleast substantially obstructed) the efforts of Appellant and Appellant's trial counsel to obey the state's procedural rule.

### CAUSE

In 1991 Appellant trial counsel took an deposition of witness James Brothers concerning his knowledge of the crimes Appellant on the night the murder occurred. During this tape deposition James Brothers did not reveal everything

28

that he knew concerning Appellant and Tyrone on Kenneth Johnson, obviously because of his belief that he trusted such information to be heard before a Jury, instead on a cassette Tape. In any event James Brothers withheld this information from trial counsel.

## CAUSED

(1) Trial counsel exercising strategic decisions did not called James Brothers because trial counsel was preparing an Defense based on the independant Act which was the theory of Appellant's ~~a Trial~~ counsel defense.

(2) Appellant did'nt take the Stand an testify in his own behalf ~~●~~ because Trial counsel did'nt call any witness in behalf of the Defense. Therefore Appellant conceded to Trial counsel's advice an did'nt testify in his own behalf ~~●~~ being the only witness for the and the accussed Versus the state having no less than 20 witnesses and 29 exhibits.

## PREJUDICE

During the charge conference of Appellant's trial counsel requested a jury instruction on Independent Act as the ~~●●●●~~ theory of Defense in Appellant's case, but trial court ~~●●~~ acceded to the state's objection during the charge conference and refused to so instruct (T-963) The proposed instruction was also requested in writing (T-1232).

29

The theory of defense was that appellant had agreed to participate in a burglary and theft from the victim, but that the act of Kenneth Johnson in shooting the victim prior to the commission of the burglary was independent of the joint plan and that appellant, by running off when Kenneth departed from their plan, showed that Kenneth's action was independent of the joint scheme. This scenario was supported by the facts, and the determination of whether the defense was sufficiently established was a question that should have been decided by the jury and not precluded by the trial court's refusal to instruct on the law pertaining to this defense. ~~and a~~ ~~of the above and the they discussed~~

In Rodriquez v. State, 571 So.2d 1356 (Fla. 2nd DCA 1991), the court ruled that the instruction was required in a case where the murder occurred in close proximity to, but slightly later than the attempted robbery. The present case reflects the converse where the murder occurred immediately prior to the burglary and theft, but also as in Rodriquez, apart from the jointly agreed upon felony. As in Absence of this Newly Discovered Evidence which would have provided more than ample evidence to support the independant Act instructions the trial court found the theory was not supported by the facts (T-963, 1232). Also Appellant was found guilty of First Degree Murder and Armed Burglary of an Occupied Dwelling & Robbery with a Firearm. Appellant received 25 years mandatory with life in prison and no less than 20 years probation as a result of this Missing Newly Discovered Evidence which had been presented in a trial. Also this Honorable Court would not have ~~done~~ upheld the trial court decision to instruct on these instructions. See Johnson v. State. 609 2d 2d 46

Would probably produce an accuittal on retrial, Also this Newly Discovered Evidence would have supported Appellant's trial counsel Efforts Obtaining the Independant Act Jury Instructions during the trial.

## MISCARRIAGE OF JUSTICE

The trial Court violated Appellant's Fifth, And Fourteenth Amendment rights of the United States Constitution. Appellant's record, properly viewed is in light most favorable to the Defense when disputed and neutrally when undisputed. In a case such as the Instant case where the district court of Appeal has to determined that the right to an Evidentiary hearing had been erroneously denied, the impact of the error in precluding the presentation of evidence can never be harmless For the self-evident reason that a reviewing court does not know what that evidence would be.

It is axiomatic and almost unnecessary to note that those statutes and rules which require hearings Prior to judgment derive from the most basic of all rights under our legal system, the right to due Process of law. See Department of Law Enforcement Vs. Real Property, 588 So. 2d 957 (Fla. 1991). The need For an evidentiary hearing presupposes that there are issues of Fact which cannot be conclusively resolved by the record. When a determination has

been made that a defendant/petitioner is entitled to such an evidentiary hearing, denial of that right would constitute denial of all due process and could never be deemed harmless.

## CONCLUSION TO POINT II

This Court Should read the record in it's entirety and review the issues with careful scrunity, and thus remand and reverse this cause to the trial court for a New trial with instructions as to this Honorable Court Findings.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "INITAL BRIEF" has been Furnished by U.S. mail to (3 copies) Marilyn Beutemuller, clerk of court, Fourth District court Of Appeal, P.O. Box 3315, West Palm Beach, Florida 33401, copy also Furnish to Attorney General Office, 1655 Palm Beach lakes, Blud., West Palm Beach, Florida 33401 on this 15th day of June, 1999.

SWORN TO AND SUBSCRIBE BERFORE ME THIS 15th DAY OF June 1999

Loretta K. Taylor 6-15-99
NOTARY PUBLIC-STATE OF FLORIDA
Loretta K. Taylor

MY COMMISSION EXPIRES

Respectfully Submitted
Frederick D. Johnson
FREDERICK D. Johnson
South Bay Correctional
P.O. Box 7171
South Bay, Florida 3349:



LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE DISTRICT COURT OF APPEAL STATE OF FLORIDA

FOURTH   DISTRICT


FREDERICK D. JOHNSON,
    Appellant,

    Vs.

STATE OF FLORIDA,
    Appellee.   /

4th DCA CASE NO: _____
(To be assigned)

Lt. CASE NO: 91-083-CF-B
Indian River County, Florida


APPELLANT'S TABLE OF
EXHIBITS


FREDERICK D. JOHNSON #582112
SOUTH BAY CORRECTIONAL FACILITY
POST OFFICE BOX 7171
SOUTH BAY, FLORIDA 33493
Appellant in Pro'se

# CONTENT                    EXHIBIT

~~~~~~~ OF FRED D. JOHNSON . . . . . . . .   A
SENTENCING

AFFIDAVIT OF FRED D. JOHNSON . . . . . . B

AFFIDAVIT OF FREDERICK D. JOHNSON . . . . C

# APPENDIX "A"

**IN THE SUPERIOR COURT OF**                    **COUNTY, GEORGIA**          FINAL DISPOSITION

GLYNN

STATE OF GEORGIA

**VS**

CRIMINAL ACTION NO. 9400620

OFFENSE(S) Simple Assault

FRED DOUGLAS JOHNSON

March                                    **TERM, 19** 94

**☒ PLEA:**
- ☒ NEGOTIATED
- ☒ GUILTY ON COUNT(S) ___
- ☐ NOLO CONTENDERE ON COUNT(S) ___
- ☐ TO LESSER INCLUDED OFFENSE(S) ___
- ☐ ON COUNT(S) ___

- ☐ JURY
- ☒ NON-JURY

**☐ VERDICT:**
- ☐ GUILTY ON COUNT (S) ___
- ☐ NOT GUILTY ON COUNT(S) ___
- ☐ GUILTY OF INCLUDED OFFENSE(S) OF ___ ON COUNT (S) ___

**☐ OTHER DISPOSITION**
- ☐ NOLLE PROSEQUI ORDER ON COUNT(S) ___
- ☐ DEAD DOCKET ORDER ON COUNT(S) ___

(SEE SEPARATE ORDER)

☐ DEFENDANT WAS ADVISED OF HIS/HER RIGHT TO HAVE THIS SENTENCE REVIEWED BY THE SUPERIOR COURT'S SENTENCE REVIEW PANEL.

☐ **FELONY SENTENCE**   ☒ **MISDEMEANOR SENTENCE**

WHEREAS, the above-named defendant has been found guilty of the above-stated offense, WHEREUPON, it is ordered and adjudged by the Court that: The said defendant is hereby sentenced to confinement for a period of ___twelve (12) months___

in the State Penal System or such other institution as the Commissioner of the Georgia Department of Corrections may direct, to be computed as provided by law. HOWEVER, it is further ordered by the Court:

☒ 1) THAT the above sentence may be served on probation

☐ 2) THAT upon service of _____ of the above sentence, the remainder of _____ may be served on probation PROVIDED that the said defendant complies with the following general and other conditions herein imposed by the Court as a part of this sentence.

☒ **GENERAL CONDITIONS OF PROBATION**

The defendant, having been granted the privilege of serving all or part of the above-stated sentence on probation, hereby is sentenced to the following general conditions of probation:
- ☒ 1) Do not violate the criminal laws of any governmental unit.
- ☒ 2) Avoid injurious and vicious habits — especially alcoholic intoxication and narcotics and other dangerous drugs unless prescribed lawfully.
- ☒ 3) Avoid persons or places of disreputable or harmful character.
- ☒ 4) Report to the Probation Officer as directed and permit such Officer to visit him (her) at home or elsewhere.
- ☒ 5) Work faithfully at suitable employment insofar as may be possible.
- ☒ 6) Do not change his (her) present place of abode, move outside the jurisdiction of the Court, or leave the State for any period of time without prior permission of the Probation Supervisor.
- ☒ 7) Support his (her) legal dependants to the best of his (her) ability.

x 8.   Defendant shall submit to random drug/alcohol screens as directed by the probation office.   ☒ **OTHER CONDITIONS OF PROBATION**

IT IS FURTHER ORDERED that the defendant pay a fine in the amount of ___-0-___ plus $50 or 10%, whichever is less pursuant to O.C.G.A. § 15-21-70, and pay restitution in the amount of ___-0-___ ; Probation Fee ___$20.00/mo.___ ; Court Costs ___-0-___ ; Attorney's Fees ___-0-___

X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶   Supervisory fee to begin 9/1/94 to the supervising judicial circuit.
SPECIAL CONDITIONS: Defendant shall remain outside the Brunswick Judicial Circuit during
the serving of this sentence. Defendant is to have no contact with Angela Johnson
Community service is waived.

IT IS THE FURTHER ORDER of the Court, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and/or discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation.

The defendant was represented by the Honorable ___C. Klofanda___ Attorney at Law. ___Glynn___ County, by (Ci̶ū̶n̶s̶e̶l) (Appointment).

By the Court ___August 5___ , 19 94

So ordered this ___5th___ day of ___August___ , 19 94          *Amanda F. Williams*
                                                            Amanda F. Williams  Judge, ___Glynn___ Superior Court
                                                            Brunswick Judicial Circuit

**Certificate of Service** — This is to certify and acknowledge that a true and correct copy of this Final Disposition has been delivered in person and the defendant has been duly instructed regarding the conditions as set forth.

This ___ day of ___, 19 94          *Fred D. Johnson*

# APPENDIX "B"

IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
          Plaintiff,

-vs-                                       CASE NO. 91-083-CF-B

FREDERICK D. JOHNSON,
          Defendant,
_____/

SWORN AFFIDAVIT

COMES NOW the affiant, FRED D. JOHNSON, after being duly sworn, and deposes states:

1).     Affiant states that he was living in Vero Beach, Florida 32960 on December 3, 1996.

2).     Affiant states that he personally knows James Brothers, a/k/a/ "BLUE" whose family has been a long time resident of 4705 34th Ave., Gifford, Florida 32960.

3).     Affiant states that between November 29, 1996 and December 1, 1996, Approximately between the hours of 10 p.m. til around about 2 a.m., James Brothers stated to him "Man, my health condition is getting worser and worser, I don't think, I'm going to make it too much longer. Oh yeah, you know I have been subpoenaed to testify in court for "DOUG"? I have already talked with "DOUG'S" lawyer before when the murder happen but I didn't tell him everything".

4).     Affiant states that he asked James Brothers what did he know about the case?

5).     Affiant further states that James Brothers, replied, "I know "DOUG" didn't have anything to do with the murder of Ms. Bagley because Tyrone, his cousin, told me that "DOUG" asked Peanut for the gun when they was walking down Guy Colley's Road because he (Doug) wanted to go back to Roy Brown Quarter's, but Peanut told Doug he better go ahead on, cause he ain't getting the gun back until they get through with it, and that was the only reason Doug was at the house."

(6)  Affiant states that from the end of November, 1996 until December 1998, he had not been in contact with FREDERICK D. JOHNSON.

(7)  Affiant states that during the this period he hadn't revealed this information to noone, except for FREDERICK D. JOHNSON in December of 1998. Also, had he been contacted regarding any information that he might have known about the case, he would not have been willing to disclose it unless he was summoned by a Court Order.

(8)  Affiant states that the reason he disassociated himself and discontinued all ties with FREDERICK D. JOHNSON is because of a legal action taken against him in Georgia for an allegedly assault-type issue involving FREDERICK'S sister, Angela Johnson in "1993".

(9)  Affiant further states that when he visited FREDERICK D. JOHNSON at INDIAN RIVER COUNTY JAIL in 1996 in an attempt to explained what actually occurred and make amends, FREDERICK D. JOHNSON was unforgiving.

(10)  Affiant further states that he has not been promised anything for this Affidavit and is doing this freely from any threats.


UNDER PENALTIES OF PERJURY, pursuant to Florida Statutes 92.525(2), I have read the foregoing Affidavit, and that the facts stated in it are true.

Date: Jan 23, 1998 _____

_____
Affiant's Signature

Fred D. Johnson
_____
Affiant's Name (Printed)

# APPENDIX "C"

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT IN AND FOR
INDIAN RIVER COUNTY,
STATE OF FLORIDA

FREDERICK DOUGLAS JOHNSON,

     Defendant,

vs.                CASE NO: 91-083-CF-B

STATE OF FLORIDA,

     Plaintiff.

_____/


## AFFIDAVIT

STATE OF FLORIDA

COUNTY OF PALM BEACH

    Comes Now, the affiant FREDERICK DOUGLAS JOHNSON, after being duly sworn and deposes and says:

    1) Affiant states that on the evening of January 29, 1991, him and Tyrone Hans Johnson went to Anthony Wilson's girlfriend house and asked him if he wanted to rob somebody. Anthony Wilson agreed but told him and Tyrone Hans Johnson to return later because he was at his girlfriend house.

    2) Affiant states him along with Tyrone Hans Johnson returned later to Anthony Wilson. At this time Anthony Wilson informed him and Tyrone Hans Johnson that he know a Haitian lady that deal in kilo of cocaine and have thousands of dollars at her house. Anthony Wilson told also him and Tyrone Hans Johnson once we get there he know a "name" we can use and she will open the door.

3) Affiant further states after this agreement him, Tyrone Hans Johnson, and Anthony Wilson walked over to Tyrone's grandmother house which is affiant's grandmother also. Once we arrive at Tyrone grandmother's house Tyrone Hans Johnson obtained a pair of wire cutters. As me, Anthony Wilson, and Tyrone Hans Johnson was leaving our grandmothers house, we came across Kenneth Duane Johnson A.K.A. Peanut who after being told our plan agreed to participate.

4) Affiant states that him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson walked to the residence (house) where Anthony Wilson instructed us the Haitian lady lived. I (affiant) had the gun in my possession. The plan was when she open the door for me to rush in with the gun and wait till Tyrone Johnson, Kenneth Duane Johnson, and Anthony Wilson searched the house for the cocaine and money.

5) Affiant states that she did not open the door when it was knocked upon. Tyrone Hans Johnson cut same wires on side of the house. Next Kenneth Duane Johnson throw a cider block thru the window. At this time Tyrone Hans Johnson told me to give him the gun he is gonna go thru the broken window. I gave him the gun. The Haitian lady starting screaming so the four of us ran.

6) Affiant states him, Anthony Wilson, Tyrone Hans Johnson, and Kenneth Duane Johnson ran through a very large wooded area immediately after leaving the Haitian lady residence.

7) Affiant further states that him, Anthony Wilson, Tyrone Hans Johnson and Kenneth Duane Johnson walked to a placed called "The Bridge." After brief conversation Anthony Wilson indicated

that he was going to stay a little longer. Tyrone Hans Johnson and Kenneth Duane Johnson started to walk away I proceeded behind them. As we begin to approach the end of a road known as "Guy Colley Road" (which also is a little path that leads to Roy Brown Quaters located in this area) I stated to Tyrone Hans Johnson "Tye let me get the gun, I'm fixing to go back over here to the quaters. I'm tired."

8) Affiant states Kenneth Duane Johnson (A.K.A. Peanut) immediately turned around and stated "Doug, you might as well go ahead on, you ain't getting this gun back until we're through with it."

9) Affiant states my intentions was on going back to Roy Brown Quaters to get some sleep and finish selling the rest of my crack-cocaine, but I wanted to have the gun with me cause I previously had been rob in Roy Brown Quaters and it was later a night. However, when my cousin Kenneth Duane Johnson (A.K.A. Peanut) made that statement to me, I was then determine to follow them to make sure they don't sell the gun for crack-cocaine to smoke.

10) Affiant further states him, Tyrone Hans Johnson, and Kenneth Duane Johnson walked down the street without discussing any plans, of any type. As we was walking Tyrone Hans Johnson stopped in front of this house. Tyrone Hans Johnson turned to his brother (Kenneth Duane Johnson) and told him "this is the house" or something like that.

11) Affiant states Tyrone Hans Johnson then turned to me and stated "Doug you look-out for us and tell us if anybody come pass

the house or near the house."

12) Affiant states I then walked across the street into an open field mad at my cousin (Tyrone & Kenneth Johnson) for not giving me the gun when I asked for it. Not only was I mad I had no intentions of warning them if somebody come by or near the or even toward the house and I didn't. I seen several people come by the house but I did not warn them. I in no way planned or had intentions on assisting them in this crime.

13) Affiant states I observed a female standing by the corner up under the streetlight. So I then walked down the street toward her I asked her "What's up?" She stated "Nothing." I could tell according to her tone she wasn't interested in me. So now being sexual arouse and frustrated at my cousins (Tyrone & Kenneth Johnson) cause they got the gun and want give it back, and is the reason why I'm out here in this chilly nite air I immediately walked back to the victim's residence.

14) Affiant states as I walked back down the street from my encounter with Carlyon Preston as I approach the victim's yard I didn't see Tyrone Hans Johnson or Kenneth Duane Johnson his brother nowhere in sight. I immediately entertained the thought they done have run off with the gun to sell for crack-cocaine to smoke so I decided to check around the back of the house before I give up my search for them.

15) Affiant states as I walked around the side of the house I seen a tin object on the ground and I kicked it out of frustration I felt toward my cousins Tyrone Hans Johnson and Kenneth Duane Johnson. As soon as I stepped around the corner of

the house I voluntarily froze in momentairly shock.

16)   Affiant states this what I observed while standing briefly in shock   "My cousin Tyrone Hans Johnson was standing on the opposite side of his brother Kenneth Duane Johnson with both hands on his shoulder while Kenneth Duane Johnson holding the gun pointing toward a window.

17)   Affiant states Kenneth Duane Johnson fire one shot from the gun which broke the state of shock, and I immediately turn and ran when I arrive back the corner where I had just previously spoke to Carolyn Preston she was gone.   So I then went and pick-up my bicycle from my ex-girlfriend house.

18)   Affiant states I pushed my mountain crusier (bicycle) down the street I saw Anthony Wilson.   He (Anthony Wilson) asked me have I seen my cousins?   I told him   "no I haven't."   Anthony Wilson then stated   "Where have y'all been?"   I then stated to to him"   Man I had to leave them cause they're doing stupid shit."

19)   Affiant states I then went back to Roy Brown Quaters where later I seen my cousins Kenneth Duane Johnson and Tyrone Hans Johnson.   I went back inside housing Unit #15 and fell asleep, Tyrone Hans Johnson awoke me and gave me the gun back.   I took it and went back to sleep which again Tyrone Hans Johnson awoke me and this time demanded the gun back.   I gave it to him and told him to keep it.

20)   Affiant states I then notice for them that there was a party going on, a crack party to be exact.   So I of course begin selling Kenneth and Tyrone Johnson crack-cocaine also to a few other individuals in the vincity.

(21) Affiant states I asked Tyrone Hans Johnson where they get all that money from?  Tyrone Hans Johnson stated, "Shuh Shuh with a finger to his lips, and said we rob a dred so don't say no more about it."

(22) Affiant states a guy named Tommy Bertion ask me where Tyrone and Kenneth Johnson get all the money?  I stated, "They had jacked a dread."  Which is exactly what Tyrone Hans Johnson had told me earlier when I ask where they got the money from.

(23) Affiant states, "These are the true and correct description of the events that first occurred on the evening of January 29, 1991 to the late-early hours of January 30, 1991."

(24) Affiant states that the only reason he didn't testify at trial to the above events is because his trial counsel failed to call any defense witnesses in his behalf.  Also I was, and still am, embarrassed to be caught in a highly suspicious situation around two stupid individuals addicted to crack-cocaine who committed a criminal act with intentions on blaming me for their actions.  I do not have felony record except for the present charges.

(25) Affiant further states that he has no been promised anything for this affidavit and that he is doing this freely without promises from anyone.

## CERTIFICATE OF SERVICE

STATE OF FLORIDA)
COUNTY OF PALM BEACH)

Before me, the undersigned authority, this day personally

appeared FREDERICK DOUGLAS JOHNSON, who after being duly sworn, says that he has read the heretofore AFFIDAVIT, and that he is the AFFIANT in the above styled cause and has personal knowledge of the facts and matters therein set forth and alleged; and that each and all these facts and matters are true and correct.

Accord, the foregoing instrument, Affidavit, was acknowledged before me this _2nd_ day of _March_____, ~~1997~~ 1999 by FREDERICK DOUGLAS JOHNSON, who produced Department of Corrections I.D. ad identification and who did take an oath.



Notary Public - State of
Florida
Loretta K. Taylor
_4-26-02_
My commission expires

FREDERICK DOUGLAS JOHNSON #58712
South Bay Correctional Facility
600 U.S Hwy 27th South
South Bay, Florida 33493

LORETTA K. TAYLOR
MY COMMISSION # CC 737582
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
          Plaintiff/Appellee,

  -vs-                        CASE NO.: 91-083-CF-B

FREDERICK D. JOHNSON,
          Defendant/Appellant,
_____/

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN by Defendant FREDERICK D. JOHNSON, in pro' se, that he takes and enters this appeal to the District Court of Appeal, FOURTH DISTRICT, from the final order denying his 3.850 post conviction relief motion, Motion for Rehearing, & Amended Motion for Rehearing, pursuant to Rule 9.140(g), Fla.R.Crim.P., entered on the 23rd day of May, 1999, by the Honorable Robert A. Hawley, Circuit Court Judge.

This appeal is taken pursuant to Rule 9.110, Fla.R.App.P. and all parties take notice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing NOTICE OF APPEAL has been furnished by prepaid U. S. Mail to: Jeffrey K. Barton, Clerk of the Circuit Court, Felony Department, P. O. Box 1028, Vero Beach, Florida 32961-1028, copy also furnished to OFFICE OF ATTORNEY GENERAL, 1655 Palm Beach Lakes, Blvd., West Palm Beach, Florida 33401, copy also furnished to Marilyn Beutemuller, Clerk of Court, Fourth District Court of Appeal, P. O. Box 3315, West Palm Beach, Florida 33401 on this _1_ day of _June_____, 1999.

RECEIVED
OFFICE OF THE ATTORNEY GENERAL

JUN 07 1999

CRIMINAL DIVISION
WEST PALM BEACH

Respectfully submitted,



Frederick D. Johnson, #582112
South Bay Correctional Facility
P. O. Box 7171
South Bay, Florida 33493

NOTARY PUBLIC, STATE OF FLORIDA

MY COMMISSION EXPIRES:

DONNA POLING
MY COMMISSION # CC 737569
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
        Plaintiff/Appellee,

    -vs-                       CASE NO.: 91-083-CF-B

FREDERICK D. JOHNSON,
        Defendant/Appellant,
_____/

## DESIGNATION OF RECORD

COMES NOW FREDERICK D. JOHNSON, Defendant/Appellant, in pro' se designates the following portions of the proceedings for inclusion in the record on appeal, pursuant to Fla.R.App.P. 9.200(b), all listed proceedings to be transcribed for appeal.

1).    Motion for Post-Conviction Relief

2).    Order Denying Post-Conviction Relief

3).    Motion for Rehearing/with Exhibits

4).    Motion for Amended Rehearing/with Exhibits

5).    Order Denying Amended Motion for Rehearing.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing NOTICE OF APPEAL has been furnished by prepaid U. S. Mail to: Jeffrey K. Barton, Clerk of the Circuit Court, Felony Department, P. O. Box 1028, Vero Beach, Florida 32961-1028, copy also furnished to OFFICE OF ATTORNEY GENERAL, 1655 Palm Beach Lakes, Blvd., West Palm Beach, Florida 33401, copy also furnished to Marilyn Beutemuller, Clerk of Court, Fourth District Court of Appeal, P. O. Box 3315, West Palm Beach, Florida 33401 on this _1_ day of _June_____, 1999.

Respectfully submitted,

Frederick D. Johnson, #582112
South Bay Correctional Facility
P. O. Box 7171
South Bay, Florida  33493

NOTARY PUBLIC, STATE OF FLORIDA

DONNA POLING
MY COMMISSION # CC 737569
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

MY COMMISSION EXPIRES:

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY
STATE OF FLORIDA

STATE OF FLORIDA,
          Plaintiff/Appellee,

     -vs-                                         CASE NO.: 91-083-CF-B

FREDERICK D. JOHNSON,
          Defendant/Appellant,
_____/

## DIRECTIONS TO THE CLERK

Appellant, FREDERICK D. JOHNSON, directs the Clerk to include the following items in the original record as described in Fla.R.App.P. 9.200(20(1),

| ITEMS | DATE |
|-------|------|
| 1).  Motion for Post-Conviction Relief | December 3, 1998 |
| 2).  Order Denying Post-Conviction Relief | February 17, 1999 |
| 3).  Motion for Rehearing/with Exhibits | March 2, 1999 |
| 4).  Motion for Amended Rehearing/with Exhibits | April  , 1999 |
| 5).  Order Denying Amended Motion for Rehearing | May 23, 1999 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing NOTICE OF APPEAL has been furnished by prepaid U. S. Mail to: Jeffrey K. Barton, Clerk of the Circuit Court, Felony Department, P. O. Box 1028, Vero Beach, Florida 32961-1028, copy also furnished to OFFICE OF ATTORNEY GENERAL, 1655 Palm Beach Lakes, Blvd., West Palm Beach, Florida 33401, copy also furnished to Marilyn Beutemuller, Clerk of Court, Fourth District Court of Appeal, P. O. Box 3315, West Palm Beach, Florida 33401 on this _1_ day of _June_____, 1999.

Respectfully submitted,

Frederick D. Johnson, #582112
South Bay Correctional Facility
P. O. Box 7171
South Bay, Florida 33493


NOTARY PUBLIC, STATE OF FLORIDA

DONNA POLING
MY COMMISSION # CC 737569
EXPIRES: April 26, 2002
Bonded Thru Notary Public Underwriters

MY COMMISSION EXPIRES: